IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>                   Plaintiff,<br><br>   v.<br><br>ALLSCRIPTS HEALTHCARE SOLUTIONS, INC. and ALLSCRIPTS HEALTHCARE, LLC<br><br>                   Defendants. | No. 12-cv-03233<br><br>Magistrate Judge Cole |

**DEFENDANTS' MOTION FOR LEAVE TO AMEND ITS ANSWER AND ADD COUNTERCLAIMS AND MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Defendants ALLSCRIPTS HEALTHCARE SOLUTIONS, INC. and ALLSCRIPTS HEALTHCARE, LLC (collectively, "Allscripts"), pursuant to Federal Rule of Civil Procedure 15(a), respectfully moves this Court for leave to file the attached Proposed Second Amended Answer to the First Amended Complaint ("SAA") to add newly discovered counterclaims and allege additional affirmative defenses.[1]

By this lawsuit, Plaintiff Physicians Healthsource, Inc. ("Plaintiff" or "PHI") claims that Allscripts sent faxes to PHI without PHI's prior express consent or permission purportedly in violation of the Telephone Consumer Protection Act. *See generally* First Am. Compl. (Dkt. No. 78). PHI, however, has downplayed and/or concealed important, material facts that wholly

---

[1] Allscripts' Proposed Second Amended Answer and certain exhibits thereto are being filed in redacted form and under seal, respectively, concurrently herewith for the reasons set forth in Allscripts' Motion for Leave to File Under Seal, also filed contemporaneously.

undermine PHI's claim.  For example, PHI never disclosed to the Court that PHI and Allscripts and its predecessors had a longstanding business relationship beginning no later than 2001, or that PHI *routinely* asked Allscripts to fax to it information related to practice management (including without limitation pricing and availability of office supplies, hardware, paper and the like).  To the contrary, and throughout this litigation, PHI has implied – if not overtly stated – that any faxes PHI may have received from Allscripts literally arrived out of the blue.  *Id.*

Unfortunately, and perhaps even more troublesome, PHI appears also to have withheld documents and information from Allscripts *specifically requested in discovery* concerning the parties' business relationship.  PHI was a customer of Allscripts and its predecessors, first licensing practice management software and supporting documentation in 2001.  In document requests Allscripts served in this lawsuit, Allscripts asked PHI for "all … contracts, subcontracts, [and] agreements . . . related to Allscripts."  In its response to this request, PHI indicated it produced the requested documents.  But on May 6, 2015, Allscripts learned *for the first time* that PHI improperly sublicensed to a third party the software and supporting documentation that it had licensed from Allscripts.  PHI did so in direct violation of clear contractual provisions in its Master Agreement granting PHI a license to use the Software that prohibited such sublicensing.  Indeed, though secret, PHI's unlawful sublicense was in writing.

PHI never produced in this lawsuit any copies of the "contracts, subcontracts, [or] agreements" evidencing the sublicensing.  To the contrary, Allscripts only learned of the unlawful sublicense as a result of taking discovery from a third party who testified to its existence and produced the agreement reflecting the improper sublicense and the third party's improper access, use and reproduction of the Software and supporting documentation onto her computers and the computers of her business.

Based on these wrongful actions, Allscripts now seeks leave to amend its answer to add additional affirmative defenses and appropriate counterclaims.

## II. BACKGROUND

### A. Relevant Procedural History

Plaintiff filed its original Complaint on May 1, 2012. *See* Dkt. No. 1. On December 10, 2013, Plaintiff filed its First Amended Complaint. *See* Dkt. No. 78. Allscripts then timely filed its Answer to the First Amended Complaint on January 13, 2014. *See* Dkt. No. 80. On May 9, 2014, Allscripts filed its Amended Answer to the First Amended Complaint, which included seven affirmative defenses. *See* Dkt. No. 98.

The Court's original scheduling order set fact discovery to be completed by March 28, 2014. *See* Dkt. No. 72. Thereafter, upon Plaintiff's oral motion, the Court extended the fact discovery deadline to December 31, 2014. *See* Dkt. No. 97. On November 3, 2014, the Court entered a revised scheduling order, establishing March 31, 2015 as the new fact discovery deadline. *See* Dkt. No. 113. Most recently, on March 3, 2015, the Court granted Plaintiff's unopposed Motion to extend the fact discovery deadline to June 1, 2015. *See* Dkt. No. 125. The parties have since requested the Court further extend the discovery deadline so that they may complete the discovery that yet is required to be done. *See* Dkt. No. 130.

