**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 12-cv-03233 |
| v. | ) ) | Hon. Magistrate Judge Cole |
| ALLSCRIPTS HEALTHCARE SOLUTIONS, INC. and ALLSCRIPTS HEALTHCARE, LLC | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO COMPEL CERTAIN DISCOVERY RESPONSES, REQUEST FOR SANCTIONS AND MEMORANDUM IN SUPPORT

Defendants ALLSCRIPTS HEALTHCARE SOLUTIONS, INC. and ALLSCRIPTS HEALTHCARE LLC (collectively, "Allscripts"), by and through their attorneys, move for an order compelling Plaintiff PHYSICIANS HEALTHSOURCE, INC. ("Plaintiff" or "PHI"), to properly respond to Allscripts' written discovery as set forth in more detail below. In addition, because PHI has failed to retain documents during the course of this litigation and has given false statements in sworn discovery responses, Allscripts respectfully requests appropriate sanctions. In support of this motion, Allscripts states as follows:

### I. INTRODUCTION

PHI has filed no fewer than 21 lawsuits all over the country alleging violations of the Telephone Consumer Protection Act ("TCPA"), including against entities who supplied goods and services to PHI like Allscripts. PHI expressly consented to receive solicitations from

Allscripts via fax[1] and yet is trying to claim in this lawsuit that Allscripts never had permission to send unsolicited faxes to PHI.

This lawsuit appears to be nothing but a lark to PHI and its lead counsel, Anderson & Wanca, both of whom have indiscriminately sued many businesses and previously have been sanctioned and criticized for their conduct in litigation, including in connection with discovery.[2] In contrast, Allscripts has been forced to defend this lawsuit at great cost and burden. For example, over the course of discovery in this litigation, Allscripts has responded to several rounds of interrogatories, requests for admission, and document requests from Plaintiff. In particular, Allscripts has now completed three rounds of document productions, encompassing data for twenty (20) custodians, and over 22,250 pages of documents, all searched, processed and produced at Allscripts' sole cost and expense. (*See* Kiser Decl. ¶ 2.)[3]

At a minimum, a serial plaintiff like PHI (who has been hoarding faxes in anticipation of filing lawsuits since at least 2008) should have sufficient courtesy and respect for the legal process to provide honest and complete responses to discovery that facilitate (rather than hinder) the truth-seeking process, and to and to exercise due care with important evidence. Unfortunately, however, this motion is necessary because PHI has provided demonstrably false discovery responses to Allscripts under oath, has failed to respond to Allscripts' discovery

---

[1] *See* Dep. Tr. G. Monhollen, May 7, 2015, Ex. A hereto at 69:14-70:10 (PHI's former office manager, Gearline Monhollen, testifying that Allscripts would ask her if they could send information over by fax, and she would answer, "Yes").

[2] *See, e.g.*, *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, No. 14-4201, at *3 (6th Cir. June 3, 2015) (affirming grant of summary judgment to defendants and noting district court's warning to plaintiff "'not to file similar fruitless litigation in the future' or else the court's 'colleagues [would] respond appropriately.'") (Ex. B hereto); Memorandum Opinion, *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, Case No. 1:12-cv-04978, ECF. No. 101 (N.D. Ill. Nov. 20, 2014) (Ex. C hereto) (granting defendant's motion to strike untimely produced documents and supplemental expert declaration under Federal Rule of Civil Procedure 37).

[3] The declaration of Allscripts attorney Livia M. Kiser ("Kiser Decl.") is filed concurrently herewith. Attached thereto are Allscripts' exhibits, referenced as "Ex."

requests in good faith, and has destroyed, deleted or carelessly lost track of documents.

