**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | No. 12-cv-03233 |
| v. | ) | |
| | ) | Magistrate Judge Cole |
| ALLSCRIPTS-MISY'S HEALTHCARE SOLUTIONS, INC., ALLSCRIPTS, LLC, ALLSCRIPTS HEALTHCARE SOLUTIONS, INC., and ALLSCRIPTS HEALTHCARE, LLC | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiff, Physician's HealthSource, Inc. ("Plaintiff" or "PHI), by and through its attorneys, submits its Response in Opposition to Defendants' Motion to Compel Certain Discovery Responses, Request for Sanctions, and Memorandum in Support (Doc. 142) and Defendants' Supplement to Motion to Compel Certain Discovery Responses, Request for Sanctions, and Memorandum in Support (Doc. 150).

**I.      Introduction.**

Defendants Allscripts Healthcare Solutions, Inc. and Allscripts Healthcare, LLC (collectively, "Defendants" or "Allscripts") ask the Court to sanction Plaintiff based on Defendants' claim it had to "compel" truthful answers to Interrogatories 17, 21, and 27 of Defendants' First Set of Interrogatories, and that it had to "compel" Plaintiff to produce fax journal reports, which Defendants claim were wrongfully withheld and/or concealed. (Defs.' Supp. Br. at

1). Defendants ask the Court to order Plaintiff to withdraw its purportedly false responses to Defendants' First Set of Interrogatories (which were answered November 8, 2013), confirm it has produced all fax journals in its possession, custody, and control (including specifically those produced in the *Alma Lasers* case), affirm it is not withholding additional pages of fax logs, and finally, that Plaintiff should be barred from introducing any additional fax journals in the future. (*Id.*)

Defendants' motion for sanctions, monetary or otherwise, should be denied.

First, and contrary to their claim, Defendants' did not "compel" interrogatory responses or production of documents. Following Defendants' LR 37.2 letter on March 20, 2015 (Doc. 142-17),[1] and teleconferences regarding matters raised in that letter on March 30, 2015, and April 27, 2015, Plaintiff on May 6, 2015, served Amended Responses to the Third Requests, answering an additional 30 requests and expressly admitting, *inter alia*, that its fax machine generated fax reports or fax journals (not fax transmission logs) for the years 2008 through 2011. (*See* Doc. 142-20 at Req. 95-97, 107). Prior to service of these Amended Responses, Plaintiff on May 1, 2015, produced fax journal reports that contained journal records reflecting receipt of 19 of the 36 fax advertisements attached to the Complaint and First Amended Complaint ("FAC"). Plaintiff supplemented the fax journal reports on June 1 and August 28, 2015. Plaintiff has now produced fax journals which contain records reflecting receipt of 30 of 36 fax advertisements, in addition to all of the other evidence conclusively demonstrating receipt.

Second, Defendants' assertion that Plaintiff provided untruthful responses to Defendants' First Set of Interrogatories inexplicably ignores the "Time Period" of Defendants' discovery requests, which was April 27, 2008, to May 1, 2012. For example, a want ad for a physician placed

---

[1] In fact, Defendants' March 20, 2015 letter mentioned nothing about Plaintiff's responses to Defendants' First Set of Interrogatories. These were first mentioned in Defendants' request for sanctions.

by Plaintiff in "India Abroad" is dated December 26, 2014, over three years after the last fax was sent to Plaintiff and years past Defendants' "Time Period" parameters. Other documents relied upon by Defendants were printed from internet sites on January 9, 2015, but were not produced until May 5, 2015, in violation of Federal Rule of Civil Procedure 26(e). Moreover, Defendants' conclusory assertions as to these documents are unsupportable.

Third, Defendants have deleted, lost, and/or failed to preserve fax transmission logs for all but 2 of the 36 fax advertisements attached to the Complaint. Moreover, all of the broadcasts of these 36 faxes occurred during the pendency of a prior TCPA lawsuit against Defendants, *Geismann v. Allscripts Healthcare Solutions, Inc.* ("*Geismann* Litigation"), No. 09-cv-5114 (N.D. Ill.) Defendants failed to disclose the existence of the 36 faxes in the *Geismann* Litigation, and at some point deleted them. Defendants claim to have in their possession an image of a former employee's computer laptop, which Plaintiff contends (based on the employee's deposition testimony) may contain numerous fax transmission logs. Defendants' have refused Plaintiff's request to produce this image to Plaintiff's expert for forensic examination. That refusal demonstrates conclusively the specious and disingenuous nature of Defendants' request for sanctions regarding fax transmission journals.

Fourth, Defendants' assertions challenging Plaintiff's receipt of the 36 faxes are demonstrably false. Contrary to Defendants' assertion at the July 7 hearing, all of the 36 faxes have a transmission date and a header, as well as an Allscripts' phone number printed on them. Moreover, Defendants have admitted to sending the 36 faxes to Plaintiff's fax number. Finally, Defendants' assertion that the absence of Plaintiff's telephone number on some of the 36 faxes is indicia on non-receipt by the Plaintiff demonstrates Defendants' failure to comprehend that the sender of the fax, in this case, the Defendants, controls the content of the header.

3

Fifth, Defendants' request for attorney's fees should be denied. Defendants have redacted all attorney entries, making it impossible for Plaintiff (and the Court) to address the reasonableness of Defendants' request. Plaintiff has not violated any order of this Court, and Rule 37(a) attorney's fees are inappropriate because the Court sustained several of Plaintiff's objections to Defendants' Third Requests and recognized Defendants were improperly using Rule 36 requests as a discovery device. Finally, Plaintiff has produced fax journal reports for 30 of 36 faxes; Defendants have destroyed all but 2 fax transmission logs and refuse to produce a laptop image that may contain missing fax transmission reports. Under such circumstances, Defendants' requests for fees should be denied.

## II.    Background[2]

### A.    Plaintiff provided Amended Responses to the Third Requests and produced fax journal reports prior to the filing of the motion to compel.

