# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 3233 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| ALLSCRIPTS HEALTH SOLUTIONS, INC. and ALLSCRIPTS HEALTHCARE LLC, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff filed suit against the defendants on May 1, 2012, under the Telephone Consumer Protection Act, 47 USC §227 ("TCPA"), which prohibits any person from sending unsolicited fax advertisements. The plaintiff claims that defendants violated the Act by sending it 36 unsolicited fax advertisements between February 11, 2008, and April 26, 2008. Three years into this litigation, on June 1, 2015, the defendants filed a counterclaim, which charged the plaintiff with having violating a software agreement between Physicians Healthsource and Allscripts, that covered the software designed to be used in connection with defendants' medical billing and collections.[1] The counterclaim alleges that plaintiff licensed their former office manager to use the software at home while doing subcontractor work for them in 2008 and 2009. The plaintiff has moved to dismiss the

---

[1] Defendants, Allscripts Healthcare Solutions and Allscripts LLC, are successors in interest to Medic Computer Systems, LLC, which originally had the software licensing agreement with plaintiff. Neither side makes an issue out of whether defendants – non-signatories – can be bound to the arbitration clause. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)(". . . there are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference.")

counterclaim for improper venue or, in the alternative, to stay it pending arbitration pursuant to an arbitration clause in the parties' software licensing agreement. The arbitration clause provides that:

> Any dispute arising out of, or in connection with, this Agreement shall be finally settled by binding arbitration in Raleigh, North Carolina, in accordance with the then-current rules and procedures of the American Arbitration Association by one (1) arbitrator appointed by the American Arbitration Association. The arbitrator shall apply the law of the State of North Carolina, without reference to rules of conflict of law or statutory rules of arbitration, to the merits of any dispute or claim. . . . . The parties agree that, any provision of applicable law notwithstanding, they will not request, and the arbitrator shall have no authority to award punitive or exemplary damages against any party.

(Dkt. #139-1, at 17). The defendants do not contend that their counterclaim is outside the scope of the arbitration clause, but argue only that, by filing the TCPA claim in federal court, the plaintiff has waived its right to compel arbitration of the software license dispute that is the subject of the counterclaim.

Not surprisingly, the defendant points to cases that it reads as espousing a federal policy favoring arbitration. *See e.g.*, *Dr. Robert L Meinders, D.C. Ltd. v. UnitedHealth Care, Inc.*, _F.3d_._ _ 2015 WL5117081, at 2 (7th Cir. 2015); *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008); *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.,* 969 F.2d 585, 590 (7th Cir. 1992). One could, to use Judge Poser's phrasing, further "gild[ ] the lily," by adding "that arbitration is a darling of federal policy, that there is a presumption in favor of it, that ambiguities in an arbitration clause should be resolved in favor of arbitration, and on and on in this vein." *Andermann v. Sprint*, 785 F.3d 1157, 1159 (7th Cir. 2015). It's true that these sorts of generalities (minus the "darling") appear in numerous cases. But excised from the context of their

2

utterance they are misleading and thus unhelpful.[2] Their purpose "is to make clear, as had seemed necessary because of judges' historical hostility to arbitration, that arbitration was no longer to be disfavored." *Andermann*, 785 F.3d at 1159.

And so, as the Seventh Circuit has said repeatedly said, there is no national policy favoring arbitration. *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 666 (7th Cir. 2009) (Easterbrook, C.J.); *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003). Arbitration agreements are optional and enforced just like other contracts. "The Federal Arbitration Act eliminates hostility to private dispute resolution; it does not create a preference for that process." *Volt Information Sciences, Inc. v. Stanford University*, 489 U.S. 468, 476 (1989). People do not "violate" or "undermine" any federal policy if they litigate rather than arbitrate. Federal policy favors arbitration only in the sense that it favors contracts in general. *See Gotham Holdings, LP*, 580 F.3d at 666. A party can be forced to arbitrate only those matters that it has agreed to submit to arbitration. *Meinders*, 2015 WL 5117081, at *3; *Stone*, 328 F.3d at 345. "[N]othing beats normal rules of contract law to determine what the parties' agreement entails." *Stone*, 328 F.3d at 345.

