**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 12-cv-03233 |
| v. | ) ) | Magistrate Judge Cole |
| ALLSCRIPTS-MISY'S HEALTHCARE SOLUTIONS, INC., and ALLSCRIPTS HEALTHCARE, LLC | ) ) ) ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**</u>

Plaintiff, Physicians Healthsource, Inc., by and through its attorneys, submits Plaintiff's Memorandum in Support of Motion to Compel.

## I.    <u>Introduction</u>

Plaintiff's currently pending First Amended Complaint ("FAC") asserts a claim against Defendants for violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq*., regarding thirty-six fax (36) advertisements sent by Defendants (or alternatively, "Allscripts") to Plaintiff. To date, Defendants have failed to produce and state they do not have 34 of 36 fax transmission logs regarding the 36 fax broadcasts at issue in this case. The fax transmission logs are of the utmost relevance to Plaintiff's case as they would allow Plaintiff to identify the date, time and targets to which the 34 fax advertisements were transmitted, and whether the transmissions were successful. Defendants have in their possession a laptop used by their former employee, Michelle Westmoreland ("Westmoreland"). Westmoreland was directly involved in the fax advertising at issue in this case. In particular, Westmoreland used fax

broadcaster Westfax, Inc. ("Westfax") to send fax advertisements for Defendants. Following the fax broadcasts, Westfax sent to Westmoreland via email an invoice and the fax transmission logs regarding the fax broadcast. Westmoreland testified she deleted these emails from her laptop. Defendants have represented to Plaintiff that they have a forensic image of Westmoreland's laptop ("Westmoreland Image") and that they have conducted "three rounds" of electronic searches of the Westmoreland Image but were unable to locate any of the 34 fax transmission logs.

As discussed *infra*, Plaintiff submits that the fax transmission logs sent by fax broadcaster Westfax to Westmoreland may be recoverable through a forensic examination of the Westmoreland Image by Plaintiff's expert, Robert Biggerstaff ("Biggerstaff"). Notwithstanding that Defendants have admitted to deleting emails which contained relevant fax transmission logs, Defendants refuse to produce the Westmoreland Image for examination by Biggerstaff. Instead, Defendants have offered to "re-forensically image" the Westmoreland hard drive and have a third party conduct the same word searches that Defendants claim they have already applied to the Westmoreland Image that failed to turn up any additional fax transmission logs. Plaintiff should be given the opportunity to do what Defendants have admitted they cannot – locate deleted emails from the Westmoreland Image that contain relevant fax transmission logs. Plaintiff requests that the Court enter an order requiring Defendants to produce the Westmoreland Image so it can be forensically examined by Biggerstaff in an effort to recover the deleted fax transmission logs.

## II.  Background

### A.  Defendants retain Westfax to broadcast fax advertisements; Westfax sends invoices and fax transmission logs of broadcasts to Westmoreland.

During the course of discovery in this case, Plaintiff deposed Barry Clark, the president of a fax broadcaster Westfax. Defendants used Westfax to broadcast fax advertisements in this case beginning with the April 28, 2009, fax and ending with the December 5, 2011 fax (32 of 36 faxes).

(*See* Doc. 164-4). Westfax provides a "portal" by which its customers can access the fax broadcasting service offered by Westfax. (Clark Dep. Tr., Doc. 164-8, at 18). Allscripts had an account number and password to log into the Westfax portal to send faxes. (*Id*. at 17-18). To send a fax using the Westfax portal, a customer has to log in, upload the image (fax advertisement), upload a database (the target list), schedule a time for the broadcast, and hit a button to transmit the broadcast. (*Id*. at 27). Westfax bills its customers by successful page transmissions. (*Id.* at 29). Customers of Westfax have the option to receive fax transmission logs following broadcasts which identify on a fax-by-fax basis whether each transmission was successful. (*Id*. at 30, 31, 32). The detailed report is automatically created soon after the fax broadcast and sent to the customer via email. (*Id.* at 32). Clark testified that Defendants chose to receive detailed reports. (*Id*. at 30-31).

