**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>ALLSCRIPTS HEALTHCARE SOLUTIONS, INC. and ALLSCRIPTS HEALTHCARE, LLC<br><br>Defendants. | No. 12-cv-03233<br><br>Magistrate Judge Cole<br><br>**ORAL ARGUMENT REQUESTED** |

**ALLSCRIPTS' CONSOLIDATED RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTIONS TO STRIKE**

I.  **INTRODUCTION**

Plaintiff's Motions to Strike (ECF Nos. 241 & 250) ("Motions" and each a "Motion") seek to persuade the Court to decline to consider important evidence that is very problematic for Plaintiff Physicians Healthsource, Inc. ("Plaintiff" or "PHI") as a sanction upon Defendants Allscripts Healthcare Solutions, Inc. and Allscripts Healthcare, LLC (collectively, "Allscripts"). *First*, Plaintiff seeks to strike declarations from absent putative class members (the "Declarants") (ECF No. 227-29) offered in support of Allscripts' (Corrected) Response in Opposition to Plaintiff's Amended/Corrected Motion for Class Certification ("Response") (ECF No. 227-1). *Second*, Plaintiff seeks to strike the Declaration of Judi Desorcie ("Desorcie Decl."), Ex. F in support of Allscripts' Response (ECF No. 227-8) and Ex. 18 to Allscripts' Rule 56.1 Statement in Support of Motion for Summary Judgment (ECF No. 214-19) (collectively, with the absent putative class member declarations, "Declarations").

Neither Motion has merit. In support of the Motions, PHI advances a single argument: namely, the Declarations must be stricken because the identities of the Declarants and Ms. Desorcie do not appear on Allscripts' Rule 26 disclosures. This argument fails. The Declarants, all of whom are Allscripts' customers or prospects, were identified from a BFX Report for a fax that PHI did not attempt to add to this case until several months *after* the close of fact discovery, when Plaintiff filed its motion for class certification and substantially modified its class definition to include the "January 7, 2010 fax." The January 7, 2010 fax is not one of the 36 faxes attached to the First Amended Complaint (ECF No. 78) ("Complaint"). In addition: (1) PHI does not have a copy of that fax and can only speculate about the fax image that was sent;[1] (2) PHI omitted the January 7, 2010 fax from its sworn discovery responses and affirmatively

---

[1] *Compare* Amended/Corrected Memo. Support of Motion for Class Cert., ECF No. 204-1, at 9 (Apr. 11, 2016) ("Certification Memorandum") (Plaintiff's "expert" purporting to "locate" additional fax sent to Plaintiff) *with* Compl., Ex. B (no January 7, 2010 fax attached). *See also* Fax Chart, Ex. 1.

1

denied it was going to try to add additional faxes to the lawsuit; and (3) the fax does not appear in PHI's initial disclosures. Allscripts very much objects to the purported addition of the January 7, 2010 fax, but did not move to "strike" it because such motions typically are disfavored. *Infra* 9. Allscripts respectfully submits, however, that if the Court is inclined to "strike" anything from consideration, it should be the January 7, 2010 fax.

Moreover, Allscripts made known to PHI all of the information in other ways. Allscripts *produced* the fax numbers of the Declarants in 2013 via Allscripts' production of the BFX Reports. Plaintiff has also well known since the earliest stages of fact discovery that these BFX Reports reflect fax numbers derived from Allscripts' contact management database, Salesforce, and that the Declarants' Salesforce records belong to Allscripts. Demonstrating its awareness of these facts, counsel for Plaintiff specifically asked for additional "source data" (*i.e.*, Salesforce data) at a third-party deposition. When counsel for Allscripts offered to work something out, however, Plaintiff dropped the matter and never raised it again. Ms. Desorcie, and her role with respect to Salesforce, also was disclosed.

