**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12-cv-03233 |
| v. | ) ) | Magistrate Judge Cole |
| ALLSCRIPTS-MISY'S HEALTHCARE SOLUTIONS, INC., ALLSCRIPTS, LLC, ALLSCRIPTS HEALTHCARE SOLUTIONS, INC., and ALLSCRIPTS HEALTHCARE, LLC | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF FIRST MOTION TO STRIKE**

Plaintiff, Physicians Healthsource, Inc. ("Plaintiff" or "PHI"), submits this Reply Memorandum of Law in Support of its First Motion to Strike.[1]

**Argument**

**I.     Allscripts failed to timely disclose the Declarants; their Declarations should be stricken and they should be barred from presenting evidence in this case.**

It is undisputed Allscripts failed to disclose the nine "*Allscripts*" Declarants and the five *A-S Medications* Declarants (collectively, "the Declarants"). Allscripts in its response offers no Rule 37(c)(1) "substantial justification" for its failure to disclose these Declarants. Instead, Allscripts argues the *Allscripts* Declarants were "otherwise made known to the other parties during

---

[1] Plaintiff has filed two motions to strike. The first was filed in response to Allscripts' opposition to class certification and moves to strike the *Allscripts* and *A-S Medications* Declarants. (Doc. 243). The second was filed in response to Allscripts' motion for summary judgment and moves to strike the Declaration of Judi Desorcie, bar Ms. Desoircie as a witness in the case, and bar Allscripts' use of the Salesforce database, because it has not been produced in its entirety. (Doc. 251). Allscripts has filed a consolidated response to these motions. (Doc. 266). Plaintiff submits this reply in support of its first motion to strike, and will submit by August 12, 2016, its reply in support of second motion to strike, in accordance with this Court's schedule and direction.

the discovery process or in writing," *see* Rule 26(e)(1)(A), because Allscripts "produced the fax numbers of the Declarants in 2013 via Allscripts production of the BFX Reports." (Allscripts Resp. at 1, 2, 9). Allscripts' argument is unsupportable.

The three BFX Reports referenced by Allscripts (for the January 7, 2010, December 1, 2011, and December 5, 2011 faxes) demonstrate that 17,781 fax targets were successfully transmitted a fax advertisement by Allscripts. (Doc. 204-1, Page ID 3158). Allscripts' contention that the nine *Allscripts* Declarants were "made known" to Plaintiff because their fax numbers were contained within those 17,781 fax numbers is absurd. The "mere appearance" of the nine fax numbers among 17,781 fax numbers in the three fax transmission logs produced by Allscripts is "plainly insufficient to satisfy the requirements of Rule 26 for identifying potential witnesses." *Wallace V. U.S.A.A. Life General Agency, Inc.*, 862 F. Supp. 2d 1062, 1065 (D. Nev. 2012). The *A-S Medications* Declarants are even further removed as they were simply lifted from a different case, *Physicians Healthsource v. A-S Medications* ("*A-S Medications*"), currently pending before Judge Gottschall, and deposited before this Court by Allscripts.

In an effort to explain its failure to disclose the Declarants, Allscripts manufactures an argument that is at odds with what Allscripts previously stated in its opposition to class certification, when the *Allscripts* Declarants first made their appearance in this case. In its response to the motion to strike, Allscripts argues that "the Declarants, all of whom are Allscripts customers or prospects, were ***identified from a BFX Report*** for a fax that PHI did not attempt to add to this case until several months after the close of fact discovery, when Plaintiff filed its motion for class certification and substantially modified its class definition to include the 'January 7, 2010 fax.'" (Allscripts Resp. at 1) (emphasis added). Compare the aforementioned bold-faced italicized language in Allscripts' response to the motion to strike to that contained in Allscripts' opposition

2

to class certification: ". . . the policy is also confirmed by declarations submitted herewith from numerous 'absent' proposed class members *identified from the BFX Reports* for Class B who swear that they too consented to receive fax ads from Allscripts." (Doc. 215, Page ID 4419) (emphasis added). Thus, as Allscripts' searches for an after-the-fact excuse for its nondisclosure, the plural "BFX Reports" has been transformed to the singular "BFX Report" from the January 7, 2010 fax. Allscripts' transparent attempt in this regard only serves to underscore the fact that Allscripts has no substantial justification for its nondisclosure and instead set about to create one.[2]