### B. Allscripts Only Recently Discovers PHI's Wrongful Conduct

In July 2001, Plaintiff entered into a Medic Purchase Agreement ("MPA") with Medic Computer Systems, LLC ("Medic"), a predecessor entity of Allscripts, pursuant to which Medic granted PHI a personal, nonexclusive, and **nontransferable** license to use a Medic proprietary application software designed to be used in connection with PHI's medical billing (the "Software") and supporting documentation. *See* Ex. A to SAA. In connection with the MPA,

PHI and Medic entered into a Master Agreement that, among other provisions, specifically provided that PHI shall not permit any third party to use the Software or grant a sublicense for the use of the Software. *See id*. at ALLSCRIPTS022250. The Master Agreement similarly provided that the Software was to be used only for PHI's internal business needs, and is only licensed on a single central processing unit to be used at PHI's offices. *See id*. Violation of these provisions entitled Medic to terminate this Agreement and the Software license granted thereunder, in addition to and not in lieu of any other remedies available to Medic. *Id*. at ALLSCRIPTS022253.[2]

Subsequent agreements entered into between Plaintiff and Medic's successors, including Misys Healthcare Systems, LLC ("Misys") and Allscripts, including during the proposed Class Period, expressly incorporated the terms of the Master Agreement, and similarly prohibited the sublicensing of the Software to a third party.

On October 9, 2013, before filing its Answer and Amended Answer, Allscripts served its First Set of Requests for Production to Plaintiff. Among its requests, Allscripts requested that Plaintiff "[p]roduce all documents including contracts, subcontracts, agreements, business cards, emails, correspondence, note or memoranda of oral communications, invoices, and receipts, related to Allscripts." Plaintiff responded, "[s]ee documents produced," but produced *no documents* evidencing any sublicensing of the Software to a third party (though such documents plainly exist).

On March 26, 2015, Allscripts issued a subpoena for documents and testimony to Ms. Gearline Monhollen, Plaintiff's former office manager, whose job responsibilities included

---

[2] The Master Agreement further provides that, in the event any action or proceeding is brought in connection with this Agreement, the prevailing party shall be entitled to recovers its costs and reasonable attorneys' fees. *See* Ex. A to SAA at ALLSCRIPTS022254.

medical billing and collection, and thus regularly communicated with Allscripts regarding her use of the Software and other matters. In addition, Allscripts simultaneously issued a subpoena for documents and testimony to Doctors Revenue Management Services, LLC ("DRMS"), a medical billing and collection company Ms. Monhollen formed in 2008 after she left PHI.

On May 6, 2015, the day before her scheduled deposition, Ms. Monhollen produced, through her attorney, previously-unproduced documents that evidence PHI improperly sublicensed the Software to DRMS in early 2008. In particular, pursuant to a "January 2008 Lease Agreement" entered into between Plaintiff and DRMS, Plaintiff improperly sublicensed the Software and supporting documentation to DRMS for DRMS to use in connection with its billing and collection services. *See* Ex. D to SAA at Monhollen0000016. The Lease Agreement expressly provided that DRMS was to *not* utilize hardware at PHI's office to access the Software, but instead was to access the Software using a remote connection, *exactly the opposite* of what the Master Agreement required. *See id*. at Monhollen0000017. Other documents produced by Ms. Monhollen demonstrate that DRMS remotely used the Software to perform medical and collection services for PHI *and other clients* throughout 2008 and 2009.

Ms. Monhollen's deposition testimony on May 7, 2015 confirmed the same. Specifically, Ms. Monhollen testified that when she left Plaintiff's office in late 2007 and formed DRMS, Plaintiff "offer[ed]" her the Software for her to use in connection with her new business. *See* Ex. B to SAA at 38:22-39:3. PHI apparently offered the Software and supporting documentation to Ms. Monhollen as consolation / severance due to PHI suddenly eliminating Ms. Monhollen's position so that Dr. Elwert's wife, Chris Elwert, could assume Ms. Monhollen's duties at PHI (after Ms. Monhollen trained her). *See id*. at 38:22-38:25 ("They did offer me, Physicians Healthsource did offer me the Misys software. So he wasn't like hanging me out to dry.") The

use of the Software and supporting documentation by DRMS, however, remained unknown to Allscripts and was expressly forbidden by the contract between Allscripts and PHI.[3]

DRMS / Ms. Monhollen's use of the Software and supporting documentation during this time period remained unknown to Allscripts until Allscripts deposed Ms. Monhollen. Indeed, the billing agreement between DRMS and PHI specifically provided that PHI would continue to pay all invoices generated by the Software for all billing and operational expenses, ostensibly to conceal from Allscripts the improper licensing agreement. *See* Ex. E to SAA at Monhollen000002. Because PHI continued to pay all invoices generated by DRMS's use of the Software, Allscripts was unaware (and could not possibly have been aware) that PHI had in fact sublicensed the Software and supporting documentation to DRMS.