## II. BACKGROUND

### A. PHI's Prior Sworn Discovery Responses Were Later Proven Demonstrably False

Allscripts served discovery upon PHI to which PHI substantively responded, swearing the responses were true, and then Allscripts subsequently learned through its own investigation and/or through subsequent interactions with PHI or third parties that PHI's responses were, in fact, demonstrably false. For example:

- In or around October 9, 2013, Allscripts served an interrogatory upon PHI asking for "all television, radio and printed publications and any internet sites or worldwide web pages . . . in which or on which your telephone number *or numbers used by you for the receipt of facsimile transmissions have been disclosed, published or otherwise made available*, including, but not limited to, directories and advertisements."[4] After stating some objections, Plaintiff responded with a single word: "None." (*See* Pl's. Ans. to Def's. First Set of Interrogatories, Ex. D hereto at No. 17.)[5] PHI's response, however, is inaccurate, if not deliberately false: as Allscripts recently found out as a result of doing its own research, Plaintiff's facsimile number, (513) 922-2009, is all over the internet, and has obviously affirmatively been placed there by Plaintiff. (*See*, *e.g.*, Ex. E hereto (ALLSCRIPTS021907); Ex. F hereto (ALLSCRIPTS021927); *and* Ex. G hereto (ALLSCRIPTS021943).)[6]

- In another interrogatory, Allscripts asked PHI to identify "*any other person, business, corporation, company or unincorporated business entity that you know also used the number (513) 922-2009 to send or receive facsimile transmissions during the Time*

---

[4] Unless otherwise indicated, emphasis throughout is supplied.

[5] In connection with PHI's responses, PHI submitted a sworn verification, swearing the responses were true and accurate under penalty of perjury. (*See* Ex. D at p. 10.)

[6] Plaintiff's counsel then had the temerity to ask Allscripts to produce the evidence it uncovered of PHI's false statements, which Allscripts did do. (*See* L. Fogel E-Mail, Apr. 27, 2015, Ex. H hereto at 1.)

3

*Period*." PHI responded under penalty of perjury with one word: "None." (*See* Ex. D at No. 22.) Again, this statement was plainly false when made: Allscripts' independent research reveals that a number of persons besides PHI identify (513) 922-2009 as their fax number. (*See, e.g.,* Ex. I hereto (ALLSCRIPTS021874) *and* Ex. J hereto (ALLSCRIPTS021880).)[7]

- Allscripts also asked PHI to "[i]dentify any efforts you made to unsubscribe to any facsimiles received during the last five years." PHI responded with the following sworn statement: "see list of TCPA cases filed by Plaintiff," as though implying that PHI had sought to unsubscribe in each case that it had filed. (*See* Ex. D at No. 27.) About 5 months prior, however, Dr. John Ruch (the same individual who verified this interrogatory response) testified that PHI had *never* sent a notice asking to opt out of receiving an advertising fax. (*See* Dep. Tr. J. Ruch, May 28, 2013, Ex. L hereto at 95:14-97:1.) Thus, the sworn interrogatory response was patently misleading (if not an outright lie).

- On or around July 3, 2014, Allscripts requested PHI produce "all fax logs . . . including but not limited to fax logs[8] for the numbers (513) 922-2009 and/or (513) 347-2735." On August 21, 2014, PHI swore under oath that it "has been unable to locate any responsive documents." (*See* Pl's. Resps. to Def's. Second Set of Doc. Req., Ex. M hereto at No. 1.) But PHI's answer was knowingly false when made: as Allscripts recently found out upon review of the docket in the case captioned *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, Case No. 1:12-cv-04978 (N.D. Ill.) (Kocoras, J. presiding) ("*Alma Lasers*"), ***Plaintiff already had produced fax logs in that case that were responsive to Allscripts'***

---

[7] Dr. Martinez retired in 2011, so this webpage featuring Dr. Martinez was certainly online when these interrogatories were propounded in 2013. Moreover, PHI witness Kathleen Curtis testified in February 2013 that Comprehensive Pain Solutions was receiving facsimiles at (513) 922 [sic]-2009, but eight months later PHI still swore that there were no other entities or persons besides PHI receiving facsimiles at that number. (*See* Dep. Tr. K. Curtis, Feb. 21, 2013, Ex. K, hereto at 26:21-27:4.)

[8] A fax log, also referred to as a fax report or fax journal, is a history of received and sent faxes.