Defendants' Third Requests for Admissions, served on January 28, 2015, defined the applicable "Time Period" for the requests as April 27, 2008 to May 1, 2012. (Third Requests at 2, ¶ 8). Plaintiff served its Responses and Objections to the Third Requests on March 16, 2015. (Doc. 142-16 at 36). On March 20, 2015, Defendants sent a LR 37.2 letter regarding Plaintiff's responses

---

[2] Copies of the following are attached to the Appendix of Exhibits: Defendants' Third Requests for Admission ("Third Requests"), Exhibit 1; Declaration of Wallace C. Solberg ("Solberg Decl."), Exhibit 2; Email from Wallace Solberg to Lawrence Fogel, dated May 1, 2015 ("Solberg May 1 email"), Exhibit 3; Transcript of July 7, 2015 hearing ("July 7 Transcript"), Exhibit 4; Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories ("Objections & Resp. Pl.'s First Interrogs."), Exhibit 5; Fax Table, Exhibit 6; *Geismann v. Allscripts* Final Approval Order, dated Feb. 16, 2012 (*Geismann* Final Approval Order"), Exhibit 7; Deposition of Barry Clark, July 23, 2014 ("Clark Dep. Tr.") (relevant portions), Exhibit 8; Deposition of Michele Westmoreland, July 24, 2014 ("Westmoreland Dep. Tr.") (relevant portions), Exhibit 9; Plaintiff's Second Request for Production of Documents ("Plaintiff's Second Prod. Req."), Exhibit 10; Defendants' Response to Second Request for Production ("Defs.' Resp. Second Prod. Req."), Exhibit 11; Defendants' First Set of Interrogatories to Plaintiff ("Defendants' First Interrogatories"), Exhibit 12; Plaintiff's Answers to First Set of Interrogatories ("Pl.'s Ans. to First Set of Interrogs."), Exhibit 13; Letter from Lawrence Fogel to Ryan Kelly, Dated August 28, 2015 ("Fogel August 28 letter"), Exhibit 14).

and objections to both the Third Requests as well as Defendants' Second Set of Interrogatories.[3] (*See* Doc. 142-17). As to the Third Requests, Defendants' March 20 letter addressed Plaintiff's responses and objections to Requests 11, 21, 29, 30, 33, 34, 36-78, 98, 105-06, 111-12, 118. (*Id.* at 1-4). Defendants also requested that Plaintiff produce relevant fax journals regarding the faxes at issue. (*Id.* at 4).

Thereafter, in a teleconference on March 30, 2015, Defendants were informed Plaintiff would review certain responses to the Third Requests. (*See* Doc. 142-18). Although not mentioned in Defense counsel's email iteration of the conference, *see id.*, the subject of the fax journals was addressed during this call, and Plaintiff's counsel advised that issue would be reviewed as well. Thereafter, during an April 27, 2015, teleconference, Plaintiff's counsel stated the fax journals for the time period of the 36 faxes were being reviewed and would be produced.

Also in its April 27 email, as to Requests 75-78 and 111-12, which sought admissions regarding whether Plaintiff published its fax numbers, Defense counsel stated: "we informed you that we have discovered evidence demonstrating that PHI has previously published at least one of its fax numbers, including a classified advertisement." (Doc. 142-9). At Plaintiff's counsel's request, Defendants subsequently produced what it later attached to its request for sanctions as Doc. 142-6, a want ad for a doctor placed by Plaintiff in the December 26, 2014, edition of "India Abroad." In a subsequent email, Plaintiff's counsel asked for any additional documents Defendants had regarding the purported "publishing" of Plaintiff's fax number, and that upon receipt of such documents, Plaintiff would review them and thereafter forward Plaintiff's amended responses to the Third Requests. (Solberg May 1 email).

---

[3] Plaintiff served Amended Responses to Interrogatories 22 and 25 of Defendants' Second Set Interrogatories. As Defendants neither compelled nor mentioned these interrogatories in their motion papers, Plaintiff does not address them.

On May 6, 2015, Plaintiff served its Amended Responses and Objections to the Third Requests, wherein Plaintiff amended answers to 30 requests. (*See* Doc. 142-20). In those amended answers, Plaintiff admitted physicians were not precluded from using facsimile numbers 513-922-2009 and 513-347-2735 in connection with treating patients at PHI. (*See* Doc. 142-20, Req. 38-39, 46-47, 50-51, 54-55, 58-59, 62-63, 66, 67, 70-71, 74-77, 105-106). Plaintiff also admitted (after objecting to the term "fax log" as vague and subject to different interpretations) its fax machine generated fax reports or journals during some or all of 2008 through 2011. (*Id*. at Req. 94-97, 107). Plaintiff also admitted it placed a "want ad" for a physician in "India Abroad" that asked applicants to call 513-922-2204 or to "Fax Resume with inquires" to 513-922-2009 (although as discussed *infra*, the ad is outside the April 27, 2008 to May 1, 2012 Time Period by well over two years). (*Id*., Req. 75-78, 112; *see also* Doc. 142-6). Finally, Plaintiff admitted its fax number 513-922-2009 "appears on the internet." (*Id*., Req. 111)

Plaintiff's fax journals were provided to Anderson + Wanca attorney Wallace C. Solberg by Plaintiff's outside corporate counsel John Lowry in a series of emails between April 17 and April 20, 2015. (Ex. 2, Solberg Decl., ¶ 2). Solberg combined these numerous emails into three discrete emails and forwarded them to an Anderson + Wanca paralegal for electronic Bates' stamping and subsequent production to Defendants. (*Id*. at ¶ 2). On May 1, 2015, Plaintiff electronically produced 1165 pages of fax journals to Defendant. In making this production, Plaintiff inadvertently omitted certain journal pages from this production, but when advised of this fact by Defense counsel, Plaintiff on June 1, 2015, produced an additional 182 fax journal pages (some of which by Defense counsel's own admission had already been produced). (Solberg Decl., ¶ 3; see also Doc. 142 at 8). Although another of Plaintiff's counsel initially thought the "*Alma Lasers*" fax journal reports had not been produced (and advised Defense counsel of same), Plaintiff

had previously produced these documents, consisting of eight pages, as reflected in the following table:

| Alma Production | Allscripts Production |
|---|---|
| PHvAL-000054 | Physicians Healthsource 002330 |
| PHvAL-000055 | Physicians Healthsource 002335 |
| PHvAL-000056 | Physicians Healthsource 002906 |
| PHvAL-000057 | Physicians Healthsource002908 |
| PHvAL-000058 | Physicians Healthsource 002891 |
| PHvAL-000059 | Physicians Healthsource 002892 |
| PHvAL-000060 | Physicians Healthsource 002893 |
| Class Cert Reply (Page ID 1362) | Physicians Healthsource 002907 |