While the parties have an agreement to arbitrate disputes, the question here, as always, is, disputes about what and, in this case, whether the plaintiff has waived its right to arbitrate. We address the latter issue first. The right to arbitrate, like most rights, can be waived, either expressly or impliedly. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). There has been no express waiver here, so it must be determined from the

---

[2] There is a danger in taking general statements in an opinion out of context. *See Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.); *Illinois v. Lidster*, 540 U.S. 419, 424 (2004); *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 921 (7th Cir. 2003). "[I]n a system of case law such statements can be misleading if carelessly lifted from the case-specific contexts in which they were originally uttered." *All-Tech Telecom v. Amway Corp*, 174 F.3d 862, 866 (7th Cir. 1999) (Posner, C.J.).

3

plaintiff's actions – the "totality of the circumstances" – whether a waiver can be inferred. *Id.* Some courts have said that the party asserting a waiver "bears a heavy burden," and that "action inconsistent with the right to arbitrate does not necessarily waive the right to arbitrate, especially where there is no showing that the party asserting the waiver has been prejudiced." *St. Mary's*, 969 F.2d at 590.

But the court in *St. Mary's,* while acknowledging that several circuits had held that a defaulting party's actions cannot amount to waiver absent prejudice to the non-defaulting party, ultimately declined to follow those cases, stressing that they were premised generally on what those courts perceived as the "strong federal policy favoring enforcement of arbitration agreements." But the panel in *St. Mary's* did not endorse that categorical approach; quite the contrary. The court said that waiver depends on all the circumstances in a particular case, rather than on any rigid rules and that prejudice is but one relevant circumstance to consider in determining whether a party has waived its right to arbitrate. The court emphasized that merely because prejudice must be considered does not necessarily mean that there can be no waiver absent prejudice. Prejudice is simply one component of the waiver analysis, and a district court should consider it just as it should consider any other relevant factor. "But where it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party." *St. Mary's* , 969 F.2d at 590. More recently, the Seventh Circuit stressed that in this Circuit a showing of prejudice is not a prerequisite to a finding of waiver. Prejudice is merely a relevant factor in the totality-of-the-circumstances analysis. *Kawasaki Heavy Indus., Ltd.*, 660 F.3d at 994 (citing *St. Mary's*).

Defendants/counter-plaintiffs do not even allege prejudice, so that counts to some degree against a finding of waiver. Setting that aside, we look to what the plaintiff did in this case to see

whether their conduct is inconsistent with their right to invoke the arbitration provision in the agreement. Several factors are relevant in this calculus, but diligence or the lack thereof should weigh heavily in the decision. The Court has framed that inquiry like this: "did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002)(quoting *Cabinetree,* 50 F.3d at 391). insert whole cite This factor weighs against a finding of waiver as well.

Basically, all plaintiff has done is file its TCPA case and participate in the ensuing litigation – which, in this case, means protracted and disputatious discovery – "the bane *of modern litigation."* *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000). Once the defendants filed their counterclaim referencing the software licensing agreement's provisions against sub-licensing, the plaintiff was not slow in asserting the arbitration provision. But the question is, can they reasonably have been expected to think their TCPA case had anything to do with the software licensing agreement. *Ernst & Young*, 304 F.3d at 756. While defendants say yes, it's a curious position for them to take.

Based on their own participation in this case, it is a fair conclusion that the defendants never thought the TCPA claim had anything to do with the software licensing agreement and, therefore, was subject to arbitration. When the defendants initially answered the Complaint in April 2013, they asserted a number of affirmative defenses, and the arbitration provision, not surprisingly, was not among them. (Dkt. # 59). These defenses were much the same in January 2014. (Dkt. # 80, ¶ 7; at 11-14). And in May 2014, they whittled the asserted defenses down to a handful, but, still, there was not so much as an insinuation that the plaintiff might be in the wrong forum. (Dkt. # 98,

5

¶ 7; at 10-12). It was not until May 2015– three years after plaintiff filed its supposedly arbitrable TCPA claim – that the defendants added (somewhat tepidly) the defense of "Arbitration" to their answer, alleging that the sales contracts pursuant to which plaintiff purchased or leased their software "contain arbitration clauses that may require some or all of the claims asserted herein to be resolved through arbitration and/or other informal dispute resolution procedures." (Dkt #134-1, at 15). Still, even then, the defendants did not challenge the venue. (Dkt. # 134-1, ¶ 7). In any case, three years is certainly a long time to sleep on one's rights, especially if, as one would gather from defendants' brief, it was *so* "*clear*" that the TCPA claim was subject to the arbitration provision of the software licensing agreement. (Dkt. #162, at 9). It certainly wasn't "clear" to the defendants.