Westmoreland was also deposed on July 24, 2014. (*See* Doc. 164-9). Westmoreland worked as a forms and supplies sales representative, working out of her home using a laptop computer. (Westmoreland Dep. Tr., Doc. 164-9, at 6, 7, 8, 10-11). At some point in time in 2008, Westmoreland, in performance of her duties for Defendants, obtained a login ID and password for Westfax that allowed her to send faxes using the Westfax portal. (*Id*. at 36). Westmoreland testified she would log in, upload the image, upload the list, set a time for it to go, and click submit. (*Id*. at 37). Westmoreland testified that Westfax would send invoices to her for fax broadcasting services, and she would forward them to accounting. (*Id*. at 74, 75, 80).

Westmoreland testified it was her custom and practice to email persons within her department to let them know a fax broadcast had taken place and attach the image and provide the detailed fax report, which was contained in an attachment to the email. (*Id*. at 85-87). Westmoreland also testified that whether she forwarded the detailed fax report depended on whether somebody had requested the fax be sent on their behalf. (*Id*. at 89). If not, she would

"typically" delete the email. (*Id*. at 90). Westmoreland testified she deleted her deleted folders, and did not archive any folders. (*Id*. at 89-90). Westmoreland also testified she maintained in her email a marketing folder and within that folder she kept documents sent by Westfax. (*Id*. at 103). Westmoreland agreed that to the best of her knowledge, the documents in her marketing folder on the hard drive would have fax images and lists. (*Id*. at 106). When Westmoreland left Allscripts in 2013, she returned the laptop. (*Id*. at 11). Defendants have represented that a forensic image of the Westmoreland laptop hard drive was made and searched. (Doc. 164-14, at Page ID 1753).

### B. Defendants conducted searches of electronically stored information, including the Westmoreland Image, but failed to locate the remaining 34 fax transmission logs.

Following Westmoreland's deposition, Plaintiff on September 26, 2014, served its Second Request for Production. (Doc. 164-10). In Request No. 1, Plaintiff sought "a forensic image of the Dell laptop that Michele Westmoreland shipped to Defendants in July/August 2013." (*Id*., Req. 1).

On December 12, 2014, and notwithstanding Westmoreland's previous testimony set forth above, Defendants responded in part as follows:

> Allscripts further objects to Request No. 1 as seeking documents and information that are not relevant or likely to lead to the discovery of relevant evidence. Allscripts further objects to Request No. 1 as seeking confidential and proprietary information of Allscripts and/or third parties that Allscripts has an obligation not to disclose. Allscripts further objects to Request No. 1 as overbroad and unduly burdensome because it seeks a forensic image of a "laptop", the vast majority of the contents of which is almost certainly entirely nonresponsive.

(Defendants' Objections and Responses to Plaintiff's Second Requests for Production of Documents, Doc. 164-11, at 4-5). Defendants then stated that subject to the foregoing objections, it would meet with Plaintiff regarding a search for relevant information. (*Id*. at 5).

By letter dated January 6, 2015, and attached hereto as **Exhibit 1**, Defendants set forth proposed search terms for electronic searches of Defendants' electronically stored information (ESI), to be conducted by Defendants. (Ex. 1, at 2). The January 6 letter does not mention the

Westmoreland Image. Plaintiff is unaware of when the searches referenced in the January 6 letter were conducted, by whom the searches were conducted, and the procedures employed in conducting the searches. The searches did not recover any of the missing 34 fax transmission logs.

On July 14, 2015, Plaintiff's attorney Ross Good had a telephone conference with Defense counsel regarding the Westmoreland hard drive, which he followed with an email dated July 14, 2015, attached as **Exhibit 2**. After recounting portions of the Westmoreland deposition transcript regarding potential ESI, including Westmoreland's testimony that she kept Westfax documents in an e-mail file folder called "marketing," Good stated: "We believe the best way to locate what Westmoreland is describing here is to forensically image the hard drive and perform searches on the forensic image" and further, that "Liv [Defense counsel Liv Kiser] agreed to diligently search for an answer to the following question: was the Westmoreland hard drive already forensically imaged and was it already searched for the terms we previously agreed to." (*Id*. at 1, 2).