PHI's cries of surprise and prejudice cannot be taken seriously. PHI has been in possession of the BFX Reports for years, knew the fax numbers on those reports were sourced from Salesforce, knew of Ms. Desorcie and her role, and *expressly declined* to take further discovery on the Salesforce database. Moreover, in the month-and-a-half since Allscripts filed these Declarations, not once did Plaintiff contact Allscripts to discuss the Declarations or a plan whereby additional discovery might be taken (and if so, what that might be). Plaintiff does not make a showing that *any* sanctions are warranted, much less the sanction of exclusion. Plaintiff's Motions should be denied.

**II.     BACKGROUND**

    **A.     Allscripts' Salesforce Database Was Disclosed To Plaintiff Years Ago**

Salesforce is Allscripts' contact management database that contains information about persons and entities who have provided their contact information to Allscripts. Some of the persons and entities in the database are customers. Some are former customers. Still others are prospects. Desorcie Decl. ¶ 4. For literally years, Plaintiff has been aware of the existence and relevance of Salesforce, including that Allscripts sourced its lists of fax recipients from there. *See*, *e.g.*, Defs.' Objs. Resp. First Interrog. (Aug, 30, 2013), Ex. 2, at No. 15 ("Allscripts states that it culled the list of persons and entities who received facsimile transmissions during the Relevant Time Period from Allscripts' "Sales Force" [*i.e*., Salesforce] database").[2]

Witnesses (including third-party witnesses) similarly testified as early as July 2014 that the facsimiles in issue were sent only to entities and persons derived from Allscripts' Salesforce database. *See e.g.,* Michelle Westmoreland Deposition ("Westmoreland Dep."), Ex. 3, at 56:5-8 (relevant excerpt) (July 24, 2014) ("Q: So the only data base you're familiar with that Misy's [sic] or Allscripts used was Sales Force? A: That's the only one I'm aware of."); Matthew Galassini Deposition, Ex. 4, at 10:16-11:5 (relevant excerpt) (Oct. 23, 2014) ("Q: And how would you know who to reach out to, regardless of which medium you were using? . . . A: We would identify them based on data we had in Salesforce."). As these witnesses explained, Allscripts' representatives would upload a list of fax numbers pulled from the Salesforce database into the portal of third-party fax broadcaster WestFax, Inc., to transmit particular fax images to customers and prospects, from which WestFax would create a BFX Report (*i.e*., a billing report) in the portal available for download. Ex. 3 at 37:7-9. Allscripts has produced

---

[2] Allscripts' exhibits, referenced as "Ex.", are attached to the declaration of Allscripts attorney Livia M. Kiser ("Kiser Decl."), filed concurrently herewith.

hundreds of pages from Salesforce, many of which were authenticated by Ms. Desorcie as admissible business records for purposes of summary judgment. Desorcie Decl. ¶¶ 10-11.

PHI affirmatively declined to take further discovery of the Salesforce data. PHI brought a "junk fax" class action against a spin-off of Allscripts, A-S Medications Solutions, Inc. ("A-S") in 2012 because A-S allegedly sent PHI an unauthorized fax. The matter remains pending. *See* Plf.'s Memo. Supp. Class. Cert., *Physicians Healthsource, Inc. v. A-S Medications Solutions LLC*, No. 12-cv-5105 (N.D. Ill. Feb. 29, 2016) (hereinafter "*PHI v. A-S*"), ECF No. 147-1, Ex. 5, at 3 (noting A-S purchased portion of Allscripts' business).[3] Defendant A-S took third-party discovery from Allscripts' Salesforce data to demonstrate that the facsimile numbers reflected in A-S's fax transmission data matched fax numbers of customers and prospects contained in Salesforce. *See* Defs.' Memo Opp. Class Cert., *PHI v. A-S*, ECF No. 171, Ex. 6, at 17.