Moreover, Allscripts' attempt to convey the impression that the nine Allscripts Declarants were only located on the BFX Report for the January 7, 2010 fax is at odds with the Declaration of Allscripts employee (and attorney) Shannon Cassell, who states that of the nine *Allscripts* Declarants, two – Craig Gillispie and Ann Horsley – also matched entries on the December 1, 2011 and December 5, 2011 BFX Reports. (Cassell Decl., Doc. 266-13, Page ID 6706, ¶ 11). Thus, Allscripts' claim that it could not know that Plaintiff would seek to certify the January 7, 2010 fax until after the close of fact discovery does not explain the failure to disclose the two Declarants mentioned above before the May 31, 2016 filing of its opposition to class certification. Moreover, as discussed in detail below, Allscripts has always had the BFX Report for the January 7, 2010 fax, as well as the January 7, 2010 fax itself. If that were not enough, the January 7, 2010 fax was expressly addressed in Plaintiff's expert report (Biggerstaff) served on December 1, 2015, well before the expert discovery cutoff, and was also addressed by Allscripts' expert in his report and was specifically mentioned in Biggerstaff's deposition. *See infra*. Allscripts' after-the-fact attempt to manufacture an explanation for its non-disclosures collapses under the weight of the facts.

---

[2] For reasons that are unclear, Allscripts failed to include the fax numbers for the *Allscripts* Declarants, making confirmation of Allscripts' assertion a difficult if not impossible proposition.

Again flailing away to explain its nondisclosure, Allscripts states that it "very much objects to the purported addition of the January 7, 2010 fax," arguing it did not appear in PHI's initial disclosures, that it was "never identified" either in Plaintiff's Rule 26 disclosures or elsewhere, that it is "non-existent," that PHI "substantially modified its class definition to include the 'January 7, 2010 fax,'" and that PHI does not have a copy of it and can only "speculate about the fax image that was sent." (Allscripts Resp. at 1, 2, 9, 10). Allscripts' arguments are factual and legal non-starters.

First, Plaintiff alleged the following class in the Amended Complaint:

All persons who (1) on or after April 27, 2008, (2) were sent one or more telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship, or (5) which advertisement did not display a proper opt-out notice.

(Am. Compl., Doc. 78 ¶ 17). The January 7, 2010 fax clearly fits within that class definition and should hardly come as a surprise to Allscripts and certainly does not "substantially alter[]" the class definition.

Second, the "non-existent" January 7, 2010 fax is attached to Plaintiff's amended/corrected motion for class certification as Group Exhibit 1-32 (Doc. 204-3, Page ID 3210). The "non-existent" January 7, 2010 fax was produced and Bates'-stamped by Allscripts as "Allscripts002239." (*Id.*) Allscripts also produced a BFX Report for the January 7, 2010 fax, and Bates'-stamped it "Allscripts 08958." (Doc. 204-4, Page ID 3214). The WestFax invoice for the January 7, 2010 fax is contained at Doc. 204-5, Page ID 3329, and lists Michelle Westmoreland's name and a quantity of 16,795. That amount, 16,795, is listed in Biggerstaff's report as the amount of successful faxes for WestFax Sequence No. BFX-01282172. (Biggerstaff Expert Report, Doc.

4

204-8, Page ID 3485). Allscripts' repeated representations to the Court of the "non-existent" January 7, 2010 fax are completely unsupportable.