DRMS continued to use the Software through late 2009, at which point (and much to Ms. Monhollen's dismay) Plaintiff terminated its billing agreement with DRMS pursuant to a December 14, 2009 Agreement between Plaintiff and DRMS – another document that was produced in this litigation for the first time by Ms. Monhollen on May 6. *See* Ex. B to SAA at 30:11-31:15. Of note, in a provision entitled "Transfer of Misys Software," the December 2009 Agreement makes clear that although Ms. Monhollen and DRMS were using, remotely accessing and partially or completely reproducing the Software and supporting documentation onto their computers, Plaintiff had at no point obtained Allscripts' consent to sublicense or assign the Software either to Monhollen or to DRMS. *See* Ex. H to SAA at Monhollen000007.

Prior to Ms. Monhollen's May 6 production of documents and May 7 deposition testimony, Allscripts had no knowledge of Plaintiff's improper sublicensing of the Software and

---

[3] Moreover, it appears that Ms. Monhollen may not have known or understood that the Master Agreement expressly forbade sublicensing the Software and supporting documentation, she not having been a party to that agreement. In light of the circumstances, Allscripts has no intention of filing a claim against Ms. Monhollen. She, like Allscripts, has been wronged by PHI.

supporting documentation to a third party. Shortly after learning of this information, Allscripts advised Plaintiff of its intention to immediately request leave to amend its answer to assert appropriate counterclaims. Plaintiff did not consent. Accordingly, based on these newly discovered facts, Allscripts now seeks leave of court to amend its answer to add counterclaims.

**III. ARGUMENT**

Under Federal Rule of Civil Procedure 15(a), granting leave to amend an answer is within the Court's discretion and should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). Further, leave to amend will not be denied in the absence of a good reason, such as undue delay, repeated failure to cure deficiencies by prior amendments, bad faith on the part of the movant, undue prejudice to the opposing party, or futility of amendment. *See Forman v. Davis*, 371 U.S. 178, 182 (1962).

None of the limited circumstances that would defeat the liberal policy of amendment under Rule 15 is present here. To begin, Allscripts has not acted in bad faith or engaged in undue delay in seeking to amend its answer to assert counterclaims. As explained above, prior to Ms. Monhollen's May 6, 2015 production of documents and May 7, 2015 deposition testimony, Allscripts had no knowledge of Plaintiff's sublicensing the Software and supporting documentation to Monhollen, DRMS or any other third party. As soon as Allscripts' learned of this information, it diligently reviewed and analyzed the newly-produced documents against the relevant contractual provisions in the Master Agreement. Allscripts shortly thereafter scheduled a meet and confer with Plaintiff's counsel on the instant motion, and within days after Plaintiff informed Allscripts it would not consent to the motion, Allscripts filed this motion. Allscripts, accordingly, has engaged in no undue delay at any step in this process. *See, e.g., Bower v. Jones*, 978 F.2d 1004, 1010 (7th Cir. 1992) (finding no undue delay where party did not have access to

7

documents supporting new claim until late in discovery); *Lerman v. Turner*, No. 10 C 2169, 2012 WL 1409526, at *2 (N.D. Ill. Apr. 23, 2012) (finding no undue delay or improper motive and granting defendants leave to assert counterclaim and affirmative defense; "Moreover, 'delay on its own is usually not reason enough for a court to deny a motion to amend', and in recent months, defendants have moved promptly to identify and investigate their claims.") (citing and quoting *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008)).

Nor would Plaintiff be unduly prejudiced if Allscripts is allowed to amend its pleadings. As an initial matter, the parties are in agreement that a brief extension of the fact discovery deadline is necessary, irrespective of Allscripts' additional affirmative defenses and recently-discovered counterclaims.[4] In addition, Allscripts anticipates that any additional discovery related to its amended pleading would be minimal, if not entirely coextensive to discovery already expected to occur. The parties have already taken the deposition of Ms. Monhollen, and to the extent any additional deposition testimony on the counterclaims is necessary, it would likely come from Doctors John Ruch and Jeffrey Elwert, whom Allscripts already intended to depose as soon as Plaintiff properly supplements its discovery.[5] And Plaintiff has yet to depose Allscripts and certain other fact witnesses. Thus, Allscripts' amendment of its pleading would have little, if any, effect on the discovery schedule, and believes the schedule proposed by the parties allows sufficient time to do whatever additional discovery the parties may believe is

---

[4] Contemporaneous to this motion, the parties have filed a Joint Motion to Modify Scheduling Order, requesting a brief extension of the fact discovery deadline to September 1, 2015. *See* Dkt. No. 130. Allscripts believes this new schedule provides sufficient time to complete discovery on all claims, affirmative defenses and counterclaims.