*request when it falsely stated it had no responsive documents*. (Ex. C at 2.) Notably, PHI was subsequently sanctioned in *Alma Lasers* for curiously "finding" and subsequently producing an additional fax log that happened to contain the three faxes at issue in that case after defendant pointed out that nowhere in the fax logs produced was there a record of PHI having actually received those faxes. (*See id.* at 2-4, 10-11.) But at the exact same time it was finding and producing fax logs in *Alma Lasers*, it was falsely telling Allscripts that it had none.

### B. PHI Continues To Fail To Fully And Fairly Respond To Allscripts' Discovery Requests

Allscripts served its Second Set of Interrogatories to Plaintiff ("Interrogatories") and Third Set of Requests for Admission ("Requests for Admission") to Plaintiff approximately five months ago, on January 28, 2015. The topics addressed within the Interrogatories and Requests for Admission go to the heart of this case, including Plaintiff's extensive past business relationship with Allscripts and Allscripts' defense that Plaintiff provided prior express invitation and/or permission to receive facsimile transmissions from Allscripts. Plaintiff requested multiple extensions to respond to Allscripts' Interrogatories and Requests for Admission. Allscripts granted each of these requests without objection.

#### 1. First Meet And Confer

On March 16, 2015, Plaintiff served its Answers to Defendants' Second Set of Interrogatories and Responses and Objections to Defendants' Third Set of Requests for Admission (Ex. N hereto and Ex. O hereto, respectively) (collectively, "Responses and Objections"). PHI's responses were woefully inadequate. On March 20, 2015, counsel for Allscripts sent Plaintiff's counsel a letter advising same. (*See* L. Fogel Letter, Mar. 20, 2015 ("March 20th Letter"), Ex. P hereto.) Allscripts' March 20th Letter also addressed Plaintiff's failure to produce the "fax logs." (*See id.* at 4.) The March 20th Letter requested a conference in

5

accordance with Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37.2 (a "Meet and Confer Conference") to address the enumerated deficiencies.

Defendants received no response from Plaintiff until March 27, 2015. (*See* L. Fogel E-Mail, Mar. 27, 2015, Ex. Q hereto at 3-4.) The parties then scheduled a Meet and Confer Conference on March 30 via telephone. (*See* Kiser Decl. ¶ 3.) During the Meet and Confer Conference, counsel for Defendants discussed the deficiencies in Plaintiff's responses. Plaintiff's counsel stated that while it would "stand" on some of its objections, it would review the Responses and Objections and respond to Defendants in the next 7-10 days. (*See* Ex. Q at 1.)

### 2. Second Meet And Confer

Two weeks later, on April 13, 2015, Plaintiff's counsel contacted Allscripts' counsel and requested more time. On April 27, 2015, counsel for the parties conducted a second Meet and Confer Conference to discuss Plaintiff's status in reviewing and potentially amending Plaintiff's Responses and Objections. (*See* Kiser Decl. ¶ 4.) The parties discussed the following:

- Plaintiff stated that it intended to amend certain of its responses and anticipated serving these amended responses within approximately one week.

- For the other responses, Plaintiff stated that it would stand on its objections. In particular, Plaintiff objected to the relevance of Allscripts' Requests for Admission that pertained to Plaintiff's purportedly "private" fax number (513) 347-2735 on the purported basis that no fax advertisements at issue in this case were sent to that fax number and therefore requests regarding that fax number seek irrelevant information and are not likely to lead to the discovery of relevant information. (*See* Ex. O at General Objection No. 10. *See also* Ex. H at 1 ("[W]ith respect to those Requests for Admission pertaining to the fax number (513) 347-2735, you stated that Plaintiff similarly intends to

6

stand on its relevance objections, assuming none of the faxes attached to Plaintiff's Complaint were sent to this number.").)

- After first denying their existence and then realizing the existence of the fax logs was a matter of public record, Plaintiff stated that it had identified fax logs responsive to Allscripts' requests, was still in the process of reviewing them, and anticipated producing them shortly. (*See* Ex. H at 1.)