In preparing Plaintiff's opposition to the instant motion, Plaintiff's counsel noted Defendants' contention (in a footnote, *see* Doc. 142, at 13, n.11) that there were gaps in the production of the Plaintiff's fax journals between November 5, 2008 and April 13, 2009, and between April 28, 2010 and November 30, 2010. (Solberg Decl. at ¶ 4). Solberg reviewed the electronic fax journal production and based on that review, came to believe certain fax journal reports contained in the April 17 and April 20, 2015, emails had not been produced. (*Id*. at ¶ 4). Solberg directed the paralegal who had electronically produced the fax journal documents on May 1 and June 1, 2015, to review all of the fax journal reports contained in the previously mentioned April 17 and April 20, 2015 emails. (*Id*.) Solberg was subsequently advised the paralegal had mistakenly believed one of the April 20, 2015, emails containing fax journal reports was duplicative of the April 17, 2015 email. (*Id*. at ¶ 5). Based on that inadvertent mistake, the paralegal did not Bates' stamp and produce the fax journal pages contained in one of the two April 20, 2015, emails. (*Id*.) The paralegal was directed to Bates' stamp and produce the additional PHI

fax journals documents, and the supplemental fax journal reports were made available to Allscripts (although Allscripts is required to request a password to gain access).  (*Id*. at ¶ 6).

At the July 7, 2015 hearing before this Court, Solberg stated to the Court it was his understanding that all of the fax journal reports regarding the time frame of the 36 faxes had been produced (although Solberg also stated some fax journal pages would be missing).  (Ex. 4, July 7 Tr. at 44, 45, 49, and 50).  While the error is regrettable, it was not intentional, and it has been rectified.

### B. Defendants have admitted to sending all 36 faxes to Plaintiff's fax number 513-922-2009, and each fax contains a header with one of Defendants' telephone numbers and a transmission date and time.

Plaintiff has printed hard-copies of all 36 fax advertisements sent by Defendants to Plaintiff's fax number (513-922-2009) between July 9, 2008 and December 5, 2011, and attached them to its original Complaint and FAC.  (*See* Doc. 1 at Page ID 18 to 53; Doc. 78 at Page ID 548 to 583).  Defendants admitted over two years ago that they sent the 36 fax advertisements to Plaintiff's fax number – 513-922-2009.   (Objections & Resp. Pl.'s First Interrogs., No. 3).  Defendants also identified telephone numbers from which they claim the 36 faxes were sent, as follows: (i) 919-457-5149; (ii) 866-258-3119; (iii) 919-457-4089; (iv) 919-547-5150; and 919-573-4474.  (*Id*., No. 5). One of these telephone numbers is on all 36 faxes. (Doc. 1 at Page ID 18 to 53; Doc. 78 at Page ID 548 to 583).  Furthermore, Plaintiff's name or fax number (513-922-2009) appears on several of the faxes. (Doc. 1 at Page ID 18 to 53 and Doc. 78 at Page ID 548 to 583).  Plaintiff has attached a Fax Table (Exhibit 6) identifying the 36 faxes by the listed transmission date and time on the fax, the header on the 36 faxes, the "Allscripts" telephone number contained on the faxes, the corresponding fax journal page, and whether Defendants have produced a corresponding fax transmission log for the 36 faxes.

Defendants represented to the Court at the July 7 hearing that some of the 36 faxes did not

have a transmission date and others did not have fax headers. As to the transmission dates, the

exchange was as follows:

> Mr. Solberg: [t]he big issue is, are they disputing that they sent 36 faxes to us?

> Ms. Kiser: Yes. Some of those have no – some of those have no transmission date on them.

> The Court: That's there no transmission so –

> Ms. Kiser: So how can we know whether they received that fax.

(July 7 Transcript at 52, 53). As to the claimed lack of a header, the following was represented:

> Mr. Solberg: And third, across the faxes, there is a header.

> Ms. Kiser: No. There were some that don't have a header. I swear to you there were some faxes or purported faxes you attached to the complaint that have no header at all.

(*Id*. at 55).

Contrary to Defendants' representation, all 36 faxes have both a header and a transmission

date. (*See* Doc. 1 at Page ID 18 to 53 and Doc. 78 at Page ID 548 to 583).

> **C.    Defendants have deleted/destroyed and/or failed to preserve fax transmission logs for 34 of the 36 faxes, all of which were sent during the pendency of the *Geismann* litigation, and refuse to produce an image of a laptop for forensic examination by Plaintiff's expert in an effort to locate some the deleted fax transmission logs.**

Defendants accuse Plaintiff of concealing and then destroying fax journal reports, while

Defendants ignore they have deleted/destroyed and/or failed to preserve fax transmission reports

for 34 of the 36 faxes. Moreover, all 36 faxes were sent during the pendency of a prior TCPA

lawsuit brought against Defendants captioned *Geismann v. Allscripts Healthcare Solutions, Inc.*,

No. 09-cv-5114 (N.D. Ill.). The case was filed in Illinois state court on July 17, 2009, removed to

this Court, and was eventually settled. A Final Approval Order was entered on February 2, 2012.

(*See* Ex. 7, *Geismann* Final Approval Order).