The TCPA authorizes awards of actual damages or $500 per fax, whichever is greater, and can be trebled if the violation was willful. *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015). With 36 faxes in play here, we are talking about damages of $18,000 if the twin spectres of treble damages and class action litigation, *see Iowa Grain Co. v. Brown*, 171 F.3d 504, 510 (7th Cir. 1999)("Because arbitration is based fundamentally on an agreement between the parties, the kind of class action contemplated by Fed.R.Civ.P. 23(b) is normally unavailable in arbitration."), vanish. There was every incentive for the defendants to assert the arbitration provision at the outset of this case. The fact of the matter is that the applicability of the arbitration provision to a TCPA claim wasn't "clear" at all, and the plaintiff could no more be reasonably expected to think its claim was subject to the arbitration clause than the defendants.

We realize, of course, that the plaintiff's incentives were the opposite of the defendants'. The plaintiff had every incentive to avoid any arbitration provision that might be applicable to its claims. A recovery of $18,000 is likely not worth three years' worth of effort by four law firms. Obviously

6

treble damages and attorneys' fees are the real (and understandable) lures in this case. But the totality of the circumstances suggests that the plaintiff did not think when it filed its lawsuit that it had anything to do with the software agreement– which was not mentioned until the defendants filed their motion to amend their answer and counterclaims in May 2015.

Oddly, the defendants claim that the plaintiff "concealed" the software licensing agreement (Dkt. #162, at 11), but that would mean that the defendants had no idea they had a software licensing agreement with the plaintiff. That assertion does not commend itself to ready acceptance, and being unsupported, it need not be credited. *Sommerfield v. City of Chicago,* 613 F.Supp.2d 1004, 1017 (N.D.Ill.2009)(collecting cases).

In *Cabinetree*, the Seventh Circuit explained that there are cases where the selection of a judicial forum and participation in litigation do not necessarily mean there has been a waiver of arbitration:

> There might be doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run. Some issues might be arbitrable, and others not. The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed. We need not try to be exhaustive. It is enough to hold that while normally the decision to proceed in a judicial forum is a waiver of arbitration, a variety of circumstances may make the case abnormal, and then the district court should find no waiver or should permit a previous waiver to be rescinded.

50 F.3d at 390. This is one of those cases. There are certainly doubts about arbitrability, and it may well be that some issues are arbitrable and others are not. The shape of the case certainly changed when the defendants injected the software licensing agreement into it through their counterclaim. And that agreement came into view quite recently as a result of the deposition of plaintiff's former

7

office manager. Overall, this certainly seems to be an "abnormal" case.

Defendants haven't found a case like it. They rely almost exclusively on cases dealing, not with the question of whether a waiver occurred, but with the very different question of whether an arbitration clause was applicable to a particular dispute. And so, in a case like *Gore v. Alltel Communications, LLC*, 666 F.3d 1027 (7th Cir. 2012), language similar to the arbitration clause in this case – "arising out of" – was found to take in claims stemming from the transitioning from one wireless service company to another, including breach of contract based, consumer fraud, and unjust enrichment. But cases like *Gore* are in a different posture than this case. Here, it is defendants' burden to prove a waiver – that is, that by filing their TCPA claim the plaintiff waived the right to have claims under the software licensing agreement arbitrated.

In *Gore* and the other cases defendant relies upon, it was the party trying to avoid arbitration that the deck was stacked against. In the context of the *Gore* case, for example, the court said it would "not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" 666 F.3d at 1032. Here, again, we are trying to decide if the plaintiff did all that could reasonably be expected to assert the arbitration clause earlier than it did. And as we have already discussed, the defendant didn't even realize there was a chance a TCPA claim was arbitrable.[3]

Even so, it's much easier to see claims like those asserted in *Gore* "arising out of" such an agreement than it is to see junk faxes coming under the purview of the software license in this case. And defendants don't do much to explain their position on it.

---

[3] The other case defendants point to, *Sweet Dreams Unlimited, Inc. v. Dial-a-Mattress Int'l, Ltd.*, 1 F.3d 639 (7th Cir. 1993), came to the court in the same posture as *Gore*. Waiver was not an issue. The court had to construe all doubt against the party seeking to avoid arbitration.