On July 30, 2015, Good sent an email to Defense counsel, attached hereto as **Exhibit 3**, stating: "A couple of weeks ago you said you were going to look into whether a forensic image has been made of Westmoreland's hard drive and Wally [Plaintiff's counsel Wallace Solberg] discussed it again with Larry Fogel last Friday. Do you have an answer yet?" On July 31, 2015, Defense counsel responded, stating: "Our client is out of the office through Monday, and we hope to have an update for you soon thereafter." (*Id*.)

On August 18, 2015, following a meet and confer on August 6, 2015, during which the parties discussed a forensic review of the Westmoreland hard drive, Plaintiff sent Defendants a proposed Agreed Protective Order Regarding Computer Forensic Discovery ("ESI Protective Order") along with the cv of its expert, Robert Biggerstaff. (*See* email from Ryan Kelly to Liv Kiser, dated Aug. 18, 2015, attached hereto as **Exhibit 4**). The ESI Protective Order provided that:

(i) Biggerstaff will review the Westmoreland Image to retrieve electronic data that exists or could have been deleted that is relevant to this lawsuit, *id*. ¶3; (ii) Biggerstaff will then create a CD-Rom, DVD or other electronic data source containing documents Biggerstaff identifies as relevant pursuant to ¶ 3 (of the proposed ESI Protective Order) and provide it to Defense counsel for review of the search results and data for objections based on privilege or other grounds prior to the search results and data being provided to Plaintiff's counsel, *id*., ¶¶4, 5; (iii) counsel for Defendants shall produce all search results to which there is no objection to Plaintiff within 28 days and will provide a privilege log to Plaintiff's counsel (and Biggerstaff) identifying all documents or other data submitted by Biggerstaff but not produced to Plaintiff, *id*., ¶6; (iv) Biggerstaff is precluded from discussing the contents of any data or documents other than that which falls with ¶3, *id*. at ¶7; and (v) Plaintiff will be responsible for the cost of all work performed by Biggerstaff, *id*. ¶8. Plaintiff and Biggerstaff would also agree to return to Defendants, or destroy, all copies of documents and data provided pursuant to this ESI Protective Order, and would destroy all copies of any notes, summaries, compilations or other documents referring to the contents of the aforementioned documents and data within seven (7) days of receiving notice of the conclusion of this litigation.

Defendants responded to Plaintiff's proposed ESI Protective Order on August 28, 2015. (*See* Letter from Lawrence Fogel to Ryan Kelly, Doc. 164-14). Notwithstanding that as of July 31, 2015, Defense counsel did not know whether the Westmoreland hard drive had been forensically imaged, Defense counsel stated in the July 31 letter that Plaintiff's request for a forensic image of the Westmoreland hard drive was "apparently founded on the (mistaken) belief that Ms. Westmoreland's hard drive had not been previously forensically imaged, and thus premised on the (incorrect) assumption Allscripts had not produced all responsive documents from Ms. Westmoreland's hard drive, namely fax transmission data." (*Id*. at 1). Defendants stated that upon

receiving Plaintiff's request, Allscripts confirmed that Westmoreland's hard drive was "forensically imaged at the outset of electronic discovery, and that "it was against the forensic image of Ms. Westmoreland's hard drive that Allscripts conducted three rounds of electronic searching and production of documents. . ." (*Id.* at 1, 2). Defendants then attempted to set forth a rationale as to why they should not be required to produce the Westmoreland Image for examination by Biggerstaff, arguments which are addressed *infra* by Plaintiff. Next, Defendants offered to repeat their previously-failed electronic search, although this time with an independent third-party examiner. Specifically, Defendants state they will arrange for a "qualified, third-party eDiscovery vendor to re-forensically image" the Westmoreland hard drive, apply the same search terms used for the "third round of electronic discovery," and then compare the results to the data previously retrieved from the Westmoreland Image, all at Plaintiff's expense. (*Id.* at 4). Defendants state in the event this compare reveals any un-reviewed documents, Defendants will at their expense conduct a review of new documents and produce documents responsive to Plaintiff's document requests, subject to Defendants' previously served responses and objections.