In response to A-S's request, Allscripts provided four (4) datasets from the Salesforce databases to an A-S witness, Mr. Yaniv Schiff, to review. *See* Yaniv Schiff Deposition, Ex. 7, at 32:9-33:16 & Ex. 5 thereto (Sept. 29, 2015) (discussing provision of datasets and email from A-S counsel Mr. Eric Samore asking Mr. Schiff to review). Mr. Schiff compared the A-S transmission data with Salesforce, identified the persons and entities associated with the fax numbers, and provided all of that information in a report to PHI. *Id.* at 38:8-19. At Mr. Schiff's deposition, PHI's counsel asked Allscripts for the "source data"—*i.e., the Salesforce datasets*— provided to Mr. Schiff. Counsel for Allscripts agreed to consider providing to PHI the

---

[3] Plaintiff repeatedly references the *Geismann* case, where Plaintiff's counsel represented a plaintiff who sued Allscripts for an alleged violation of the TCPA. *Geismann v. Allscripts*, Case No. 09-cv-05114 (N.D. Ill.). In 2009, Allscripts, which is internally divided into many different business units, sold to A-S the business unit which allegedly sent the fax at issue in *Geismann*. Allscripts (and then A-S) preserved the relevant documents and information retained during the pendency of the *Geismann* litigation. A-S produced actual fax transmission data to PHI (as opposed to BFX Reports, which are not transmission data) that first Allscripts (and then A-S) retained from the fax server that had actually sent the faxes. *See* Ex. 5, at 7 (noting Plaintiff's expert reviewed fax recipient list pulled directly from A-S's server). Thus, Plaintiff's continued claim that Allscripts somehow failed to preserve relevant documents and information (which conveniently it never once raised formally by motion) is false.

4

underlying Salesforce data Mr. Schiff used to create the comparison, and invited counsel to further discuss the issue. *Id*. at 33:5-16 (Allscripts would "consider providing that data to [PHI's counsel] . . . so that [PHI's] own expert can duplicate the process"). But PHI's counsel never followed up with Allscripts, or otherwise requested any further discovery on Salesforce. Kiser Decl. ¶ 5.

It was also at Mr. Schiff's deposition in September 2015 that Plaintiff learned that Judi Desorcie was Allscripts' Database Marketing Manager, and that it was Ms. Desorcie who provided the Salesforce "source data" to Mr. Schiff. *See id.* at 28:17-29:5 & Ex. 5 thereto (E-mail from A-S counsel Mr. Eric Samore to Mr. Schiff stating "Note that any oral (phone) communications that you have with Judi DeSourcie [sic] of Allscripts relating to this project should include our specialist Len Hoover."). Plaintiff's counsel ***even mentioned Ms. Desorcie by name*** during examination. *Id.* at 29:4-5 ("[Counsel]: Do you recall ever speaking to Judi DeSourcie [sic] of Allscripts?"). PHI obtained all of this information well prior to the close of fact discovery in this case and eight months before Allscripts filed its Response and Motion for Summary Judgment. But none of these critical facts appear in either of PHI's Motions.

**B. Allscripts Identifies Absent Class Members From Plaintiff's New Class Definition**

Plaintiff's Certification Memorandum substantially altered and expanded Plaintiff's proposed class definition. More than two years after it filed its Complaint and several months after the close of fact discovery, Plaintiff sought to add an entirely new fax to this case (the January 7, 2010 fax) which was not attached to its Complaint and which PHI had never disclosed as being in issue in this lawsuit. The Certification Memorandum is admittedly confusing because Plaintiff also dropped four of the faxes attached to the Complaint in addition to adding

5

the January 7, 2010 fax. The chart attached as Exhibit 1 sets forth these modifications to Plaintiff's proposed class definition.