Third, Plaintiff is not required to print a fax to have a cause of action under the TCPA, as the Seventh Circuit made clear in *Holtzman v. Turza*, 728 F.3d 682, 684–85 (7th Cir. 2013):

> To the extent Turza contends that each recipient must prove that he printed the fax (wasting paper) or otherwise suffered monetary loss, he is wrong on the law. The statute provides a $500 penalty for the annoyance. 47 U.S.C. § 227(b)(3)(B). Even a recipient who gets the fax on a computer and deletes it without printing suffers some loss: the value of the time necessary to realize that the inbox has been cluttered by junk . . .
>
> To the extent Turza contends each recipient must prove that his fax machine or computer received the fax, he is right on the law but wrong on the facts. The record establishes which transmissions were received and which were not. Top of Mind hired MessageVision to send the faxes. It compiled information about which faxes were received, and by whom; no reasonable juror could conclude that these data are inaccurate.

In short, it cannot be genuinely disputed that Plaintiff was successfully sent the January 7, 2010 fax, as it appears on the BFX Report for that date, produced by Allscripts in 2013. (*See also* Biggerstaff report, Doc. 204-8, Page ID 3484-85, ¶¶ 23-25)). Contrary to Allscripts' assertion, there is no "speculation" whatsoever as to the January 7, 2010 fax.

Fourth, both Plaintiff's expert (Robert Biggerstaff) and Allscripts' expert (Neil Shirk), specifically addressed the January 7, 2010 fax in their respective reports. (*See* Biggerstaff Expert Report, Doc. 204-8, Page ID 3484-85, ¶¶ 24, 25; Shirk Expert Report, Doc. 215-11, Page ID 4675, ¶ 80).[3] Even Allscripts admits it was aware of this fact in its opposition to the motion to strike:

> Rather, in its Certification Motion, PHI added the January 7, 2010 fax after its expert conveniently located PHI's fax number ((513) 922-2009) on a BFX Report produced by Allscripts on October 28, 2013. Kiser Decl. ¶ 2. But PHI had never amended its Complaint, its Rule 26 disclosures, or its discovery responses to include this alleged fax.

---

[3] Expert discovery closed on February 29, 2016. (Doc. 173).

5

(Allscripts Resp. at 6). In addition to the experts' discussion of the January 7, 2010 fax, Allscripts' counsel specifically asked Biggerstaff about the January 7, 2010 fax at his deposition. (Biggerstaff Dep., Feb. 19, 2016, at 217-18, relevant portion attached as Exhibit 5). Allscripts' characterization that Biggerstaff "conveniently" located the January 7, 2010 fax also misses the mark. Allscripts had the BFX Report since well before October 2013, and had equal access to the January 7, 2010 fax, but apparently chose not to search. Moreover, Biggerstaff's initial expert report was timely produced on December 1, 2015. (Doc. 204-8). Biggerstaff analyzed what few fax transmission reports were produced by Allscripts and found that the fax sent January 7, 2015, was sent to Plaintiff's fax number. (Doc. 204-8, Page ID 3484-85, ¶ 24-25). That is what experts do. Not surprisingly, Allscripts does not complain of other fax transmission logs examined by Biggerstaff that did not contain Plaintiff's fax number. (*Id*.)[4]

In sum, and unlike the disclosure of the nine *Allscripts* Declarants and the five *A-S Medications* Declarants six months after the close of discovery, the disclosure of the January 7, 2010 fax (which was always in Allscripts' possession) is quintessential application of the Rule 26(e)(1)(A) term "otherwise made known to the other parties during the discovery process or in writing." Fed R. Civ. P. 26(e)(1)(A). Biggerstaff identified the January 7, 2010 fax in his report, Shirk addressed it in his report, Allscripts' counsel asked Biggerstaff about it at his deposition, and it is a business record of Allscripts.

---

[4] Allscripts states in its opposition that after it uploaded the fax image and the list into the WestFax portal to transmit a particular fax, that "WestFax would create a BFX Report (*i.e.*, a billing report) in the portal available for download." (Allscripts Resp. at 3). While it is Plaintiff's position that Allscripts was emailed the BFX Reports after the fax broadcast, even Allscripts admits it could have obtained the BFX Reports for its fax broadcasts but did not do so, notwithstanding the pendency of the *Geismann* litigation during most of the fax broadcasts at issue in this case.