[5] Allscripts has met and conferred with Plaintiff to attempt to narrow the issues in dispute with respect to the deficiencies in PHI's discovery responses with mixed success, and, therefore, Allscripts anticipates filing a motion to compel in the near term so that the Court can help the parties resolve the remaining disputes.

necessary. *See Lerman*, 2012 WL 1409526 at *3 ("Although defendants' motion to amend comes at the close of fact discovery, a court will generally grant leave to amend, even if discovery is substantially completed, if the discovery has adequately covered the subject matter of the amendment.") (internal citation and quotation omitted).

Moreover, any contention by Plaintiff of undue prejudice is completely undermined by the fact that, while Allscripts only recently discovered this information, it has been known to Plaintiff for many years – years before Plaintiff filed this lawsuit. As the party who wrongfully sublicensed the Software and supporting documentation to a third party, Plaintiff was in unique possession of this information, including the documents recently produced by Ms. Monhollen. Indeed, as noted above, in October 2013, before filing its Answer and Amended Answer, Allscripts requested that Plaintiff produce all documents, including contracts, subcontracts, and agreements related to Allscripts. Plaintiff simply responded, "[s]ee documents produced," but did *not* produce the January 2008 Lease Agreement – or any other document that would have indicated that Plaintiff had breached the Master Agreement and violated Allscripts' copyright. Thus, it is *Allscripts* who would be prejudiced by the denial of its motion for leave to amend because it has only recently discovered these facts due to PHI's having failed to disclose them, and such an outcome would essentially reward PHI for concealing critical facts for its own advantage.[6]

Lastly, in no sense would Allscripts' proposed amendments be futile, because each proposed counterclaim is well-supported by facts giving rise to very plausible claims of entitlement to relief. As discussed above, the Master Agreement specifically prohibits PHI from

---

[6] Given the facts supporting Allscripts' counterclaims only recently became known to Allscripts, Plaintiff could not credibly assert that amendment would be improper because of any purported "repeated failure to cure deficiencies" on Allscripts' part. *See Bower*, 978 F.2d at 1010.

9

allowing any third party to use the Software or supporting documentation or granting a sublicense for the use of the Software. Yet, as demonstrated by the above and the exhibits attached to Allscripts' Proposed Second Amended Answer,[7] Plaintiff plainly allowed Ms. Monhollen and DRMS to remotely access, use, and partially or completely reproduce the Software and supporting documentation onto their computers. At no point did Plaintiff obtain Allscripts' consent to do so; in fact, rather than disclose this information to Allscripts in the course of discovery as it was required to do, Plaintiff actively concealed this information, including by continuing to pay all invoices generated by Ms. Monhollen's / DRMS's improper remote use, access and reproduction of the Software and supporting documentation.

## IV.    CONCLUSION

For the reasons discussed above, Allscripts respectfully requests that this Court grant Allscripts leave to file a Second Amended Answer to the First Amended Complaint, attached hereto as Ex. 1, that includes additional affirmative defenses and counterclaims against PHI. Allscripts respectfully requests such other, further relief this Court deems appropriate.

Dated: May 29, 2015                                   Respectfully submitted,


By: /s/ Liva M. Kiser

**SIDLEY AUSTIN LLP**

Livia M. Kiser
lkiser@sidley.com
Lawrence P. Fogel
lawrence.fogel@sidley.com
Andrew J. Chinsky

---

[7] Ms. Monhollen has asked that the information she provided to Allscripts be treated as confidential business information and, therefore, the information has been designated confidential pursuant to the Agreed Confidentiality Order and is filed under seal in accordance with her request.

10

achinsky@sidley.com
One South Dearborn
Chicago, Illinois 60603
(t): (312) 853-7247
(f): (312) 853-7036

*Counsel for Allscripts Healthcare Solutions, Inc. and Allscripts Healthcare LLC*

**<u>CERTIFICATE OF SERVICE</u>**

      I, Andrew J. Chinsky, hereby certify that on May 29, 2015, I caused a copy of the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                            /s/ Andrew J. Chinsky
                                                Andrew J. Chinsky