- The parties also discussed Allscripts' Requests for Admission that pertained to the public availability of Plaintiff's fax number. As noted above, PHI had previously sworn that it had not published its facsimile number ((513) 922-2009) and that there was no place where (513) 922-2009 was publicly available. (*See supra* at 3.) After Allscripts' counsel disclosed through basic internet searching Allscripts could prove that (513) 922-2009 was available publicly, and was specifically made available by Plaintiff in a classified advertisement that invited facsimiles to this number, Plaintiff's counsel asked Allscripts to produce this information, which Allscripts promptly did. (*See* Ex. H at 1.)

At the conclusion of the April 27, 2015 Meet and Confer, Allscripts' counsel requested that the amended answers and the fax logs be produced by Plaintiff prior to the deposition of a third-party witness, PHI's former office manager Gearline Monhollen, which was scheduled for May 7, 2015. Plaintiff agreed to do so.

On May 1, 2015, Plaintiff's counsel produced 1165 pages of fax logs and, on Wednesday, May 6, the day before Ms. Monhollen's deposition, Plaintiff issued its Amended Answers to Allscripts' Interrogatories and Amended Responses and Objections to Allscripts' Requests for Admission (Ex. R hereto and Ex. S hereto, respectively) (collectively, "Amended Responses and Objections").

### C. Third Meet And Confer

On May 22, 2015, the parties conducted a third Meet and Confer Conference by telephone. (*See* Kiser Decl. ¶ 5.) After PHI confirmed it was not willing to further supplement its discovery responses any further, Defendants' counsel informed Plaintiff's counsel that Defendants would be filing a motion to compel.

During the conference, Defendants' counsel also raised concerns regarding Plaintiff's production of its fax log. Specifically, Defendants' counsel informed Plaintiff that a number of dates were missing from the fax log, including dates that had previously been produced by Plaintiff in the aforementioned *Alma Lasers* case, *see supra* at 4.

### D. Relevant And Responsive Documents Are Missing

On June 1, 2015, Plaintiff produced an additional 182 pages of fax logs, some of which were duplicative of Plaintiff's prior production, and some of which were produced for the first time. There are still days missing from the fax log production, but Plaintiff's counsel has stated that PHI no longer has the missing fax log pages in its possession, custody, or control because it may have produced "originals" in the *Alma Lasers* case without keeping any copies, or individuals working at PHI may have discarded the pages. (*See* Kiser Decl. ¶ 6.) Whether the documents are unavailable because PHI mistakenly produced originals in *Alma Lasers* (and for some undisclosed reason, copies cannot be obtained), or PHI carelessly discarded the missing pages, the bottom line is that PHI concealed (and then got rid of) important evidence.

As required by Local Rule 37.2, the parties consulted by telephone, email, and letter correspondence in a good faith attempt to resolve differences but were unable to reach an accord. Allscripts now moves for an order (1) compelling PHI to provide complete answers to specific, written discovery and (2) issuing appropriate sanctions to PHI for making false statements under

oath and for failing to preserve important evidence.

## III. ARGUMENT

Under Federal Rule of Civil Procedure 26(b)(1), parties have broad power to discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." *See also Oppenheimer Fund, Inc. v. Sanders¸* 437 U.S. 340, 351 (1978) (the federal notice pleading system contemplates that parties will have broad discovery to investigate facts and to help define and clarify the issues); *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) (same). Further, the burden rests upon the objecting party to show why a particular discovery request is improper. *See*, *e.g.*, *Osada v. Experian Info. Solutions, Inc.*, 290 F.R.D. 485, 494 (N.D. Ill. 2012); *Parvati Corp. v. City of Oak Forest*, No. 08 C 702, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010) (Ex. T hereto).