During discovery in that case, Plaintiff's counsel determined Defendants successfully sent the same fax it sent to the plaintiff (Dr. Geismann) "3,778 times to 3,736 different fax numbers between February 11, 2008 and April 26, 2008," including the fax to Dr. Geismann on April 9, 2008. (*Geismann*, Pl.'s Unopposed Mot. Prelim. Approval of Class Action Settlement & Notice to Settlement Class (Doc. 132) ¶ 2). Beginning in April 2011, the parties entered into settlement negotiations overseen by Magistrate Judge Sidney I. Schenkier and reached an agreement in October 2011. On November 1, 2011, Dr. Geismann filed an unopposed motion for preliminary approval of the class settlement, explaining that Allscripts had agreed to settle the class claims for $1.9 million. (*Id*. at ¶ 3). The motion explained the settlement was strictly limited to faxes sent "between February 11, 2008 and April 26, 2008" because that was the only time period for which Defendants had produced evidence of its faxing activity. (*Id*. at ¶5(a)). After final approval of the *Geismann* settlement, Plaintiff's counsel discovered Defendants had sent at least 36 fax advertisements to Plaintiff, from July 9, 2008, to December 5, 2011, all during the pendency of the *Geismann* litigation. (Doc. 1, ¶ 11). Defendants did not produce these faxes during discovery in *Geismann*.

At the July 7 hearing, Defense counsel advised the Court that "we had some data, your Honor. Anything we discovered, we turned over." (Ex. 4, July 7 Tr. at 53). In short, Defendants have failed to produce and state they do not have 34 of 36 fax transmission logs. The fax transmission logs would allow Plaintiff to identify the date, time and to whom the 36 faxes were sent, and whether the transmission were successful.

During the course of discovery in this case, Plaintiff deposed Barry Clark, the president of Westfax, Inc. ("Westfax"), a fax broadcaster that provided fax broadcasting services to Defendants. Defendants used Westfax to broadcast the faxes in this case beginning with the April

28, 2009 fax and ending with the December 5, 2011 fax. Westfax provides a "portal" by which its customers can access the fax broadcasting service offered by Westfax. (Ex. 8, Clark Dep. Tr. at 18). Allscripts had an account number and password to log into the Westfax portal to send faxes. (*Id*. at 17-18). To send a fax using the Westfax portal, a customer has to log in, upload a document, upload a database, *i.e.*, the target list, schedule a time and hit a button. (*Id*. at 27). Westfax bills its customers by successful page transmissions. (*Id*. at 29). Customers of Westfax have the option to receive fax transmission logs following fax broadcasts which identify whether a fax transmission was successful or it failed. (*Id*. at 30, 31, 32). The detailed report is automatically created soon after the fax broadcast and is sent to the customer via email. (*Id*. at 32). Clark testified that Defendants chose to receive detailed reports. (*Id*. at 30-31).

Michele Westmoreland, a former employee of Defendants', was also deposed. Westmoreland worked as a forms and supplies sales representative, working out of her home using a laptop computer. (Westmoreland Dep. Tr. at 6, 7, 8, 10-11). At some point in time in 2008, Westmoreland in performance of her duties for Defendants obtained a login ID and password for Westfax that allowed her to send faxes using the Westfax portal. (*Id*. at 36). Westmoreland testified she would log in, upload the image, upload the list, set a time for it to go, and click submit. (*Id*. at 37). Westmoreland testified that Westfax would send invoices to her for fax broadcasting services, and she would forward them to Allscripts accounting. (*Id*. at 74, 75, 80).

It was Westmoreland's custom and practice to email persons within her department to let them know a fax broadcast had taken place and to attach the image, and to provide the detailed fax report, which was contained in an attachment to the email. (*Id*. at 85-87). Westmoreland also testified that whether she forwarded the detailed fax report depended on whether somebody had requested that the fax be sent on their behalf. (*Id*. at 89). If not, she would "typically" delete the

email.  (*Id*. at 90).  Westmoreland testified she deleted her deleted folders, and did not archive any folders.  (*Id*. at 89-90).   Finally, Westmoreland testified she maintained in her email a marketing folder and within that folder she kept documents sent by Westfax.  (*Id*. at 103).   Westmoreland also agreed that to the best of her knowledge, the documents contained in her marketing folder on the hard drive would have fax images and lists.  (*Id*. at 106).   When Westmoreland left Allscripts in 2013, she returned the laptop.  (*Id*. at 11).

On September 26, 2014, Plaintiff served its Second Request for Production.  In Request No. 1, Plaintiff asked for "a forensic image of the Dell laptop that Michele Westmoreland shipped to Defendants in July/August 2013."  (Ex. 10, Plaintiff's Second Req. for Prod., Req. 1).  To date, Defendants have refused to produce the Westmoreland computer laptop image, and again confirmed that refusal on August 28, 2015. (Ex. 11, Defs.' Resp. to Sec. Prod. Req. at No. 1; Ex. 14, Fogel August 28 letter). Instead, Defendants seek to restrict Plaintiff to searches conducted by third parties rather than produce the image so Plaintiff's expert, Robert Biggerstaff, a forensic examiner with particular expertise in TCPA junk faxes the image, can conduct an examination to see if he can locate some of the missing fax transmission logs.  (Ex. 14, Fogel August 28 letter, at 3, 4).

While this issue will assuredly be discussed further with Defense counsel, as will Defendants' failure to preserve the fax transmission logs, the fact that Defendants have not already produced the Westmoreland laptop image (and continue to refuse to do so) should preclude Defendants' motion for sanctions as to the fax journals.  Defendants have deleted/failed to preserve the very electronic evidence that would demonstrate the dates, times and targets of their fax blasting campaigns (including the faxes sent to Plaintiff), and now want the Court to sanction Plaintiff regarding the fax journals, while at the same time opposing Plaintiff's attempts to find

Defendants' deleted fax transmission logs.