Defendants tell us that plaintiff provided its fax number on an "Installation Sales Profile" form in 2001. But that's a rather flimsy hook to hang an argument that a federal "junk fax" claim is arbitrable under the software licensing agreement. The form also included phone number and address, which, to defendants' way of thinking, might bring obscene phone calls and vandalism under the arbitration provision. But in deciding what is included within the scope of an arbitration clause – that is, what did the parties agree to arbitrate – absurd results are to be avoided. *Cf. Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003)(it would be absurd to contend that an arbitration clause in a loan agreement covered a wrongful death action if the lender murdered the borrower to discharge defaults on the loan).[4]

The defendants also submit that the parties "faxed information to each other as a result of their business dealings." (Dkt. # 162, at 9). But the evidence they cite pertains to only two such occasions, and both are clearly related to the software license. In one, the plaintiff specifically requested that a quote for a back-up battery be sent by fax. In the other, the doctors had to sign a document related to a printer quote and fax it back. (Dkt. # 165-1, at 3). That's a far cry from unwanted faxed advertisements, potentially actionable under the TCPA.

And finally, the defendants submit that deposition testimony shows that they received permission to send information on running the software by fax. The testimony cited shows that, when someone with plaintiff's firm needed software support, they would call, and that sometimes defendant would ask if they could send something over by fax. On those occasions, they would fill out whatever it was and send it back. (Dkt. # 162-3, at 3). And, there were two other occasions in

---

[4] In the interpretation of any contract, absurd results are to be avoided. *United States v. Barnett*, 415 F.3d 690 (7th Cir. 2005); *Beanstalk Group. Inc. v. AM General Corn.*, 283 F.3d 856 (7th Cir. 2002).

which plaintiff requested information about an upgraded computer and printer; that information was faxed as well. (Dkt. # 162-3, at 6-8). But, again, that has nothing to do with the faxed advertisements at issue here, which pertained to free beach towels or copy paper or cookie jars with office supply orders, seminars, baseball game outings, and the like; really, anything but upgraded computers and printers – or even software, which is the subject of the agreement where the arbitration clause is found. (Dkt. # 1-2, at 2-37).

It's clear from considering the defendants' foregoing assertions that this case is not on anything like similar footing with cases in which a court has found a TCPA claim covered by an arbitration clause. In most of those cases, there is a loan agreement and the unwelcome calls or faxes are about collecting the debt. *See, e.g,, Conway v. Done Rite Recovery Servs., Inc.*, 2015 WL 1989665, at *5 (N.D. Ill. 2015); *Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379, at *2 (N.D. Ind. 2014). The connection is obvious. While these are not waiver cases, it would not be difficult to find that a plaintiff who chose a judicial forum and proceeded with litigation had not done "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Ernst & Young.*, 304 F.3d at 756. Not so when the arbitration clause is in a software licensing agreement, and the junk faxes offer free beach towels when certain amounts of office supplies are purchased.

Clearly, the defendants have not met their burden of establishing waiver in this case. The question remains, however, whether the proper course is to dismiss the counterclaim or stay the proceedings and compel arbitration. Both parties claim that the case law goes either way. But one thing the parties have not focused on is that the arbitration clause requires arbitration in Raleigh, North Carolina. "[A] district court cannot compel arbitration outside the confines of its district."

*Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *Haber v. Biomet*, Inc., 578 F.3d 553, 558 (7th Cir. 2009). "[D]ismiss[al] for improper venue, rather than a . . . stay or . . . compel[ing] arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district." *Faulkenberg*, 637 F.3d at 808. Accordingly, the counterclaims are dismissed for improper venue.

A final word. Judge Posner is quite right in saying that "few things are more futile than trying to make people good by preaching at them..." Posner, Overcoming Law, 95 (Harv.Univ. Press 1995). Still, it is perhaps not inappropriate to say this is a case that, at least in its present posture, cries out for settlement. The advice given by the court in *Blydenburgh v. Welsh*, 3 F.Cas. 771,776 (c.c. PA 1831) is not any the less valid today than it was when originally given: "...we may recommend a settlement of this matter by the parties or their counsel or friends; thus avoiding... [further] expensive, troublesome and unpleasant litigation."

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to dismiss for improper venue [Dkt. # 144] is GRANTED.

10/21/15     **ENTERED:** _____
                          UNITED STATES MAGISTRATE JUDGE

11