### C.  Local Rule 37.2 Statement.

The parties discussed production of the Westmoreland Image on August 6, 2015, wherein Plaintiff's counsel, Ryan Kelly and Wallace Solberg, and Defense Counsel, Liv Kiser and Lawrence Fogel participated. In addition, the above discussed correspondence was exchanged on August 18 and August 28, 2015. On December 1, 2015, via email, Defense counsel (Liv Kiser) again reiterated Defendants' refusal to produce the Westmoreland Image for forensic examination by Biggerstaff. In short, the parties are at an impasse as to the Westmoreland Image.

III.    <u>**Argument**</u>

    A.    **Standards for motion to compel.**

It is well established that the federal discovery rules permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes. *Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 WL 5348377, at *2 (N.D. Ill. September 24, 2013). Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Whiteamire*, 2013 WL 5348377, at *2; Fed. R. Civ. P. 26(b)(1). "Relevance" is to be interpreted broadly "and will include 'any matter that bears on, or that could reasonably could lead to other [information] that could bear on, any issue that is or may be in the case.'" *In re Flag Telecom Holdings, Ltd Securities Litigation*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006). Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *Kodish v. Oak Brook Terrace Fire Protection District*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

A party may file a motion to compel discovery under Rule 37 where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. Fed. R. Civ. P. 37(a)(2)-(3). The burden rests upon the objecting party to show why a particular discovery request is improper. *Whiteamire*, 2013 WL 5348377, at *2; *Kodish*, 235 F.R.D. at 450. In ruling on motions to compel discovery, courts have "consistently adopted a liberal interpretation of the discovery rules" and "look disfavorably upon significant restrictions placed upon the discovery process." *Lanigan v. Babusch*, 2011 WL 5118301, at *1 (N.D. Ill. Oct. 27, 2011) (citation omitted). Whether to grant a motion to compel is within the court's discretion. *Kodish*, 235 F.R.D at 449-50.

## B.     Defendants should be ordered to produce the Westmoreland Image for forensic examination by Biggerstaff.

Defendants should be ordered to produce the Westmoreland Image for forensic examination by Biggerstaff. Alternatively, as Defendants have already offered to re-forensically image the Westmoreland hard drive, Plaintiff will pay for the re-imaging at its own expense and Biggerstaff will then conduct a forensic examination of the re-imaged Westmoreland hard drive. A case instructive as to this issue is *Whiteamire*, 2013 WL 5348377, also a TCPA junk fax case. In *Whiteamire*, defendant (Quill), in response to plaintiff's motion to compel, argued that the manner in which it stored their electronic data was such that requiring retrieval of the information regarding the fax advertisements at issue would be unduly burdensome and in the end would not provide the plaintiff with information regarding faxes sent. *Whiteamire*, 2013 WL 5348377, at *2. Plaintiff responded that the information could be obtained without a burdensome manual process (as had been contended by Quill), and further, plaintiff identified Robert Biggerstaff as its expert whom plaintiff contended could retrieve the necessary information electronically. *Id*. at *4. Plaintiff further stated that such a search would be done at plaintiff's expense and pursuant to a protective order which provided defendant's expert and attorneys could review the material before plaintiff's attorneys would have access to the information. *Id*.

Magistrate Judge Schenkier first stated that contrary to defendant's assertion, requiring production of images of hard drives is neither prohibited by the Federal Rules nor unprecedented." *Whiteamire*, 2013 WL 5348377, at *6 (citing *Instant Tech., LLC v. Defazio*, 2013 WL 228685, at *2 (N.D. Ill. Jan. 22, 2013) (ordering production of computer so that party could image hard drive), and *Peerless Indus., Inc. v. Crimson AV, LLC*, 2013 WL 1195829, at *3 (June 27, 2012) (discussing order that party produce hard drives for imaging)). The court then explained it was Quill's burden to explain why it should be relieved from the requirement of producing discovery that was "plainly

relevant," and that "[a]t bottom, Quill's explanation as to why plaintiff is not entitled to discovery is that Quill created a data storage system that is immune form discovery." *Id*. The court rejected that premise[1] and concluded that plaintiff was "<u>entitled to test Quill's assertions about what can be obtained from its systems</u>." *Id*. (emphasis added). The court held:

> We further conclude that in the circumstances, the best way to allow plaintiff the ability to see whether these databases can be used to identify which customers received which fax advertisements is by requiring Quill to produce an image of the hard drives of the four systems and allow plaintiff's expert to review the information under the following protocol: (a) the information will be produced pursuant to a protective order that preserves its confidentiality; (b) efforts to retrieve relevant information will be made in the first instance by plaintiff's expert, Mr. Biggerstaff, along with a defense expert and/or defense counsel if Quill chooses to have one participate; (c) the information that is retrieved will not be available to plaintiff's counsel until Quill first has the opportunity to review it for responsiveness to discovery requests; and (d) plaintiff will bear the cost of Mr. Biggerstaff's work.