In the Complaint, its Rule 26(a)(1) disclosures, sworn discovery, and even before the Court, PHI claimed just the 36 faxes attached to its Complaint were in issue in this lawsuit and no others. *See*, *e.g*. Plf.'s Resp. to 1st Set of Req. for Prod. (Nov. 8, 2013), Ex. 8, at No. 27 (In response to a request that PHI "Produce all alleged facsimiles you received from any Allscripts which form the basis of the Complaint …." PHI responded, "See Exhibit B to Plaintiff's Complaint."). Over a year ago, when Allscripts moved to compel production of Plaintiff's fax receipt logs (also called fax journals) that Plaintiff had at first (falsely) denied existed, Plaintiff's counsel stated in open court that "my understanding is ***everything we have for those 36 – or for those 36 faxes, being all those fax reports, those fax journals*** have been produced." July 7, 2015 Hear. Tr., Ex. 9, at 49:20-23 (emphasis added). Right up to the close of fact discovery, PHI represented to Allscripts – and this Court – that it was only bringing claims for the 36 faxes attached to the Complaint. *See*, *e.g*., Pl.'s Mem. in Supp. of Mot. to Compel (ECF No. 186-1) ("Plaintiff's currently pending [Complaint] asserts a claim against Defendants for violation of [TCPA] regarding thirty-six fax (36) advertisements sent by Defendants . . . to Plaintiff."). Plaintiff also affirmatively testified that it forwarded to PHI's corporate counsel, John Lowry, copies of *all* of the facsimile images it had received from Allscripts that it alleged violated the TCPA. PHI Deposition ("PHI Dep."), Ex. 10, at 98:18-21 (Nov. 6, 2015). Clearly, the January 7, 2010 fax was not among them. Rather, in its Certification Motion, PHI added the January 7, 2010 fax after its expert conveniently located PHI's fax number ((513) 922-2009) on a BFX Report produced by Allscripts on October 28, 2013. Kiser Decl. ¶ 2. But PHI had never amended its Complaint, its Rule 26 disclosures, *or* its discovery responses to include this alleged fax.

6

In connection with its Response, Allscripts submitted as Group Exhibit BB (ECF No. 227-29) several declarations from absent putative class members, all of whom were identified on the BFX Report dated January 7, 2010, who swore that they consented to receive fax advertisements from Allscripts. Allscripts obtained the identities of the Declarants by matching the fax numbers on the BFX Reports (which, as noted, were derived from Salesforce in the first place and were produced to PHI by Allscripts) to Allscripts' Salesforce data, discovery Plaintiff could have (but declined to) take. *Infra* 11-12; Declaration of Shannon Cassell ("Cassell Decl."), Ex. 12, ¶¶ 2-5.

      **C.**      **Plaintiff Declines to Take Any Discovery Regarding Any of the Declarations**

Allscripts submitted the Declarations and the Desorcie Declaration in connection with its class certification opposition brief and motion for summary judgment, both of which were filed on May 31, 2016. Plaintiff sought a (substantial) extension and was given 44 days to submit its class certification reply brief, and 51 days to submit its opposition to Allscripts' motion for summary judgment. At no point during this period did Plaintiff contact Allscripts to discuss or request any discovery on the Declarations. Kiser Decl. ¶ 6.

**III.**    **GOVERNING LEGAL STANDARDS**

Rule 26 requires parties to provide certain disclosures. A party must supplement or correct its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not ***otherwise been made known*** to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

Rule 37 allows a Court to exclude discovery as a sanction. But under Rule 37(c), even an actual failure to disclose (which did not occur here) should not result in exclusion of the evidence if it is "substantially justified" or "harmless." The decision to exclude under Rule 37 is within

7

the Court's discretion, considering: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Under Local Rule 37.2, a court shall refuse to hear any motion under Rules 26 through 37 "unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences [the parties] are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's."

Finally, under Rule 23, "[g]enerally, either side has the right to communicate with putative class members." *Reid v. Unilever*, 964 F. Supp. 2d 893, 925 (N.D. Ill. 2013) (citing *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000)). The Supreme Court demands an exacting standard to prevent parties from communicating with absent class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (holding any limitation must "limit[] speech as little as possible").