As to Allscripts' apparent argument that Plaintiff should have filed an amended complaint to change its class definition, the Seventh Circuit's decision in *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015), disposes of such an argument:

> A complaint must contain three things: a statement of subject matter jurisdiction, a claim for relief, and a demand for a remedy. Fed. R. Civ. P. 8(a). Class definitions are not on that list. Instead, the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B). *See Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). The judge may ask for the parties' help, but motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint.

Allscripts argues that the "Certification Memorandum is admittedly confusing because Plaintiff also dropped four of the faxes attached to the Complaint in addition to adding the January 7, 2010 fax." (Allscripts' Resp. at 5-6). Plaintiff has been unable to locate either BFX Reports (fax transmission logs) for the faxes sent on July 9, 2008, July 11, 2008, July 21, 2008, and October 29, 2008, or WestFax invoices for the broadcasts. In the absence of this evidence, Plaintiff made the litigation choice, in this particular case, to not move for class certification as to these faxes.

## II. Plaintiff has been prejudiced due to Allscripts' failure to disclose the Declarants.

Allscripts inadvertently concedes Plaintiff has been harmed and has been prejudiced due to Allscripts' admitted failure to disclose the *Allscripts* and *A-S Medication* Declarants when it argues that Plaintiff seeks to "persuade the Court to consider important evidence that is very problematic" for Plaintiff. (Allscripts Resp. at 1). If Allscripts thought the undisclosed witnesses had "important" and "problematic" evidence to offer, it should have disclosed these witnesses. "In general, the greater the importance of a witness, the more prejudice is suffered by the defendants by not having had the opportunity to depose the witness, seek documents from him or her, or question other witnesses about the witness's activities or knowledge." *LeBada v. New York City Dep't of Educ.*, 2016 WL 626059, at *6 (S.D.N.Y. Feb. 8, 2016). Allscripts didn't disclose any of the Declarants, and now claims the purported testimony from these undisclosed Declarants is

7

"problematic" for Plaintiff, but at the same time the failure to disclose is not harmful or prejudicial. Allscripts can't have it both ways.

Moreover, Plaintiff briefed its motion for class certification without any knowledge that Allscripts would attempt to rely on the *Allscripts* and *A-S Medication* Declarants. It is plainly prejudicial to Plaintiff to allow Allscripts to rely on these witnesses when Plaintiff had no opportunity to conduct discovery as to these witnesses and when Allscripts failed to even provide the fax numbers applicable to these Declarants. "To permit entirely unexplained Rule 26 violations to go unsanctioned whenever the evidence at issue is sufficiently important would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial." *LeBada*, 2016 WL 626059, at *7.

While Plaintiff's position continues to be that the *Allscripts* Declarations are of no evidentiary value, just as the *A-S Medications* Declarations are of no evidentiary value (Allscripts apparently agrees, as the *A-S Medications* Declarations are unmentioned in Allscripts' response), the fact of the matter is that Allscripts is trying to support its permission defense through declarations from undisclosed witnesses. There is simply no excuse for Allscripts' failure to disclose the Declarants, and such conduct requires an answer – the *Allscripts* and *A-S Medications* Declarations should be stricken.

**II.    Allscripts' arguments that Plaintiff was required to conduct a Local Rule 37.2 meet and confer prior to moving for sanctions, and that Plaintiff should have called regarding additional discovery as to the undisclosed Declarants, fail as a matter of law.**

Allscripts argues that "in the month-and-a-half since [it] filed these Declarations, not once did Plaintiff contact Allscripts to discuss the Declarations or a plan whereby additional discovery might be taken (and if so, what that might be)." (Allscripts Resp. at 2). Allscripts also argues that Plaintiff failed to comply with Local Rule 37.2 prior to filing its motions to strike, that it had weeks

8

to do so, and that had it done so, the parties "might have narrowed or even eliminated the need for motion practice." (*Id.* at 10). Allscripts concludes by stating Plaintiff "offers no justification or explanation for its failure to comply, and its failure is fatal to its Motions." (*Id.*)