Further, "[w]here any party acts inappropriately and causes his opponent to incur needless costs to secure compliance with discovery obligations, Rule 37 provides a remedy and should not receive a grudging application." *See Fudali v. Napolitano*, 283 F.R.D. 400, 404 (N.D. Ill. 2012) (Cole, J.). "[A] 'formal, written order to comply with discovery is not required' for a court to impose sanctions … where a party violates the rules governing discovery." *Rhodes v. LaSalle Bank, N.A.*, No. 02 C 2059, 2005 WL 281221, at *2 (N.D. Ill. Feb. 1, 2005) (citation omitted) (Ex. U hereto). Moreover, "[i]n addition to Rule 37, courts have 'inherent powers to sanction a litigant for bad-faith conduct . . . .'" *Id.* (citations omitted). A court will "presume bad faith and prejudice when a party" lies in interrogatory responses or withholds, destroys, or alters documents sought in a quest for production of documents under Rule 26. *Id.* at *3.

### A. Plaintiff Should be Compelled to Provide Complete Answers to Defendants' Discovery

As illustrated above, and despite Allscripts' efforts to reach a resolution with Plaintiff

9

through multiple Meet and Confer conferences and patiently allowing Plaintiff nearly two months to amend its Responses and Objections, many of Plaintiff's answers remain woefully inadequate. As explained below, Plaintiff has failed to provide complete answers to Allscripts' Requests for Admission (each an "RFA"), instead relying on objections that are without merit.

        1.      **<u>Request for Admission 34.</u>**  In RFA 34, Allscripts requests PHI admit that it never sent to any person or business entity, including Allscripts, a request to stop receiving facsimiles (*i.e.*, "an opt-out request") that was compliant with the requirements enumerated under 47 C.F.R. § 64.1200(a)(4)(v).  PHI objects to this RFA as "irrelevant."  (*See* Ex. O at p. 9.)  Contrary to PHI's assertion, however, this RFA is highly relevant as it goes directly to Allscripts' defense that it sent unsolicited facsimiles to Plaintiff with Plaintiff's prior express invitation and/or permission, and that Plaintiff never rescinded such permission, which it cannot have done unless it complied with the requirements enumerated under 47 C.F.R. § 64.1200(a)(4)(v).  Plaintiff does not, and cannot, dispute this point, and has admitted in deposition testimony in at least one other case that it *never* sought to rescind consent.  (See *supra* at 4.)  Plaintiff should be compelled to substantively respond to this RFA.

        2.      **<u>Requests for Admission 36-37, 40-41, 44-45, 48-49, 52-53, 56-57, 60-61, 64-65, 68-69, 72-73, 98, 118.</u>**  Plaintiff should likewise be required to provide substantive answers to RFAs 36-37, 40-41, 44-45, 48-49, 52-53, 56-57, 60-61, 64-65, 68-69, and 72-73, all of which pertain to Allscripts' defense of prior express invitation and/or permission. Specifically, these RFAs ask Plaintiff to admit that certain individuals providing patient care at PHI gave permission to one or more Persons to send facsimiles to Plaintiff's fax numbers. (*See* Ex. O at pp. 9-24.)  Plaintiff vaguely objects to these Requests as irrelevant, stating that this information "is not relevant and will not lead to the discovery of relevant information as to the

issue of whether Defendants had prior express invitation or permission from Plaintiff to send Plaintiff fax advertisements." (*See, e.g., id*. at No. 44.)[9] Similarly, RFAs 98 and 118 ask Plaintiff to admit that it does not know, nor has it done any investigation to verify, whether any person providing patient services at PHI or working as an independent contractor at PHI gave permission or invited any Allscripts Entity to send facsimiles to it. (*See id.* at pp. 30, 34.) PHI again objects to these RFAs, contending that whether these individuals gave Allscripts permission to send facsimiles is somehow not relevant (a frankly absurd position). (*See id*.) Moreover, PHI objects to nearly all of the RFAs because "Defendants' advertisements did not contain a compliant opt-out notice and therefore the defenses of [established business relationship] and/or [prior express invitation or permission] are unavailable as a matter of law." (*E.g.*, *id.* at pp. 25-28, 32-34. *See also id*. at pp. 9-24 (nearly identical objections).)