### III.    Standards for the award of fees and sanctions

If a motion to compel under Rule 37(a) is granted-or if the disclosure or requested discovery is provided <u>after</u> the motion was filed-the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  Fed. R. Civ. P. 37(a)(5)A); *Lorillard Tobacco Co. v. Elston Self Service Wholesale Groceries, Inc*., 259 F.R.D. 323, 326 (N.D. Ill. 2009).  The court cannot award these expenses where the movant failed to attempt in good faith to obtain disclosure without court intervention, where the non-disclosure was substantially justified, or where "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii); *Lorillard*., 259 F.R.D. at 326-27.  In the context of Rule 37, substantially justified does not mean justified in a high degree but instead refers a genuine dispute or a dispute in which reasonable people could differ as to the appropriateness of the contest action.  *Lorillard*, 259 F.R.D. at 327 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  The Advisory Committee Notes cite as an example of "other circumstances" the situation where the prevailing party also acted unjustifiably.  Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary Rule 37, Dec. 2013 Amendments (West 2013) (citing Fed. R. Civ. P. 37(a) advisory committee note 1970).

The court also has the inherent authority to sanction a party, which is based on the court's power "to control the judicial process and litigation" and to ensure the expeditious resolution of cases on the court's docket.  *Foodworks USA, Inc. v. Foodworks of Arlington Heights*, 2013 WL 3306196, at *6 (N.D. Ill. July 1, 2013).  Under Rule 37 or the court's inherent authority, the party seeking sanctions must demonstrate that it was prejudiced by the discovery violation.  *Id*. at *6.

District court judges "have vast discretion in supervising discovery and in declining to impose sanctions and exclude evidence." *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006).

Before deciding the reasonableness of fees requested, the court must assess whether the fees requested relate to conduct the court found fell under Rule 37. *Lorillard*, 259 F.R.D. at 328. "The moving party, and not the Court, is responsible for ferreting out and categorizing the relevant time spent on each matter." *Lorillard*, 259 F.R.D. at 328 (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)(stating that "[j]udges are not like pigs, hunting for truffles buried in" the record). The district court enjoys "wide latitude" in establishing attorney fee awards. *Romary Assoc., Inc. v. Kibbi LLC*, 2011 WL 4948834, at *2 (N.D. Ind. Oct. 18, 2011). The most useful starting point for a court to determine the amount of a reasonable fee is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," referred as the "lodestar." *Romary*, 2011 WL 4948834, at *2. The movant bears the initial burden of establishing and documenting its fees, and the appropriate hours expended and hourly rates, to the satisfaction of the court. *Id.* Within the Seventh Circuit, when courts have found motions to compel lacking in complexity, they have reduced the hours reasonably expended, often times in half or more than half. *Romary*, 2011 WL 4948834, at *3 (collecting cases). If a motion to compel consists primarily of facts with minimal or no citations to case law, a reduction in the number of hours expended in preparing and researching that motion is often warranted. *Romary*, 2011 WL 4948834, at *3.

## IV. Argument

### A. Defendants did not seek to compel as to Interrogatories 17, 22 and 27 of their First Set of Interrogatories and did not mention them in their LR 37.2 letter and did not discuss them in the meet and confers.

Defendants argue they are entitled to an award of monetary sanctions for having had to move to compel "truthful responses" to interrogatories and production of documents wrongfully withheld, stating "the great operative principle of Rule 37(a)(4) is that the loser pays." (Defs.'

14

Supp. Br. at 2). As demonstrated above, the fatal defect in this argument is Defendants did not have to compel responses to interrogatories and requests to produce. Plaintiff served Amended Responses to the Third Request and voluntarily produced the fax journal reports. The motion to compel addressed only Plaintiff's objections to 22 requests in Defendants' Third Requests.

Moreover, Defendants' LR 37.2 March 20 letter mentions nothing about Plaintiff's responses to Interrogatories 17, 22, and 27 of Defendants' First Set of Interrogatories, nor were these Interrogatories addressed in any subsequent meet and confer. Rather, these Interrogatories were first mentioned in Defendants' June 29, 2015 filing. Defendants' request for sanctions regarding these Interrogatories should be rejected on this basis alone.

**B.     Defendants' claim that Plaintiff's answers to Interrogatories 17, 22, and 27 of were not "truthful" impermissibly ignores the Time Period and is premised on wrongfully withheld documents and conclusory and unsupportable assertions.**

Defendants claim Plaintiff's Response to Interrogatory No. 17 (of its First Set of Interrogatories) is "inaccurate, if not deliberately false." (Defs.' Br. at 3). Defendants are wrong. Interrogatory No. 17 and Plaintiff's Answer are as follows:

> **Interrogatory No. 17**: Identify any and all television, radio and printed publications and any internet sites or worldwide web pages, at any time <u>during the Time Period</u>, in which or on which your telephone number or numbers used by you for the receipt of facsimile transmissions have been disclosed, published, or otherwise made available, including, but not limited to, directories and advertisements.

> **Answer:** Plaintiff objects to the request because the information sought is not relevant and will not lead to the discovery of other relevant information. No court has held that a directory or internet listing is express permission or invitation to send fax advertisements. Express permission or invitation is not a defense in this case because the advertisement does not contain the opt-out language required by 47 C.F.R. 1200. Without waiving and subject to said objections, none.

(Ex. 12, Defs.' First Set of Interrogs. No. 17; Ex. 13, Pl.'s Ans. to First Set of Interrogs., No. 17) (emphasis added).

In support of their accusation, Defendants mistakenly rely on a want ad for a physician

15

placed by Plaintiff appearing in a publication called "India Abroad," dated December 26, 2014. (Doc. 142-6 at Page ID 968). However, the "India Abroad" ad falls substantially outside the "Time Period" designated by Defendants (April 27, 2008 through May 1, 2012), <u>by two and a half years</u>. (Defs. First Set of Interrogs. at 2, ¶ 5). It is neither relevant nor responsive to Interrogatory No. 17, and certainly is not indicia of an untruthful answer by Plaintiff.