*Id*. at *6. The court added there was no evidence that the databases contained any privileged information, and there was no assertion that the plaintiff was a competitor of Quill. *Id*. As to Quill's concern about customer and other proprietary information, the court stated "information of this type is often produced in a lawsuit such as this one subject to a protective order, and Quill has not explained why a protective order here would not be sufficient to protect any legitimate concerns it may have about proprietary information." *Id*

Several other courts in TCPA junk fax cases have entered protective orders expressly providing that an imaged hard drive be produced to Biggerstaff for examination. *See, e.g., Environmental Progress, Inc. v. Metropolitan Life*, Case No. 12 cv 80907 (S.D. Fla. Dec. 5, 2012 (ECF # 42, 43), at ¶ 3 (Agreed Protective Orders Regarding Computer Forensic Discovery,

---

[1] The court stated: "If accepted, that explanation would create the perverse incentive of encouraging companies to organize their systems and records in a way that makes the information contained in them inaccessible except at great burden and cost. Moreover, the consequences to plaintiff for accepting Quill's records makes it impossible to determine not just who got which advertisements, but even who received any advertisement, that may be the death knell to any class claim." *Whiteamire*, 2013 WL 5348377, at *4.

attached hereto as **Group Exhibit 5**) (directing defense counsel to "send a forensic image of the Dell Optiplex GX620 direct to Robert Biggerstaff ("Biggerstaff"), Plaintiff's expert"); *Physicians Health, Inc. v. A-S Solutions LLC*, Case No. 12 cv 5105 (N.D. Ill. Oct. 22, 2013) (ECF #. 56), at ¶ 3 (Agreed Protective Order Regarding Computer Forensic Discovery, attached hereto as **Exhibit 6**) (directing certified computer examiner to "send the forensic image copy to Robert Biggerstaff ("Biggerstaff"), Plaintiff's expert"); *Brodsky v. Kaigler & Company*, Case No. 08 CH 44036 (Cir. Ct. Ck. Cy., Ill. June 7, 2011), (Agreed Protective Order Regarding Computer Forensic Discovery, attached hereto as **Exhibit 7**), at ¶ 4 (directing computer and technology company to "provide the results of the Electronic Data recovery to Biggerstaff").

Significantly, courts have repeatedly held that deleted computer files, whether emails or otherwise, are discoverable. *See Bank of Mongolia v. M & P Global Financial Services, Inc*., 258 F.R.D. 514, (S.D. Fla. April 24, 2009) (citing *Wells v. Xpedx*, 2007 WL 1200955, at *1-2 (M.D. Fla. April 23, 2007) ("producing party has obligation to search available electronic systems for deleted emails and files") (citing to Advisory Committee Notes, Fed. R. Civ. P. 34); *Antioch Co. v. Scrapbook Borders, Inc*., 210 F.R.D. 645, 652 (D. Minn. 2002); *Rowe Entertainment, Inc. v. The William Morris Agency, Inc*., 205 F.R.D. 421, 427, 431 (S.D.N.Y. 2002)). In *Simon Property Group, L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000), the court stated "computer records, including records that have been 'deleted,' are documents discoverable under Fed. R. Civ. P. 34) (citing *Crown Life Ins., Co. v. Craig*, 995 F.2d 1376 (7th Cir. 1993). And in *Playboy Enterprises v. Welles*, 60 F. Supp.2d 1050, 1053 (S.D. Cal. 1999), the court stated that "Plaintiff needs to access the hard drive of Defendant's computer only because Defendant's actions in deleting those emails made it currently impossible to produce the information as a documents."