**IV.     ARGUMENT**

Plaintiff offers no valid reason for sanctioning Allscripts. Plaintiff's Motions completely ignore that the information actually was "made known" to Plaintiff, and thus Allscripts never violated Rule 26. *Spano v. Boeing Co.*, Case No. 06-cv-0743, 2015 WL 11157122, at *2 (S.D. Ill. Aug. 8, 2015) (plaintiffs suffered no prejudice from defendants' failure to disclose under Rule 26 where plaintiffs had materials at issue in their possession), Ex. 14. In point of fact, Plaintiff violated LR 37.2 because it failed to confer with Allscripts prior to filing the Motions. Moreover, Plaintiff's assertion that Allscripts somehow violated the Protective Order by comparing the BFX Reports (produced by Allscripts in discovery and derived from Allscripts' customers and prospects in Salesforce) with other Salesforce data (data also owned by Allscripts)

8

– is shocking in its mendacity. Finally, Plaintiff suffers no harm or prejudice from Allscripts' (nonexistent) failure to disclose. This Court has pointedly noted that "[m]otions to strike are disfavored, because they potentially serve only to create delay," particularly on summary judgment, where LR 56.1 "includes its enforcement provisions, making motions to strike LR 56.1 statements or responses superfluous at best." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 379 F. Supp. 2d 968, 971 n.1 (N.D. Ill. 2005).

### A. Allscripts Has Not Violated Rule 26 Since The Absent Class Members And The Salesforce Database As Described In The Desorcie Declaration Were "Made Known" To Plaintiff In This Case As Early As Three Years Ago

Plaintiff complains that Allscripts never supplemented its formal Rule 26(a) disclosures to identify Ms. Desorcie or Salesforce, and therefore her Declaration and all references to it should be barred. ECF No. 251 at 7.[4] Plaintiff is wrong. As Plaintiff notes in its own Motion, Rule 26(e)(1)(A) clearly states that a party does not need to supplement its Rule 26(a) disclosures if the information has "otherwise been made known to the other parties during the discovery process or in writing." ECF No. 243 at 3. In this case, both Motions attempt to strike information that repeatedly has been made known to Plaintiff in the discovery process in both this case and in *PHI v. A-S*, including when Ms. Desorcie was explicitly discussed by name – by Plaintiff's own counsel – at Mr. Schiff's deposition. In addition, each BFX Report from which the Declarations were drawn was produced to Plaintiff years ago. Further, Allscripts also made the relevance of Salesforce known in writing in written discovery responses served years ago.

---

[4] Plaintiff also argues that Salesforce should have been produced in its entirety pursuant to Plaintiff's First Request for Production, *see* ECF No. 251, Motion at 3 n.2, but, contrary to Plaintiff's representation, no discovery request sought the "entire" Salesforce database. At most, Plaintiff's requests seek records pertaining to Plaintiff, individually. And, as Plaintiff freely admits, Allscripts produced those records. Moreover, Allscripts objected and responded to this written discovery almost *three years ago*. Objs. and Resps. Plf.'s First Req. Prod. (Aug. 15, 2013). Plaintiff at no point conferred with Allscripts or filed a motion to compel, and thus now has no basis to claim Allscripts failed to comply with its discovery requests. *See e.g., Concrete Materials Corp. Inc. v. C.J. Mahan Constr. Co.*, 110 F.3d 63 (6th Cir. 1997) (unpublished) (Ex. 11 hereto) (declining to impose sanctions where party never challenged discovery responses and objections or made effort to acquire more information through a motion or court order).

9

*Supra* 3. The Salesforce documents authenticated by Ms. Desorcie were known to Plaintiff because Allscripts produced them in this lawsuit during fact discovery. Desorcie Decl. ¶¶ 10-11 (authenticating documents and listing bates numbers); Kiser Decl. ¶ 7 (noting that certain Salesforce documents were produced at latest on May 5, 2015).

By contrast, PHI never identified the (non-existent) January 7, 2010 facsimile to Allscripts (either in its Rule 26 disclosures or elsewhere) as being part of this case. Nor did PHI identify its outside counsel, Mr. Lowry, as a purported fact witness, although it recently submitted his declaration to try to somehow mitigate the devastating admission of PHI's principal, Dr. John Ruch, that Allscripts' Rule 68 offer was never disclosed to him nor provided to PHI. PHI Dep. Tr. 20:8-17 and Ex. C thereto, Ex. 13. Under PHI's logic, therefore, both the January 7, 2010 fax and Mr. Lowry's declaration should be stricken.