Contrary to Allscripts' argument, and as this Court has expressly held, there is no meet and confer requirement for a Rule 37(c)(1) motion for sanctions, even under Local Rule 37.2. *Finwall v. City of Chicago*, 239 F.R.D. 494, 500 (N.D. Ill.), *objections overruled*, 239 F.R.D. 504 (N.D. Ill. 2006). In *Finwall*, this Court stated in response to the same argument made by Allscripts here:

> Unwilling to accept the slightest responsibility for its violations of Judge Manning's deadlines and of the local rules of this court, the plaintiff incredibly seeks to shift the focus to the defendants. The argument apparently runs this way: all the difficulties could have been resolved by a phone call from the defendants. The argument—if it can be called that—is demonstrably wrong.
>
> Local Rule 37.2's requirement that parties attempt to resolve disputes before they may apply to the court for resolution of the problem applies to motions to compel discovery and production of documents, not to motions to bar expert witnesses pursuant to Rule 37(c)(1). The defendants are not seeking any discovery, they are asking that plaintiff be sanctioned for his failure to provide the required expert reports in a timely fashion. The sanction is automatic unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach*, 419 F.3d at 639; *Salgado*, 150 F.3d at 742.
>
> Moreover, a phone call would have changed nothing. The harm had occurred at the time of the late disclosures, and the bell could not be unrung. A call would simply have signaled the defendants' capitulation to the reordering of the discovery schedule necessitated by the plaintiff's rule and discovery closure violations. Local Rule 37.2 did not obligate the defendants to be the hapless victims of the plaintiff's unapologetic disobedience to Judge Manning's discovery schedule. The argument that having failed to consult with them before filing there motion to bar precludes consideration of the motion is a *non sequitur* and calls to mind "George Jacques Danton's famous phrase—*l'audace, encore de l'audace, toujours de l'audace* (audacity, more audacity, always audacity) . . ." *United States v. Walsh*, 700 f.2d 846, 850 (2d Cir. 1983) (parentheses in original).[5]

---

[5] *See also Hoffman v. Constructive Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) ("Any local rule requiring a conference prior to the court's imposition of sanctions under Rule 37(c) would be inconsistent with Rule 37(c), and therefore unenforceable.")

9

Here, as in *Finwall*, Plaintiff is not seeking to compel any discovery; it is asking that Allscripts be sanctioned under Rule 37(c)(1) for not disclosing witnesses in a timely manner. *Id*. Here, as in *Finwall*, it is the Court, not Allscripts, that sets the discovery schedule. Here, as in *Finwall*, Local Rule 37.2 does not obligate Plaintiff to be a "hapless victim" of Allscripts' disregard of the Court's discovery schedule. Thus, the instant motion to strike, which is automatic unless Allscripts can show its disclosure failures were either justified or harmless. *Finwall*, 239 F.R.D. at 498; *G&G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at * 6 (N.D. Ill. June 30, 2016) (citing *Novak v. Board of Trustees of S. Ill. U.*, 777 F.3d 966, 972 (7th Cir. 2015) (if the failure to disclose was not substantially justified or harmless, there is no discretion; exclusion is mandatory and automatic)).[6]

Here, Allscripts fails on both scores – its failure to disclose was neither justified nor harmless. Accordingly, the *Allscripts* and *A-S* Declarations must be stricken.

Allscripts also argues that any prejudice suffered by Plaintiff as a result of Allscripts' untimely disclosures can be cured with no disruption to the trial, and that Plaintiff's assertion that the *Allscripts* and *A-S* Declarations must be stricken is "unfounded." (Allscripts Resp. at 13, 14). Allscripts offers that "[d]epending upon how the Court decides the pending motions, if there is any dispute remaining, the parties can confer to determine whether any additional discovery is warranted and present an agreed-upon plan to the Court for its consideration, as is usual in these types of cases." (*Id*. at 14).

This Court also rejected just such an argument in *Finwall*, stating:

Perhaps the most uninformed aspect of the plaintiff's presentation is the contention

---

[6] In *Castillo*, the court stated defendants' "eleventh hour" disclosure was "effectively, a Trojan Horse," the effect of which was to paint the Court into a corner in which it either has to strike the disclosures or extend the discovery deadline, a tactic the court found "unacceptable." *Castillo*, 2016 WL 3551634, at *7. Here the disclosures were six months after the close of discovery.