Plaintiff's objections are erroneous on all counts and should be overruled. The RFAs are relevant to the very issue of whether one or more individuals using the fax number (513) 922-2009 gave Allscripts' prior express invitation and/or permission to send unsolicited facsimiles. Documents produced in this litigation – which Allscripts has repeatedly pointed out to PHI – evidence that individuals providing patient services at PHI, as well as individuals who appear to be independent contractors, did, in fact, communicate with Allscripts during the relevant time period. Significantly, these same documents show that at least some of these individuals did, in fact, ask Allscripts to send information by fax about products and services available for sale, including computers, printers, and other office equipment. (*See* Ex. P at 3-4; *see also* Ex. A at

---

[9] For those Requests specifically pertaining to fax number (513) 347-2735, Plaintiff objects "to the extent no fax advertisements at issue in this case were sent to that fax number and therefore requests regarding that fax number seek irrelevant information and are not likely to lead to the discovery of relevant information." (*See, e.g*., Ex. O at No. 37.) This is an inadequate basis for an objection. The information is probative because (among other reasons) it tends to show that Plaintiff did, in fact, give out its fax numbers as a matter of practice.

84:20-89:23.) Even further, by Plaintiff's own admission, many of these individuals were allowed to use and thus receive facsimiles at Plaintiff's fax numbers in connection with their work at PHI. (*See* Ex. S at pp. 1-9.) For Plaintiff to now dispute the relevance of whether these individuals gave permission to receive facsimiles, including from Allscripts, is implausible at best. At a minimum, if Plaintiff does not know whether permission was provided by these individuals, Plaintiff should be required to admit that.[10]

### B. PHI Should Be Sanctioned For Repeatedly Serving Untrue, Delayed And Incomplete Discovery Responses, And For Failing To Preserve Important Evidence

As is evident from the record, PHI has repeatedly failed to adequately investigate and truthfully respond to Allscripts' written discovery, has affirmatively misstated the facts in sworn responses, and even in some instances has withheld and/or has not preserved relevant documents. These are straightforward – and serious – violations of Rule 37. These violations are properly sanctioned, because not only do they hinder the truth-seeking process, but as a consequence, Allscripts has been forced to spend a great deal more money on discovery than it otherwise would have.

Sanctions are especially appropriate in this case because PHI never stopped providing sworn responses to written discovery that are, in fact, ***not*** true. For example, Allscripts, via its most recent RFAs (75-78 and 111-13), asked Plaintiff to admit that its fax numbers were publicly

---

[10] Moreover, Plaintiff's contention that it can refuse to substantively respond to these requests because Allscripts' facsimiles purportedly did not contain "compliant opt-out notice[s]" is baseless. Whatever the content of the fax, if Allscripts had permission to send it to PHI, PHI should have to disclose that. Moreover, as Allscripts has advised both Plaintiff and the Court, Allscripts filed a petition with the Federal Communications Commission requesting a retroactive waiver from the FCC's requirement that a specific opt-out notice be included on unsolicited facsimile advertisements. Allscripts expects to receive the retroactive waiver consistent with all other requesters whose petitions have been ruled upon by the FCC to-date. (Kiser Decl. ¶10). The FCC has ruled on the initial round of petitions and requested additional petitions be filed by no later than April 30, 2015, after which the FCC is expected to rule on all petitions in the second round at once. *Id*. Once Allscripts receives formal confirmation that it is entitled to the retroactive waiver, the opt-out language on the facsimiles will become irrelevant.

12

available and, moreover, had previously been published by PHI in a classified advertisement that invited persons to send facsimiles to PHI. (*See* Ex. O at pp. 25-26, 33.) Plaintiff objected to each of these Requests, and even falsely denied that its primary fax number (*i.e*., (513) 922-2009) was publicly available. (*See id*. at p. 33.) As a result, Allscripts was forced to expend additional resources to expose PHI's falsehood and to demonstrate to Plaintiff that Allscripts *knew* that PHI had made its fax numbers publicly available. (*See* Ex. H at 1.) It was only after Allscripts exposed Plaintiff's deception that Plaintiff finally agreed to change its response to acknowledge that it *had*, in fact, published (513) 922-2009.