Defendants also rely on a document from internet web address <u>www.yellowpages.com</u>., printed on January 9, 2015, *see* Doc. 142-7, Page ID 970, and another from internet web address <u>http://doctor.webmd.com</u>., also printed on January 9, 2015 (Doc. 142-8, Page ID 973). Defendants conclusorily assert these items "were obviously and affirmatively" placed on the internet by Plaintiff. (Defs.' Br. at 3). Defendants submit no evidence to back up this conclusion, and the listings have no discernable date of publication. Left unaddressed by Defendants is any explanation as to why Docs. 142-7 and 142-8, which Defendants clearly (and mistakenly) intend to rely upon in their defense[4] were not produced until May 5, 2015, almost five months after the print date contained on the documents (unless Defendants have some other explanation as to the print dates). (*See* Doc. 142-7 and 142-8). Rather than producing these documents as they were required to under Rule 26(e), Defendants served their Third Requests on January 28, 2015, asking Plaintiff to: "Admit that during the Time Period, PHI published at least one of its facsimile numbers in one or more classified advertisements," and "Admit that PHI authorized the publication

---

[4] The FCC has ruled the TCPA does not "equate mere distribution or publication of a telephone facsimile number with prior express permission or invitation to receive . . . advertisements." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12408–09 (Aug. 7, 1995). Rather, "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements," as opposed to other communications. *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 193 (July 3, 2003).

of at least one of its facsimile numbers in one or more classified advertisements." (Third Requests, Nos. 75 and 76). Even though Defendants were required to produce these documents under Rule 26(e), they complain that: "Plaintiff's counsel then had the temerity [at the April 27 meet and confer] to ask Allscripts to produce the evidence it uncovered of PHI's false statements, which Allscripts did do." (Defs.' Br. at 3 n. 6). This remark is stunning. What Plaintiff wanted, and what Defendants should have produced 5 months earlier, are all documents Defendants intend to rely upon in their defense. Sanctions are automatic for this violation of Rule 26(e), and it should result in denial of the request for sanctions in its entirety. Fed. R. Civ. P. 37(c)(1).

Defendants next claim Plaintiff's answer to Interrogatory No. 22 (of its First Set of Interrogatories) is also "inaccurate, if not deliberately false." (Defs.' Br. at 3). Interrogatory No. 22 and Plaintiff's Answer are as follows:

> **Interrogatory No. 22:** Identify any other person, business, corporation, company, or unincorporated business entity that you know also used the number (513) 922-2009 to send or receive facsimile transmissions <u>during the Time Period</u>. For this interrogatory, please identify the facsimile number, the dates that these individuals shared the facsimile number and whether the facsimile number was used for personal or business transmissions.
>
> **Answer:** None.

(Ex. 13, Pl.'s Answers to First Set of Interrogs., No. 22 (emphasis added).

Defendants claim two documents support their accusation. First, a document printed from internet web address http://careon.me/doc.php., on January 9, 2015, regarding Dr. Martinez. (Doc. 142-10, Page ID 979). Defendants offer no evidence this listing was placed by Plaintiff, and the listing has no discernable date of publication. (Doc. 142-8 at Page ID 970-71). Defendants claim Dr. Martinez retired in 2011, "so this webpage featuring Dr. Martinez was certainly online when these interrogatories were propounded in 2013." (Defs.' Br. at 4, n.7). Again, Defendants' conclusory assertion does not demonstrate that permission was given by Plaintiff to "publish"

17

Plaintiff's fax number.  Moreover, Plaintiff admitted in its Amended Response that Dr. Martinez was "not precluded from using" Plaintiff's fax numbers in connection with treating patients at Plaintiff, and that Plaintiff's fax number appears on the internet. (Doc. 142-20, Am. Resp. Third Req., Nos. 71, 74, 111).  Again, this answer was not compelled but provided voluntarily. Finally, this is yet another document with a print date of January 9, 2015, that was not produced by Defendants until May 5, 2015.  Accordingly, this is yet another example of Defendants' violation of Rule 26(e) to attempt to gain advantage and should result in denial of the request for sanctions.

Next, Defendants cite to a "Welcome Letter," dated September of 2012 (after the last fax and after the cutoff for the "Time Period"), regarding Comprehensive Spine.  (Doc. 142-11). Comprehensive Spine is registered trade name for an LLC called Comprehensive Pain Solutions LLC, formed in May 2011, which started to do business in late 2011. Defendants argue that Plaintiff's witness Kathleen Curtis testified in February 2013 that Comprehensive Spine was receiving facsimiles at Plaintiff's fax number, mistakenly identified as 513-992-2009. (Defs.' Br. at 4, n.7).  However, as the testimony makes clear, Ms. Curtis was not asked whether Comprehensive Spine was receiving faxes on Plaintiff's fax line (513-922-2009) when the 36 faxes were being sent, between July 9, 2008 and December 5, 2011.

Defendants next claim Plaintiff's answer to Interrogatory No. 27 (of its First Set of Interrogatories) is "patently misleading, if not an outright lie." (Defs.' Br. at 3).  Interrogatory No. 27, and Plaintiff's Answer are as follows:

> **Interrogatory No. 27**: Identify any efforts you made to unsubscribe to any facsimiles received during the last five years.
>
> **Answer:** Plaintiff objects to the request because it is overbroad, unduly burdensome, and is not limited to the fax advertisements at issue in this case, seeks information which is not relevant and will not lead to the discovery of other relevant information.  Without waiving and subject to said objections, see list of TCPA cases filed by Plaintiff.

(Ex. 13, Pl.'s Answers to First Set of Interrogs., No. 27).

Contrary to Defendants' assertion, Plaintiff did properly answer Interrogatory No. 27 – the filing of lawsuits is the method by which Plaintiff sought to unsubscribe, *i.e.*, stop fax advertising. Defendants recognize as much in their Third Request for Admission No. 34, which asks: "Admit that Plaintiff never sent a request to any Person an opt-out request that was compliant with the requirements enumerated under 47 C.F.R. § 64.1200(a)(4)(v)." (Third Requests, No. 34). If Defendants had wanted to ask in Interrogatory No. 27 what they asked in Request No. 34, they should have done so. That they didn't does not operate to make Plaintiff's answer to Interrogatory No. 27 untruthful.