In the instant case, Defendants state they have conducted an electronic search of the

Westmoreland Image but have been unable to locate admittedly deleted emails that may contain a substantial number of fax transmission logs that are key evidence in this case. Defendants should be ordered to produce the Westmoreland Image to Biggerstaff for examination pursuant to terms of a protective order to be entered by this Court. It is the Defendants who engaged in the 36 fax advertising broadcasts at issue in this case, and it is the Defendants who failed to produce and failed to preserve 34 of 36 fax transmission logs, even though they had been previously sued for violating the TCPA. Having engaged in what is arguably spoliation of evidence, Defendants should not now be permitted to dictate the method by which Plaintiff attempts to correct Defendants' mistake and locate these fax logs in the Westmoreland Image.

Moreover, according to Defendants, the Westmoreland Image, *i.e.*, a forensic copy of the Westmoreland hard drive, already exists – all Defendants need do is produce it for examination. Defendants' curious offer to re-forensically image the Westmoreland hard drive so that the same failed searches can be again be conducted by a third party is nothing more than Defendants' latest effort to avoid producing the missing fax transmission logs and/or allowing Plaintiff to test whether the fax transmission logs can be recovered from the Westmoreland Image.[2] Moreover, as set forth in the Declaration of Robert Biggerstaff, attached hereto as **Exhibit 8**, the key-word searching already conducted and re-offered by Defendants is inadequate. Biggerstaff explains:

> As a threshold matter, simple "key-word" searching is woefully inadequate to a forensic examination. For example, many files are not stored in plain text format, and thus cannot be searched by simple text searches for keywords. Another issue is misspellings and abbreviations that a full forensic image with content indexing can uncover.
>
> A common forensic examination technique is to look at message "threads" where multiple messages are sent/received on the same conversation topic. Even though only one message in the conversation may be in particular search results, it is a

---

[2] Defendants' offer to re-image the Westmoreland hard drive hardly inspires confidence in the forensic image Defendants state was already made, nor does the fact that it took Defendants weeks to confirm that a forensic image was made of the Westmoreland hard drive.

regular practice to examine the other messages in that thread, since there is a high probability that those other messages discuss the same subjects. This is particularly true with the shorthand nature of many e-mails.

Keyword searching is a simple example of Technology Assisted Review ("TAR"). However, at its most basic level, each form of TAR produces one of four results for each document, represented by the following matrix:

|  | Document is identified as relevant by TAR | Document is NOT identified as relevant by TAR |
|---|---|---|
| **Incorrect Results** | *False Positive* (Document is not relevant) | *False Negative* (Document is relevant) |
| **Correct Results** | *True Positive* Document is relevant) | *True Negative* (Document is not relevant) |

However, like many forms of TAR, to achieve acceptable results, an iterative approach is needed, meaning the initial searches are done, and the results of the search are measured using the above matrix, and then they are revised to achieve better results in a second iteration, and this process is repeated. But it is very difficult to predict what the second round of keyword revisions will be, until you see the results from the first round. As an analogy to golf, you can't chose the club for your second shot, until you see the results of the first shot.

A key aspect of evaluating the results of a search is to quantify the performance metrics. Put another way, you have to know what percentage of your results fall into each of the 4 quadrants of the results matrix (above). If you are getting too many actual relevant hits being missed, you need to adjust your keywords to be more inclusive—but you need to manually review documents (at least a proper sampling) from all 4 quadrants in order to do that. If you are identifying too many non-relevant hits as relevant, you need to adjust your keywords to be more exclusive. Several iterations of keywords and adjustments are typically used to reach a point where the necessary level of accuracy is reached. In order to do this, however, you need to examine a statistically relevant portion of the documents from *all 4 quadrants*. There is no evidence that any such examination of the results took place in the instant matter.