**B.    Plaintiff's Motions Also Fail Under Local Rule 37.2 Because Plaintiff Never Consulted With Allscripts About The Evidence In Question**

The Motions should also be denied because PHI did not confer with Allscripts prior to filing its Motions as required under LR 37.2. The rule exists to ensure parties try to avoid unwarranted or unnecessary motion practice – which is exactly what occurred here. Allscripts and Plaintiff might have narrowed or even eliminated the need for motion practice. Plaintiff had many weeks to fulfill its obligations under LR 37.2, yet never did. Plaintiff offers no justification or explanation for its failure to comply, and its failure is fatal to its Motions.

**C.    If The Court Finds That Allscripts Failed To Disclose The Evidence In Question, Allscripts' Failure Is Substantially Justified And Harmless**

Even if the Court finds that Allscripts should have amended its Rule 26 disclosures (though it could not have with respect to the undisclosed January 7, 2010 fax) and also finds Plaintiff is somehow excused from LR 37.2, Plaintiff's Motions still fail under the factors set forth in *David v. Caterpillar*.

### 1. Plaintiff Has Suffered No Prejudice Or Surprise From The Desorcie Declaration Because Plaintiff Declined To Take Additional Discovery Of Salesforce And Ms. Desorcie Is Not An Expert Witness

From the earliest days in this litigation, Allscripts repeatedly disclosed the importance of Salesforce to Plaintiff, and Plaintiff was made aware of the identity and role of Ms. Desorcie long before the close of fact discovery. *Supra* 3-5. But Plaintiff declined to pursue additional discovery of Salesforce or Ms. Desorcie. Moreover, Plaintiff's claim that it wanted additional opportunity to "examine Ms. Desorcie's work" (Mot. Strike Desorcie Decl., ECF No. 251 at 3), is wholly undermined by the fact that Plaintiff had *seven weeks* to write its Response in Opposition to Defendants' Motion for Summary Judgment, during which time it said not a peep to anyone about wanting to "examine" Ms. Desorcie or her work. *See Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 130 (S.D.N.Y. 2015) (holding plaintiffs suffered no prejudice "since they could have taken the depositions of [defendant's] declarants but eschewed that opportunity"); *Davenport v. Charter Commc'ns., LLC*, 302 F.R.D. 520, 526-27 (W.D. Mo. 2014) (denying motion to strike declarations from undisclosed witnesses where plaintiffs never raised need for discovery nor sought to depose new declarants during extended period of time before which reply to class certification was due).

Further, Ms. Desorcie is not an expert witness requiring specific disclosure. The Desorcie Declaration provides a purely factual understanding of Salesforce and authenticates some documents. Even if the Court considers her Declaration an "opinion," Fed. R. Evid. 701 provides that lay testimony may include opinions when "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Further, the Advisory Committee Notes distinguish expert testimony from "particularized knowledge," such as knowledge possessed by an accountant or auditor. The

11

Notes explicitly state that a lay witness may testify as to "particularized knowledge that the witness has by virtue of his or her position in the business," as distinguished from testimony admitted "because of experience, training or specialized knowledge within the realm of an expert." *Compania Administradora v. Titan Int'l, Inc.*, 533 F.3d 555, 560 (7th Cir. 2008).

Ms. Desorcie's declaration explains her comparison of two sets of data. All she did was to compare the fax numbers on the BFX Reports to the fax numbers of the current, former and prospective customers contained in Salesforce to see if they matched (which nearly all obviously did). Plaintiff has suffered no prejudice or surprise from the Desorcie Declaration.