> that even if the disclosures were untimely they must be tolerated because there is plenty of time before trial for the defendants to hire expert witnesses and depose the plaintiff's experts. The argument essentially restructures the Federal Rules of Civil Procedure and makes discovery deadlines set by the court irrelevant. The sole test is now whether there is time to depose the experts *after* discovery has closed. But that is not the scheme of the Federal Rules of Civil Procedure.
>
> Under the Federal Rules of Civil Procedure, it is the court's prerogative-indeed, its duty-to manage its caseload and enforce deadlines. *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996). It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will. Nor is it the prerogative of the violator to require his victim to accept his largesse in the form of allowing discovery to proceed after the deadline set for the close of discovery by the court. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery. *See Rick*, 1994 WL 484633, at *3 (rejecting reopening discovery as a curative); *Aon Risk Services, Inc. of Illinois v. Shetzer*, No. 01-7813, 2002 WL 1989466, *6 (N.D. Ill. Aug. 27, 2002) (rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial; all discovery was required to be completed before the extended discovery); *Gregory v. Oliver*, No. 00-5984, 2002 WL 31972165, *1 (N.D. Ill. Dec. 27, 2002) (opportunity to depose expert does not make up for inadequate expert report).

*Finwall*, 239 F.R.D. at 501.

Allscripts cites to three out of circuit cases for the proposition that reopening discovery is "usual in these types of cases." (Allscripts' Resp. at 14). The cases are inapposite. In *Adams v. City of Montgomery*, 2013 WL 5441980, at *1 (M.D. Ala. Sept. 27, 2013), the motion for summary judgment which contained an affidavit of an undisclosed witness to authenticate a document was filed three months before the close of discovery, and that the court granted the movant additional time to conduct discovery on the limited issue. Allscripts itself distinguishes *JS Products, Inc. v. Kabo Tool Co.*, 2014 WL 1093107, at *7 (D. Nev. Mar. 19, 2014), by stating the movant failed to identify any specific prejudice that could not have been cured through additional discovery and "expressly declined to conduct discovery" despite the opportunity to do so. (Allscripts' Resp. at 14). Again, Allscripts is simply not permitted to trump this Court's scheduling order through the expediency of nondisclosure. There is no "opportunity" to conduct discovery because discovery

11

closed eight months ago. Allscripts' reliance on *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2015 WL 3544877, at *3 (E.D.N.C. June 4, 2015) suffers from the same presumption, namely, that the Court's scheduling dates can be adjusted at the whim of a non-disclosing party, namely Allscripts. This Court made inescapably clear in *Finwall* that is not the case.

In short, re-setting a scheduling order eight months after the close of fact discovery, and five months after the close of expert discovery, while the parties are briefing class certification and Allscripts' motion for summary judgment is hardly "usual in these types of cases." Allscripts' offer to extend this Court's fact discovery cutoff date, which expired on December 4, 2015, eight months ago, should be rejected.

**IV.     The Protective Order prohibits contact with class members until after a class is certified; Allscripts admittedly contacted putative class members for purposes of this case.**

In response to Plaintiff assertion in its opening brief that Allscripts "appears" to have violated the Protective Order in this case by accessing the BFX Reports for proposed Class B, *see* Doc. 243, Page ID 5651, Allscripts states that "Plaintiff's assertion that Allscripts somehow violated the Protective Order by comparing the BFX Reports (produced by Allscripts in discovery and derived from Allscripts customers and prospects in Salesforce) with other Salesforce data (data also owned by Allscripts) – is shocking in its mendacity." (Allscripts Resp. at 8, 9).