But it is Plaintiff's delayed and incomplete production of its fax log that is perhaps the most disturbing. When Allscripts originally requested from Plaintiff copies of fax logs that were created during the relevant time period, initially Plaintiff stated falsely under oath that there were ***none***, notwithstanding the fact that, in the *Alma Lasers* case, Plaintiff was admitting such logs exist and producing them. (*See supra* at 4.) After Allscripts undertook the time and expense to expose Plaintiff's deception, *see* Ex. P at 4, Plaintiff suddenly changed its tune, informing Allscripts that it had located fax logs from the relevant time period after all. (*See supra* at 7.) Indeed, PHI subsequently produced *1165* pages of fax logs. But even this production was not complete. When pressed by Defendants that certain dates appeared to be missing, Plaintiff supplemented its production with an additional *182* pages of fax logs, but also admitted pages have been carelessly lost or destroyed.[11]

---

[11] In addition, and despite Plaintiff's multiple productions, the fax log still contains extensive gaps in periods of time, thus raising questions as to the veracity of Plaintiff's alleged practice of collecting and sorting purportedly wanted from unwanted facsimiles. For example, PHI's fax log contains large gaps between November 5, 2008 and April 13, 2009; and April 28, 2010, and November 30, 2010. In point of fact, nearly one-half of the faxes attached to PHI's Complaint cannot be accounted for on the fax logs, either because they do not appear on the fax log or because the fax log for the particular date PHI allegedly received the fax is missing.

Indeed, Plaintiff's fax log production only raises more questions than answers. For one, a number of the faxes attached to the complaint do not appear on Plaintiff's fax log, calling into question whether Plaintiff actually received those faxes (and perhaps explaining why the logs were not produced in the first place). In addition, a number of the alleged faxes attached to the Complaint do not actually contain Plaintiff's fax legend at the top of the fax, suggesting that the page was not, in fact, received by Plaintiff's facsimile machine. (*See*, *e.g.*, ECF. 78 at PageID #568 (fax dated Aug. 12, 2012 attached to the Complaint).) Moreover, while Plaintiff has objected to many of Defendants' requests because (according to Plaintiff) none of the faxes at issue in this case were sent to Plaintiff's "private" fax number ((513) 347-2735), Plaintiff's production curiously includes numerous fax log pages for the fax machine associated with the number (513) 347-2735. This raises questions as to why Plaintiff created (and then produced) fax logs for faxes sent to a "private" fax number that PHI contends is not publicly available.

## IV. CONCLUSION

For the reasons set forth above, Allscripts respectfully requests entry of an order compelling Plaintiff to: (a) provide complete, substantive responses to Allscripts' Requests for Admission 34, 36-37, 40-41, 44-45, 48-49, 52-53, 56-57, 60-61, 64-65, 68-69, 72-73, 98, and 118; (b) undertake a good faith search (including by request to opposing counsel in *Alma Lasers* and other cases) to find and produce in this litigation any outstanding fax logs from the relevant time period to the extent not already produced; and (c) participate in discovery in good faith going forward. Allscripts respectfully also requests the Court sanction PHI and its counsel for their repeated violations of Fed. R. Civ. P. 37 as set forth herein, including an award to Allscripts of the fees and costs it has incurred as a result of the conduct described herein. Allscripts respectfully requests such other, further relief this Court deems appropriate.

Dated: June 29, 2015                     Respectfully submitted,


                                         By:  /s/ Livia M. Kiser

                                         **SIDLEY AUSTIN LLP**

                                         Livia M. Kiser
                                         lkiser@sidley.com
                                         Lawrence P. Fogel
                                         lawrence.fogel@sidley.com
                                         Andrew J. Chinsky
                                         achinsky@sidley.com
                                         One South Dearborn
                                         Chicago, Illinois 60603
                                         (t): (312) 853-7247
                                         (f): (312) 853-7036

                                         *Counsel for Allscripts Healthcare Solutions,
                                         Inc. and Allscripts Healthcare LLC*

**CERTIFICATE OF SERVICE**

I, Andrew J. Chinsky, hereby certify that on June 29, 2015, I caused a copy of the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                          /s/ Andrew J. Chinsky
                                              Andrew J. Chinsky