**C. Defendants' arguments regarding the fax journals are premised on a misunderstanding faxing, incorrect statements regarding what is contained on the 36 faxes, and ignoring the fact that Defendants have failed to preserve the very evidence for which they seek to sanction Plaintiff.**

In the face of the evidence set forth in the Fax Table, Defendants claim one motivation Plaintiff had to "affirmatively conceal" the existence of the fax journals is that the journals "raise questions as to whether a number of the pages attached to PHI's complaint are actually facsimiles received by PHI's fax machine." (Defs.' Supp. Br. at 4). Defendants offer that "a fax log is a report produced by a fax machine that automatically identifies all the faxes sent on a particular date," that "for each fax received, it also indicates from where the fax was sent," and that where there is no automated fax log for a fax that PHI purports to have received on a specific date, its absence is powerful evidence that PHI never actually received the fax." (*Id.*)

First, Defendants' assertions misunderstand the difference between a fax report generated by a fax machine and a fax transmission log of the type destroyed by Defendants. The header of the fax is controlled by the sender of the fax, not by the receiving fax machine. That is why there are different headers for the 36 faxes contained in the Fax Table. That Plaintiff's name or fax

number does not appear in the header is not an indication the fax was not received, it is the result of what the sender placed in the header. While this will be the subject of expert reports and testimony, Defendants' assertion as to the printout on the fax journals is simply wrong and does not indicate what Defendants claim it indicates.

Second, Defendants miss the import of their own argument, which is that Defendants' destruction of 34 of 36 fax transmission logs removed "powerful" evidence that would have demonstrated for all recipients (including Plaintiff) the date faxes were sent, to whom they were sent, and whether they were successful, and further (and unlike Plaintiff), a party in that position would be highly motivated to not discover the fax transmission logs. Defendants have admittedly deleted/failed to preserve this evidence.

Defendants next put forth the following:

Allscripts believes it has identified at least two (2) pages attached to the complaint that do not appear on the corresponding fax log pages produced by PHI. See Group Ex. G hereto (July 11, 2008 and July 21, 2008 alleged faxes and corresponding fax log pages). Moreover, twelve of the thirty-six alleged faxes attached to the complaint do not contain any information whatsoever identifying the page as actually being received by PHI's fax number at (513) 922-2009. See Ex. H. In a dubious coincidence, for ten of these, the corresponding fax log pages appear to be missing . . .

(Defs.' Suppl. Br. at 5).

As to the July 11 and July 21 faxes (Doc 150-7), Plaintiff has the hard-copy printout of each fax, each fax contains a header with the name Physicians Healthsource, Inc. and the name Misys Healthcare System, each fax has a transmission date and time, each fax has 1 of 5 "Allscripts" numbers from which the fax was purportedly sent, Defendants have admitted to sending each fax, and Defendants have destroyed and/or failed to preserve a fax transmission log as to these two faxes. (Fax Table).

As to the 12 faxes referenced by Defendants (located at Doc. 150-7 Page ID 1181 to 1197),

20

Plaintiff first notes each fax has a header and transmission date and time, which is again unexplained by Defendants. It is unclear if Defendants contend that a transmission date and time is not dispositive evidence of receipt. Defendants' assertion that these 12 faxes "do not contain any information whatsoever identifying the page as actually being received by PHI's fax number at (513) 922-2009," again evidences Defendants' misunderstanding that the sender places the header information – when the sender wants Plaintiff's fax number on the header, it places it there, when it doesn't, the number is not there. It is as simple as that. That is yet another reason that fax journals are not the same as fax transmission logs.

Dispositive of Defendants' speculative accusation and innuendo, Plaintiff has now produced fax journal reports for the following faxes: Dec. 1, 2009, June 2, 2010, July 16, 2010, August 12, 2010, Sept. 21, 2010, Sept. 30, 2010, Oct. 14, 2010, Oct. 26, 2010, Oct. 28, 2010, Nov. 30, 2010, and Dec. 29, 2010. (*See* Fax Table). In other words, Plaintiff has now produced fax journal pages for 11 of the 12 faxes referenced by Defendants. The June 23, 2010, fax is the only one of the 12 for which Plaintiff has been unable to locate a fax journal report. However, this fax has a header, transmission date and time, an "Allscripts" telephone number, and has been printed by the Plaintiff.

Plaintiff's production and actions regarding the fax journals stands in stark contrast to that of Defendants, who have not only been unable to produce 34 of 36 fax transmission logs but have refused to produce the Westmoreland laptop image for forensic examination by Biggerstaff to see if he can locate what Defendants to date have been unable to locate. If Defendants were truly interested in recovering these fax transmission logs, they would agree to such a production and forensic examination (and either the information will be there and retrievable, or it won't). That they do not demonstrates the specious nature of their request for sanctions. Plaintiff produced 19

21

of 36 responsive fax journal pages by May 1, 2015, and produced the remaining 11 by August 28, 2015. Expert reports have not yet been exchanged, and Defendants have taken one deposition to date. While Plaintiff's production has not gone as smoothly as Plaintiff's counsel would have preferred, there was no bad intent and no advantage to be gained. Instead, there was a mistake which Plaintiff's counsel discovered and corrected. As this Court noted in *Romaine v. City of Chicago*, 2006 WL 3827316, at *4 (N.D. Ill. Dec. 28, 2006), and in *Rodgers, II v. Lowe's Home Centers, Inc.*, 2007 WL 257714, at *6 (N.D. Ill. Jan. 30, 2007), "mistakes are inherent in the human condition," but "the law frowns on playing "Gotcha" and relying on a mistake to gain an opportunistic advantage." Defendants' request for sanctions as to the production of the fax journals should be denied.

>    **D.    Defendants' request for attorney's fees fails to state which portion of Rule 37 upon which it is based, is not properly supported, should not be rewarded to the extent it is premised on the requests to admit, and "other circumstances" make the award of attorney's fees unjust.**

Defendants attached as Exhibit A to their supplemental brief a document that purports to support their request for fees. Defendants request for fees should be denied for the following reasons.