(Biggerstaff Decl. at ¶¶18-21)

Significantly, Biggerstaff states that "in nearly all cases (absent intentional 'wiping' of a drive) deleted files (or at least portions thereof) can be recovered by my work in a comprehensive forensic examination." (Biggerstaff Decl., Ex. 8, at ¶ 14). Biggerstaff concludes that "[g]iven the testimony in this case and based on my experience in similar cases, absent intentional 'wiping' of

a drive, there is a high probability that in this specific case I will be able to recover relevant information from the Westmoreland hard drive." (*Id.*)

Defendants' opposition to producing the Westmoreland Image for forensic examination, as set forth in their August 28, 2015, letter, misses the mark both factually and legally. First Defendants assert that Westmoreland testified it was her custom and practice to delete records of transmission data she might have received. (Doc. 164-14, at 2). Putting to one side Defendants' admission of deleting relevant evidence, Defendants' argument misses the point. Plaintiff contends its expert may very well be able to recover these deleted emails through the very forensic examination that Defendants have always sought to prevent. Like the plaintiff in *Whiteamire*, Plaintiff in the instant case should also be permitted to "test [Allscripts] assertions about what can be obtained" from the Westmoreland hard drive. *Whiteamire*, 2013 WL 5348377, at *4.

Second, Defendants assert that "if, in fact, Ms. Westmoreland did save these documents to a designated folder on her computer, as you contend, then Plaintiff must acknowledge that Allscripts has already produced documents from the very folder which Plaintiff appears to argue have not been produced." (*Id*). Defendants' tortured argument and request for acknowledgment again misses the point. Whether or not Defendants have produced documents obtained from a search of the Westmoreland Image (and Defendants fail to identify these documents by Bates' stamp number), it is undisputed that Defendants have failed to produce 34 fax transmission logs that may have been improperly deleted. Defendants again fail to recognize their searches to date have not yielded the missing fax transmission logs. Plaintiff simply wants Biggerstaff's established expertise to be applied to the Westmoreland Image to attempt to accomplish that which Defendants have already demonstrated they cannot – find missing fax transmission logs.

14

Third, Defendants assert that for the last of the three rounds of electronic searches, they applied search terms provided by Plaintiff against the Westmoreland Image but have come up empty as to the fax transmission logs. (*Id*). In other words, Plaintiff tried to obtain these documents Defendants' way, by conducting electronic searches, but it is undisputed these searches have not resulted in production of any additional fax transmission logs and as stated by Biggerstaff such searches are inadequate. It is self-evident it is time for the next step, a forensic search by Biggerstaff, whom Plaintiff contends is the foremost expert in the field. Defendants should welcome the chance to have Plaintiff attempt to recover, at Plaintiff's expense, documents which Defendants admittedly and improperly failed to retain. That they do not is telling.[3]

In sum, Plaintiff requests that the Court order Defendants to produce the Westmoreland Image to Biggerstaff for forensic examination pursuant to terms of a protective order to be entered by the Court. Alternatively, Plaintiff requests that the Court order the re-forensic imaging of the Westmoreland hard drive, and that it be produced to Biggerstaff for forensic examination pursuant to terms of a protective order to be entered by the Court.

Dated: December 1, 2015              s/ Ryan M. Kelly
                                     Ryan M. Kelly
                                     One of Plaintiff's Attorneys

---

[3] To the extent Defendants are claiming confidentiality as to the targets of their fax advertising, confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 669 (N.D. Fla. 2010); *Dean v. Anderson*, 2002 WL 1377729, at *3 (D. Kan. June 6, 2002). As stated, the Court has already entered a Protective Order in this case which will protect any allegedly confidential information which may be produced. Under such circumstances, courts have ordered confidential information (and trade secrets) to be produced. *See Balfour Beatty Rail, Inc. v. Vaccarello*, 2006 WL 3792054, at *4 (M.D. Fla. Dec. 21, 2006) (compelling production and holding protective order sufficient to protect any confidential information, including identity of clients, trade secrets and pricing information); *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668-69 (N.D. Fla. 2010) (holding that redacted production inadequate and noting that confidentiality concerns could be alleviated by a protective order).

15

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Max G. Margulis
MARGULIS LAW GROUP
28 Old Belle Monte Road
Chesterfield, MO 63017
Telephone: 636/536-7022

Philip A. Bock
BOCK & HATCH
134 N. LaSalle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

George D. Jonson
Matthew Stubbs
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street, Suite 2100
Cincinnati, Ohio 45202
Telephone: 513-241-4722

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Ryan M. Kelly