### 2. Plaintiff Has Suffered No Surprise Or Prejudice From Declarations Of Absent Putative Class Members

Plaintiff feigns shock at these declarations, arguing that "Allscripts should have scoured the BFX Reports for declarants long ago as they have always had these BFX Reports." Mot. Strike Decls., ECF No. 243 at 4. But as made clear above, Allscripts *did* disclose the fax numbers of all of the Declarants (and other absent class members) by no later than October 28, 2013, and further disclosed to PHI that the fax numbers identified in the BFX Reports were derived from fax numbers of customers and prospects contained in Allscripts' Salesforce records. *Supra* 3-6. Thus even assuming *arguendo* that Allscripts was under a duty to expressly identify by name the putative class members listed on the BFX Reports in issue in the case, Allscripts could not possibly have disclosed the *specific* Declarants PHI is now seeking to strike because **Allscripts did not know** – and could not have known – that PHI would attempt to interject the January 7, 2010 fax into the case long after the close of fact discovery. And in fact, all of the declarations PHI seeks to strike are Declarants identified on the BFX Report of the (unidentified) January 7, 2010 fax. Ex. 12, Cassell Decl. ¶ 11.[5]

---

[5] Plaintiff also seeks to bar several declarations from absent class members in *PHI v. A-S*, who also swore

12

Moreover, Plaintiff contradictorily admits elsewhere it has suffered no harm or prejudice from the declarations, stating they are "***of no evidentiary value whatsoever***." Reply Mem. of Law in Supp. of Mot. for Class Cert. (ECF No. 238) ("Reply") at 18 (emphasis added). Such an assertion cannot be reconciled with Plaintiff's hue and cry of "substantial[ ] and irreparabl[e]" prejudice. Mot. Strike Decls., ECF No. 243 at 5.[6] The declarations have not been proffered to prove or disprove PHI's individual claims. *See* Response, ECF No. 215 at 19-21. Rather, the declarations underscore the lack of predominance under Rule 23, and do not prejudice PHI's claim on the merits (or the claim of any other absent class member, for that matter). They simply preview for the Court how many countless individualized inquiries would need to be resolved in order to adjudicate the claims of PHI and members of proposed classes. Plaintiff has no "right" to pursue its claims in a representative capacity; its claims of prejudice, therefore, fail. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 600 (C.D. Cal. 2008) (denying motion to strike since certification is "a relatively early stage in the proceedings" and declarations of absent class members[7] were "relevant to the certification inquiry in that they tend to counter plaintiffs' claim that common questions will predominate").

### 3. Any Alleged "Prejudice" Can Be Cured With No Disruption To Trial

Plaintiff implies that the Court must strike the Declarations because it is somehow

---

that they consented to receive fax ads from Allscripts. *See* ECF No. 243 at 4-5. For similar reasons, Plaintiff's argument as to these declarations fails. Plaintiff had the identities of these individuals from Mr. Schiff's report, *see* Ex. 7 at 38:20-40:21, and well knew that A-S was asserting it had express consent to send fax advertisements (because Allscripts, its predecessor, did). Thus, the actual identities of these declarants were in fact known to PHI long before the close of fact discovery, but again, PHI simply declined to pursue discovery of these individuals and entities.

[6] And, similar to the Desorcie Declaration, Plaintiff had the absent class member declarations in their possession for six weeks before filing its Reply and never sought discovery on the Declarants.

[7] Although unstated in the opinion, the supporting briefs make clear that the declarations were those of absent class members. *See* Def.'s Memo. Opp. Mot. Class Cert., *Parkinson v. Hyundai Motor* America, Case No. SACV 06-345-AHS (MLGx), ECF No. 100, at 6 lines 12-14 (C.D. Cal. June 27, 2008), Ex. 15 hereto (noting that in attachments to the Erb Declaration more than 600 putative class members presented unique factual circumstances).