Allscripts misses the point. Allscripts, and not Plaintiff, designated the BFX Reports confidential. Thus, whether a fax transmission was successful has been designated confidential information by Allscripts. The Protective Order specifically provides that "[i]n a putative class action, Confidential Information may be disclosed only to the named plaintiff(s) and not to any other member of the putative class unless and until a class including the putative member has been certified." (Doc. 70, Page ID 452-53, ¶ 5A). In the Cassell Declaration, mentioned previously and submitted by Allscripts with its response, Allscripts admits it did just that:

12

> In each telephone conversation, I began the call by introducing myself as an attorney for Allscripts. I explained that I was calling regarding a class action lawsuit that had been filed against Allscripts alleging that Allscripts sent unsolicited faxes to certain individuals and/or businesses in violation of the Telephone Consumer Protection Act. *I then informed the individual to whom I was speaking that his or her practice had been identified as an apparent recipient of one of the faxes at issue in the class action*, which was the reason I was contacting them specifically.

(Cassell Decl., Doc. 266-13, Page ID 6705, ¶ 6 (emphasis added)).[7]

In sum, Allscripts contacted a putative class members, prior to a class being certified, revealed information designated confidential under the Protective Order by Allscripts, in an effort to solicit a declaration (that was admittedly prepared by Allscripts, *see* Cassell Decl., Doc. 266-13, Page ID 6706, ¶ 9). Putting to one side Allscripts' "mendacity" attack, its defense of its communications with putative class members – that under Rule 23, "generally," either side can communicate with putative class members, and that the Supreme Court "demands an exacting standard to prevent parties from communicating with absent class members," *see* Allscripts Resp. at 8, ignores that a Protective Order was entered in this case expressly prohibiting that which Allscripts admittedly did, which was to violate the terms of the Protective Order to obtain declarations to aid its defense.

Finally, while Ms. Cassell avers that Allscripts informed the putative class members that they were part of a class action of similarly situated persons, *see* Cassell Decl., Doc. 266-13, Page ID 6705-06, ¶¶ 8, 12, it does not appear that Allscripts advised the Declarants that their interests

---

[7] Further demonstrating the fact that the *Allscripts* Declarations are of no evidentiary value, Ms. Cassell states: "After explaining the above, I asked whether (consistent with Allscripts' policy and practice) they would have provided Allscripts with permission to send faxes to their practice." (Cassell Decl., Doc. 266-13, Page ID 6705, ¶ 6). First, the foregoing is hardly the stuff of the requisite "prior express invitation or permission." Second, permission to send faxes is not permission send fax advertisements. Third, Allscripts' claim that it did not disclose confidential information, Allscripts Resp. at 15, is simply wrong. Once Allscripts disclosed to the Declarants that they were recipients, Allscripts, per its own designation of the BFX Reports, disclosed confidential information.

13

could be adverse to Allscripts (in contrast to the A-S Declarations, which did have this language, *see* Doc. 215-20, Page ID 4854-63). Nor does it appear that Allscripts advised the *Allscripts* Declarants that should Allscripts be found liable for violating the TCPA, each fax sent could result in an award of $500 per fax, or if Allscripts is found to have engaged in willful behavior, $1,500 per fax. This failure to disclose is further reason to strike the *Allscripts* Declarations. *See Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (invalidating arbitration agreement sent to putative class members via misleading email).

## Conclusion

Pursuant to Rule 37(c)(1), Plaintiff requests that the Court enter an order (i) striking the *Allscripts* and *A-S Medications* Declarations, and (ii) striking portions of Allscripts' Opposition to Plaintiff's Motion for Class Certification that relies upon the *Allscripts* and *A-S Medications* Declarations.

Date: August 5, 2016

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC., individually and as the representatives of a class of similarly-situated persons

s/ Ryan M. Kelly
    Ryan M. Kelly

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500

George D. Jonson
Matthew Stubbs
MONTGOMERY, RENNIE & JONSON
36 East Seventh Street, Suite 2100
Cincinnati, Ohio 45202
Telephone: 513-241-4722

| | |
|---|---|
| Phillip A. Bock<br>BOCK & HATCH, LLC<br>134 N. LaSalle Street, Suite 1000<br>Chicago, IL  60602<br>Telephone:  312-658-1500 | Max G. Margulis<br>MARGULIS LAW GROUP<br>28 Old Belle Monte Road<br>Chesterfield, MO  63017<br>Telephone: 636-536-7022 |

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

s/ Ryan M. Kelly