First, Defendants bear the burden of establishing and documenting their fees. *Lorillard*, 259 F.R.D. at 328; *Romary*, 2011 WL 4948834, at *2. Defendants have not done so. They have redacted each and every attorney entry so as to preclude Plaintiff from any fair opportunity to oppose the claim. That Defendants offer the Court an *in camera* review does little to help Plaintiff address the reasonableness of the fees requested. On this basis alone, the claim for fees should be denied.

Second, Defendants' motion to compel as to the Third Requests was granted in part and denied in part. (Doc. 147). Under these circumstances, Rule 37(a)(5)(C) provides as follows:

> If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. Pro. 37(a)(5)(C). Again, Defendants' redaction does not allow Plaintiff "an opportunity to be heard." Moreover, as stated above, the Court "cannot award these expenses where the movant failed to attempt in good faith to obtain disclosure without court intervention, where the non-disclosure was substantially justified, or where "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii); *Lorillard*., 259 F.R.D. at 326-27. As to "other circumstances" making an award of expenses unjust, *see* Fed. R. Civ. P. 37(a)(5)(A)(iii), the Advisory Committee Notes cite as an example the situation where the prevailing party also acted unjustifiably. *See* Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary Rule 37, Dec. 2013 Amendments (West 2013) (citing Fed. R. Civ. P. 37(a) advisory committee note 1970).

Here there are several reasons making an award unjust. Although requests for admissions under Rule 36 are governed by the same relevance standards set in Rule 26(b), such requests are not, strictly speaking, discovery devices, since they presuppose that the propounding party knows or believes the facts sought and merely seeks a concession on that fact from the other party. *James v. McGuire Correctional Facility*, 2012 WL 3939343, at *4 (N.D. Cal. 2012): *Kelly v. McGraw-Hill Companies, Inc.,* 279 F.R.D. 470, 471-72 (N.D. Ill. Feb. 7, 2012). "[B]ecause Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or obtain production of documents, requests for admission should not be used as a method of discovery for those purposes." 7 Moore's Federal Practice, § 36.02[2] (3rd ed.2000); *see also Sommerfield v. City of Chicago*, 251 F.R.D. 353, 356 n. 6 (N.D. Ill. 2008); *Robinson v. Stanley*, 2009 WL 3233909, at *2 (N.D. Ill. Oct. 8, 2009).

Here, the Court expressly recognized that Defendants were using the requests to admit

improperly. All but one of the disputed requests sought an admission as to whether a particular former employee of Plaintiff had given "permission to one or more Persons to send facsimiles" to Plaintiff's fax number. At the hearing, this Court inquired whether Defendants had deposed, spoken with, or had other reason to believe these former employees had given such permission.

> I'm really not – as I look at this again, I maybe misread these. I just assumed that [Dr.] Kaleem, for example, you knew and there was no dispute [he] had given permission to use either a specific fax number or an unspecified fax number. And is that not right?

(July 7 Transcript at 35). When Defense counsel acknowledged that it had no such information, and it was using the requests for admission in an effort to make Plaintiff investigate whether its former employees may have done so, this Court expressed reservations about the propriety of the requests:

> . . . that's not the function of a request to admit. A request to admit is designed for people to agree on where the facts are undisputed. It is not to get people to agree to something that is either disputed or unknown . . . . But I don't understand – you're using requests to admit, I think, incorrectly.

(*Id*. at 36, 38). This Court's initial reservations were then set forth in the formal entry that resolved the Motion to Compel:

> It must be noted, however, that during oral argument, facts that were not apparent from the motion came to light. By way of example, it was learned that Dr. Kaleem and other have not worked for the defendant for some years. In view of this and other information adduced at the oral argument, many of the specific requests to admit are dubious under Rule 36. Rule 36 is not a discovery device.

(Doc. 147).

In short, Defendants' misuse of Rule 36 should not result in the award of attorney's fees.

It is unclear what Rule Defendants are relying on as to their purported motion to compel "truthful" responses. In addition to the unsupportable nature of the allegations underlying this argument, the circumstances described regarding Interrogatories 17, 22, and 27 above clearly constitute "other circumstances," making an award of expenses unjust. Fed. R. Civ. P.

37(a)(5)(A)(iii).  In short, Defendants withheld documents, premised requests to admit upon those documents, and now want fees their efforts.  The award of fees would be unjust.  Moreover, Plaintiff provided its Amended Responses to the Third Requests and the fax journals prior to the filing of the motion to compel (with the exception of the August 28, 2015 supplemental production of the fax journals).  On that basis as well, no fees should be awarded.  Fed. R. Civ. P. 37(a)(5)(A) (if the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed").

Finally, other circumstances exist making any award of attorney's fees regarding the fax journals "unjust" – Defendants deleted and/or failed to preserve their fax transmission logs for 34 of 36 faxes while Plaintiff has provided fax journal reports for 30 of 36 faxes. Defendants destruction of evidence under the circumstances described herein should preclude the award of any attorney's fees regarding the fax journals.

Dated:  August 31, 2015             s/ Ryan M. Kelly
                                              Ryan M. Kelly
                                              One of Plaintiff's Attorneys

Brian J. Wanca                               Philip A. Bock
Ryan M. Kelly                                BOCK & HATCH
ANDERSON + WANCA              134 N. LaSalle Street, Suite 1000
3701 Algonquin Road, Suite 500     Chicago, IL 60602
Rolling Meadows, IL  60008         Telephone: 312/658-5500
Telephone:  847/368-1500

Max G. Margulis                            George D. Jonson
MARGULIS LAW GROUP           Matthew Stubbs
28 Old Belle Monte Road           MONTGOMERY, RENNIE & JONSON
Chesterfield, MO  63017            36 East Seventh Street, Suite 2100
Telephone:  636/536-7022         Cincinnati, Ohio 45202
                                           Telephone:  513-241-4722

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


s/ Ryan M. Kelly