13

forever barred from taking any discovery of absent class members between now and any trial that might occur in the future. But such an assertion is totally unfounded. No trial date has been set. Depending upon how the Court decides the pending motions, if there is any dispute remaining, the parties can confer to determine whether any additional discovery is warranted and present an agreed-upon plan to the Court for its consideration, as is usual in these types of cases. *E.g.*, *Adams v. City of Montgomery*, Case No. 11-CV-1122, 2013 WL 5441980, at *1-2 (M.D. Ala. Sept. 27, 2013), Ex. 16 (denying motion to strike where court granted opportunity to conduct additional discovery on limited issue to cure any prejudice of late disclosure of testimony); *JS Prods., Inc. v. Kabo Tool Co.*, Case No. 11-cv-01856, 2014 WL 1093107, at *7 (D. Nev. Mar. 19, 2014), Ex. 17 (denying in part motions to strike where movant failed to identify any specific prejudice that could not have been cured through additional discovery and "expressly declined to conduct discovery" despite opportunity to do so); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, Case No. 13-CV-180, 2015 WL 3544877, at *3 (E.D.N.C. June 4, 2015), Ex. 18 (denying motion to strike after finding plaintiff's offer to provide additional discovery, including a deposition, was sufficient to cure any potential prejudice to defendant). By way of example, Allscripts certainly will want to take the deposition of Mr. Lowry in the event this case proceeds.

### 4. Plaintiff Has Shown No Bad Faith Or Willfulness By Allscripts

Plaintiff argues that Allscripts engaged in bad faith and willfulness in both Motions. Its claims are without merit. Allscripts disclosed Ms. Desorcie and offered to allow PHI additional discovery of the Salesforce data; PHI declined to pursue it. And though Plaintiff casts aspersions on Allscripts' communications with the absent putative class members, under Rule 23 contact with putative class members is inappropriate only if a party engages in "coercive, misleading, or other abusive communications with the putative class." *Reid*, 964 F. Supp. 2d at 926. PHI offers

14

no evidence that Allscripts engaged in such behavior – and indeed, Allscripts did not. The Declarants are customers, former customers, and prospects of Allscripts. Desorcie Decl. ¶ 4. Allscripts attorney Ms. Shannon Cassell (and, in one instance, a colleague) spoke with them, advised them of the lawsuit and told them that they were members of the proposed class. Ex. 12, Cassell Decl. ¶¶ 6-7, 10. She also advised them that they were under no obligation to submit a declaration, and offered to answer any questions they might have. *Id*. at ¶ 8. Ms. Cassell prepared each Declaration consistent with the information provided to her by each Declarant. *Id.* at ¶ 9. She included the case caption for the case on each Declaration to further remind the Declarants that they were submitting their Declarations in a proposed class action lawsuit. *Id.* at ¶ 12.

Because Allscripts properly contacted the Declarants and did not disclose putative class members' confidential information to any Declarant (or anyone else), the protective order was not violated. The Motions are properly denied. *See Pruitt v. City of Chicago, Dep't of Aviation*, Case No. 03 C 2877, 2004 WL 1146110, at *3 (N.D. Ill. May 20, 2004), Ex. 19 (observing "[i]t appears that Plaintiffs' counsel's real motive in moving to strike the statements is to exclude evidence which might eventually be prejudicial to Plaintiff's case.").

## V. CONCLUSION

For the foregoing reasons, Allscripts respectfully requests the Court deny Plaintiff's Motions in their entirety and such other, further relief the Court deems appropriate.

15

Dated: July 29, 2016										Respectfully submitted,

										By:  /s/ Livia M. Kiser

										**SIDLEY AUSTIN LLP**

										Livia M. Kiser
										lkiser@sidley.com
										Lawrence P. Fogel
										lawrence.fogel@sidley.com
										Andrew J. Chinsky
										achinsky@sidley.com
										One South Dearborn
										Chicago, Illinois 60603
										(t):  (312) 853-7247
										(f):  (312) 853-7036

# CERTIFICATE OF SERVICE

I, Andrew J. Chinsky, hereby certify that on July 29, 2016, I caused a copy of the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Andrew J. Chinsky
Andrew J. Chinsky