**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHYSICIANS HEALTHSOURCE, INC.,** | ) | |
| **an Ohio corporation, individually and as** | ) | |
| **the representative of a class of** | ) | |
| **similarly-situated persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 12 C 3233** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **ALLSCRIPTS HEALTH SOLUTIONS,** | ) | |
| **INC. and ALLSCRIPTS HEALTHCARE** | ) | |
| **LLC,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff has filed two separate motions: the first is a motion to strike evidence that the

defendants have relied on in their motion for summary judgment and in their response to the

plaintiff's motion for class certification. [Dkt. #241, #243]. The second came a month and a half

after the defendants had filed their response. In it, the plaintiff targeted fourteen of the Declarations

the defendants attached to and relied upon in their response brief. [Dkt. #243, at 1-2].[1] Five of those

fourteen Declarations are apparently also a part of another "junk fax" case the plaintiff has filed,

*Physicians Healthsource, Inc. v. A-S Medications*, 12-CV-5105, which is pending before Judge

---

[1] Nine Declarants and the dates they signed their Declarations, are: David W. Carlton (May 9, 2016), Family Health Clinic (Edwin Bonilla) (May 25, 2016), Family Medical Group (Dr. Michael Booker) (May 31, 2016), Family Health Clinic (Chris Granger) (May 25, 2016), Craig Gillispie (March 29, 2016), Grand Island Clinic, Inc. (Patricia A. Enck) (May 27, 2016), Ann Horsely (May 25, 2016), Island Family Medicine (Jonathon Sack, M.D.) (May 30, 2016), Oconee Family Practice (Sherryl Earhart) (May 31, 2016).

Gottschall.[2] The Declarations are relevant to the issue of predominance as it relates to individualized issues of consent to receive faxes. [Dkt. #215, at 20]. Then there is a fifteenth Declaration, that of Judi Desorcie, which the plaintiff mentioned in a footnote in its first motion to strike. There, plaintiff indicated it would be addressing that Declaration with another motion to strike, but not until it responded to the defendants' motion for summary judgment. [Dkt. #243, at 2 n.1].

The plaintiff filed its second motion to strike – the one targeting the Desorcie Declaration – on July 21, 2016. [Dkt. #250, #251]. The effect was to give the plaintiff an extra week to complete its reply to the defendants' response to plaintiff's class certification motion, which had been due July 14th. In any event, it is unclear why the plaintiff needed 52 or even 45 days to file a motion to strike. It would seem that one would respond or move promptly in regard to evidence – which allegedly surprised the plaintiff – and seek redress in a more determined manner than was done. But now, untimely or not, *see Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994), the plaintiff claims surprise and argues that none of these 15 Declarants was properly disclosed by the defendants during discovery, that they should be barred from testifying and their Declarations stricken pursuant to Fed.R.Civ.P. 37(c)(1).[3] If all of this seems moderately complicated, it is, and it could have been avoided with essentially no effort by either side.

---

[2] The additional Declarations filed in both cases are those of Lindsey Williams, Jeannine Oliver, Victoria Smith, Cathy Bolt Jones, and Debra Lucas. The phrase "junk fax" is one that is used repeatedly by the federal courts and appears in the relevant Act and in Seventh Circuit opinions. *See, e.g., Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 395 (7th Cir. 2016).

[3] Plaintiff's missing deadlines and seeming penchant for eleventh-hour filings for extensions or additional pages are not, unfortunately, unknown to this case. [*See* Dkt. ##189, 191, 193, 203, 221, 224, 231, 234, 235, 240, 244, 252, 260, 268]. But this will be addressed in depth – as we must – in the ruling on the plaintiff's motion for class certification as part of the analysis on adequacy of representation. *See Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013)(court is charged with undertaking a rigorous analysis of all factors pertaining to class certification, including adequacy of counsel).

Despite the advent of the Federal Rules of Civil Procedure and the hope that gamesmanship could be eliminated from federal practice (or at least vastly curtailed), there continues to be a good deal of adherence to stealth or omission as the path to be followed.[4] And so, judges and lawyers are often left to perform tasks whose outcome will never please everyone, and which, with slight effort from either or both sides, would have been unnecessary. But Learned Hand was probably right when, in his now famous address to the Bar Association of the City of New York, he cautioned that: "the atmosphere of contention over trifles, the unwillingness to concede what ought to be conceded, and to proceed to the things which matter... I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death..." The anodyne was not to be found in judges, for "without a bar which is willing to co-operate, a bench more virtuous and wise than any we are ever to get would do very little." L. Hand, The Deficiencies of Trials to Reach the Heart of the Matter, 104-106 (1921).

## ANALYSIS

Consistent with the overarching intent that litigants receive a fair and unbiased trial and that what Wigmore called "trial by ambush" should be a thing of the past, the Federal Rules of Civil Procedure require a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support

---

[4] There was a time before the advent of the Federal Rules of Civil Procedure in 1937 when "[t]o require the disclosure to an adversary of the evidence that is to be produced would be repugnant to all sportsmanlike instincts." 6 Wigmore, Discovery §1845 at 490 (3rd Ed.1940). Indeed, the common law's sporting theory of justice permitted the litigant to reserve evidential resources (documents and witnesses) until the final moment, marshaling them at the trial before his surprised and dismayed antagonist. It did not openly defend or condone trickery and deception; but it did regard "the concealment of one's evidential resources and the preservation of the opponent's defenseless ignorance as a fair and irreproachable accompaniment of the game of litigation. *See Miller v. Lenz,* 2010 WL 252287, 6 -7 (N.D.Ill. 2010).

its claims or defenses . . ., identifying the subjects of the information." Fed.R.Civ.P. 26(a)(1)(A).

Rule 26 also requires a party to supplement or amend its initial Rule 26(a)(1) disclosures (and

discovery responses) if it learns that the disclosure or response is "incomplete or incorrect and if the

additional corrective information has not otherwise been made known to the other parties during the

discovery process or in writing...." Fed.R.Civ.P 26(e)(1)(A). To ensure compliance with these basic

requirements, Rule 37 provides that "[i]f a party fails to provide information or identify a witness

as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to

supply evidence . . . unless such failure was substantially justified or harmless." Fed.R.Civ.P.

37(c)(1). *See, generally, Saathoff v. Davis*, 826 F.3d 925, 931 (7th Cir. 2016).

Whether a failure to comply with Rule 26(a) or (e) is substantially justified or harmless is left

to the broad discretion of the district court. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506,

514 (7th Cir. 2011); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).[5] But a district

court has no discretion to ignore the plain language of the Rules. *Id.*[6] Thus, if the court concludes

that the failure was not substantially justified or harmless, exclusion is mandatory and automatic.

*Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015).

---

[5] *David* has indicated that the following factors should guide a court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. 324 F.3d at 857.

[6] The Federal Rules of Civil Procedure, which have the force of statutes, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 392 (7th Cir. 2002), *cert. denied*, 540 U.S. 1068 (2003), are to be accorded "their plain meaning. . . and generally with them, as with a statute, '[w]hen we find the terms. . . unambiguous, judicial inquiry is complete. . . .'" *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989). *See also Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 163 (1988).

The parties' current submissions on the issue of the Declarations cover 450 pages. A review reveals that there is no dispute that the defendants did not name any of the 15 Declarants in their Rule 26 disclosures; nor did the plaintiff ask the obvious and proper question, namely who, if any, from the vast list provided by the defendants, had given their assent to receive faxes. And so the issue comes down to whether the Declarants were "otherwise made known" to the plaintiff in the discovery process under Rule 26(e)(1)(A) – a fact that plaintiff denies. Alternatively, the defendants insist that their failure to disclose the 14 names was substantially justified or was harmless under Rule 37(c)(1).

### The Fourteen Declarants

The defendants first argue that the identities of the 14 Declarants "were otherwise made known" to the plaintiff in 2013 when the defendants produced "BFX Reports." [Dkt. #266, at 2].[7] It is not clear what "BFX Reports" are, but they apparently were taken from the plaintiff's Salesforce database and comprise a list of persons and entities who provided the defendants with their contact information – in other words, fax targets. [Dkt. #266, at 3]. In responses to interrogatories, the defendants have indicated that they "culled the list of persons and entities who received [faxes]" from this list. [Dkt. # 266, at 3]. They further submit that this fact has also been underscored in deposition testimony from various witnesses from July 2014 on. [Dkt. # 266, at 3]. The plaintiff points out that this list contained 17,781 names or fax targets [Dkt. #267, at 2; #204-1, at 9], and that

---

[7] In its reply brief, the plaintiff misreads the defendants' contentions, operating under the assumption that only nine of the Declarants were made known through the BFX reports. [Dkt. #267, at 2]. But, in their response brief, the defendants clearly contend that all of the Declarants (other than Ms. Desorcie) were identified in the BFX Reports. [Dkt. #266, at 1]. The plaintiff points out that the Declaration of Ms. Cassel attached to the defendants' response to the motion to strike mentions only nine Declarations. [Dkt. #267, at 3; Dkt. #266-13, ¶11]. But Ms. Cassell is referring to those Declarations that she prepared. [Dkt. #266-13]. The other five were prepared by a different attorney in another case. [Dkt. #215-30].

there has been no elaboration by the defendants either at the time of production or by way of subsequent disclosure under Rule 26(1)(a). The plaintiff submits that it is asking far too much for the production of this extensive list to constitute making the fourteen Declarants "otherwise known" through the "discovery process or in writing" as required by Rule 26(e)(1)(A).

Well over 17,000 entries is a huge list to pour over, especially given the fact we are talking about just fourteen individuals from the list that the defendants selected to provide Declarations. It's quite a leap to say, as defendants do, that while the defendants failed to disclose the 14 Declarants as witnesses, they were made known to plaintiff by the 17,000-person list. That's simply too far to stretch the "otherwise-made-known" provision of the Federal Rules of Civil Procedure. (Rule 26(e)(1)(A)). As we have said, the Rule is designed to ensure fairness by not allowing a party to claim ignorance when it has or should have become aware of disputed information through the "discovery process." Rules of practice and procedure are not ends in themselves. They were devised to promote the ends of justice, not to defeat them. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. *Hormel v. Helvering*, 312 U.S. 552, 556-557 (1941). The Rule was never intended to allow material to be smuggled into a case inside a Trojan horse.

Still, the plaintiff is the master of its law suit and thus is the arbiter of the parameters of this litigation. *Crosby v. Cooper*, 725 F.3d 395 (7th Cir. 1973). Seventeen thousand is the size of the class action plaintiff wants to maintain. While discovery in such a case is bound to be rather daunting, that is one of the burdens of properly maintaining a large class action. Plaintiff was free to control the scope and manageability of discovery and its counsel's workload and challenges. The position the plaintiff finds itself in is really the inevitable result of its own decisions. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 411 (7th Cir. 2010)(discussing concerns with asymmetric discovery

and genesis of Fed.R.Civ.P. 23(f)); *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002)(class counsel responsible for directing and managing class actions).

Plaintiff tells us that this suit is a spin-off from a previous junk fax class action case it filed against the defendants that was settled before Magistrate Judge Kim in February 2012. According to the plaintiff, the defendants perpetrated a fraud on Judge Kim by selecting 36 faxes to withhold from discovery. [Dkt. #78, ¶ 1]. If that were the case, the plaintiff could have filed a motion under Fed.R.Civ.P. 60(b)(2) or (b)(3), which allow relief from a judgment when there is newly discovered evidence or fraud. Plaintiff chose, instead, to file a new case. Strategic decisions have consequences, which bind the elector. *McKune v. Lile*, 536 U.S. 24, 41 (2002); *Crowe ex rel. Crowe v. Zeigler Coal Co.*, 646 F.3d 435, 444 (7th Cir. 2011); *Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd,* 476 F.3d 421 (7th Cir.2007)*; Silc v. Crossetti,* 2013 WL 3872196, 3 (N.D.Ill. 2013)(and cases cited).

The new case – this case – is based, originally, on those 36 faxes purportedly withheld by the defendants from discovery in the previous case. Plaintiff could have pursued its claim for redress under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, for as much as $54,000 in damages if it could prove punitive damages were appropriate. Indeed, the defendants advanced a settlement offer to plaintiff for just that amount at the outset of this case. [Dkt. ##34, 43]. The plaintiff decided to forego the settlement offer and to pursue this matter as another class action case. All these decisions were the plaintiff's right, of course. But all decisions, as the courts have repeatedly noted, have binding consequences. Obviously, bringing a massive class action against a business necessitates obtaining and sifting through far more discovery than would have been imposed upon plaintiff and counsel had they limited their pursuit to plaintiff's individual claim. That ignores a foreseeable consequence in every class action case, and it's a consequence plaintiff and

counsel chose here, although this case has become more complex and unwieldy than just a case about 36 junk faxes would be.

As a result of plaintiff's discovery requests in this case, the plaintiff has determined from the BFX reports produced by the defendants that defendants sent faxes to 17,781 fax numbers. [Dkt. #204-1, at 9]. It's not clear what plaintiff did once it had this information, but the issue of consent, or whether faxes were unsolicited or uninvited, has been an issue in this case from day one, as plaintiff made clear in its Complaint. [Dkt. #1, ¶¶ 2, 12-13, 17(a), 27; *see also* Dkt. #58, at 2-3]. The defendants either denied the allegation of no permission or claimed to have insufficient knowledge to answer. *See, e.g.* Dkt. #59, ¶12. [8] The plaintiff does not call our attention to any point in discovery where it requested information from the defendants as to who from these BFX lists might have solicited faxes or consented to receive them from the defendants. Yet, the plaintiff knew either that it was its burden under the Act or that, at the very least, this was a defense that would be advanced by the defendants. Some follow up from plaintiff would have seemed to have been as simple as it was appropriate.[9] But plaintiff does not inform us of any. [Dkt. #267, at 2]. It seems that, once it had

---

[8] As pled in the Complaint, the plaintiff made luminously clear its belief that an element of its claim was proof that the fax recipient had not given prior approval. In its Rule 26(a)(1)(A)(i) disclosures the defendants noted repeatedly their "policy and practice to obtain prior express permission or invitation from facsimile recipients prior to transmitting unsolicited facsimiles...." [Dkt. 241-2, Ex. 2 at 2 *et seq.*].

[9] Of course, inferences from silence are often perilous. But not always in a context where some prompt outcry would be expected. If the plaintiff truly was handicapped by not having names of those who it was claimed had agreed to receive faxes, it is doubtful that it would have said nothing and proceeded through discovery. *See, e.g., Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1175 (7th Cir. 2008)("in any event, Wasson had ample time to review the documents in the original production to determine whether additional discovery was necessary before the expiration of the discovery deadline, but he chose to sit on the matter"); *Native Am. Arts, Inc. v. Peter Stone Co., U.S.A.*, 2015 WL 3561439, at *8 (N.D.Ill. 2015). *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646, 651 (N.D.Ill. 2006)(claim of prejudice as result of belated disclosure of expert report belied by party's decision to proceed with expert's deposition instead of filing a motion to bar).

the massive list, plaintiff chose not to initiate any further or pointed inquiry.[10]

The only case the plaintiff relies upon to support its position that it could not have been expected to do anything further once it received the large BFX list and that the Declarants do not fall within the "otherwise made known" safe harbor is *Wallace v. U.S.A.A. Life Gen. Agency, Inc.*, 862 F. Supp. 2d 1062, 1065 (D. Nev. 2012). *Wallace* is not binding here, and is not a class action case. It is an insurance case in which the insurer sought to call as witnesses the two underwriters who investigated the insured's claim. The insurer conceded it never disclosed the underwriters as potential witnesses, but claimed that the underwriters were "otherwise made known" to the insured during discovery. The court found that while the underwriters' names appeared in the bodies of documents the insurer produced in discovery, they were not identified as underwriters or even as individuals who had anything to do with the claim. *Id.* at 1065.

Under those circumstances, the court's discretionary decision that the insured never was provided in a meaningful way – and one required by both the letter and the spirit of the Federal Rules of Civil Procedure – with the identities of those who conducted an investigation and were to serve as witnesses in support of the position taken by the carrier seems correct. In that context, the duplicity of the carrier and the lack of good faith of the insurance carrier seems as obvious as the "innocence" of the insured. That is not comparable to the situation here where plaintiff asked only for a list of people to whom faxes were sent and under the Complaint undertook the obligation to

---

[10] The plaintiff has not pointed to any question asking for the identity of those who gave prior consent, even though "[o]n the question you ask depends the answer you get." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 484 (1948)(Frankfurter, J., dissenting). It is not for the court to scour an enormous record to try to find if the plaintiff had somewhere requested the identity of those on the BFX reports who had given permission to receive faxes. That is counsel's job. *Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013);*Alioto v. Town Of Lisbon*, 651 F.3d 715 , 721 (7th Cir. 2011); *McNeal v. Bruno,* 2012 WL 1414865, 13 (N.D.Ill. 2012)(and cases cited).

prove who had not given prior permission and yet did nothing to learn the identity of such people.

Even if the 14 Declarants were not otherwise made known in discovery to the plaintiff under Rule 26(e)(1)(A) – and I think they were not – the question becomes whether the defendants' failure to formally disclose their names was substantially "justified or harmless" under Rule 37(c)(1). A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. *David v. Caterpillar, Inc.*, 324 F.3d 857, 857 (7th Cir. 2003); *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Still, the Seventh Circuit has indicated that the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David*, 324 F.3d at 857.

As discussed earlier and as plaintiff, itself, submits [Dkt. #243 at 1-2], the plaintiff knew that consent would be a critical issue. Indeed, its own Complaint said so and seemed to relegate proof on that score to the plaintiff. And yet, the plaintiff, who was in the perfect position to make the next logical move – and, it bears repeating, needed the information to sustain the allegations in the Complaint – did not ask for the names of those who had given their consent to receive faxes. It was content with the massive list provided by defendants and not to ask the decisive question. Our courts have refused to follow and have been critical of the "ostrich-like" approach to legal issues, *cf. Microsoft Corp. v. Rechanik,* 249 Fed.Appx. 476, 478-479 (7th Cir. 2007); *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987), and have refused to allow litigants essentially to blame their adversaries.

It must not be forgotten that the adversary system is alive and well. *Perdue v. Kenny A. Ex rel. Winn*, 559 U.S. 542, 560 (2010)(Kennedy, J. concurring); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595-96 (1993); *Alioto v. Town Of Lisbon,* 2011 WL 2642369, 5 (7th Cir. 2011); *Kay v. Board of Educ. of City of Chicago,* 547 F.3d 736, 738 (7th Cir.2008); *Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999); *Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir. 1992). *Compare* Brandeis, *The Living Law*, 10 Ill.L.Rev. 461, 470 (1916)(a "judge rarely performs his functions adequately unless the case before him is adequately presented.") Thus, common sense and ordinary prudence cannot be abandoned with impunity. Metaphorical ostriches, no less than chickens, come home to roost. And thus, generally, a lawyer need not make a case for his adversary.[11]

In the current situation, there was ample opportunity for the plaintiff to cure any prejudice it might have felt stemmed from the production from so large a list. There was a month and a half during which plaintiff could have addressed this issue with a motion to strike or, in the case of the motion for summary judgment, with a motion under Fed.R.Civ.P. 56(d) for some additional discovery. The plaintiff seems to scoff at anything like a limited reopening of discovery for such a purpose [Dkt. #10-12], but that's quite a sharp turn from the route plaintiff has been on all along in this case. Suddenly, for the plaintiff, the discovery and briefing schedules are sacrosanct. But the plaintiff's "overarching" concern for deadlines and rules seems to be confined to its motion to strike. [*See* Dkt. ##97, 112, 125, 153, 173, 185, 188, 189, 191, 193, 203, 221, 224, 231, 234, 235, 240, 244, 252,

---

[11] *See Castro v. United States,* 540 U.S. 375, 387 (2003); *Tabaku v. Gonzales,* 425 F.3d, 417, 422 (7th Cir.2005); *Manicki v. Zeilmann,* 443 F.3d 922, 927 (7th Cir.2006) (Posner, J.); *F.E.L. Publications v. Catholic Bishop of Chicago,* 1989 WL 100006 *3 (N.D.Ill. 1989)(Williams, J.); *Korman v. Shull,* 184 F.Supp. 928, 936 (W.D.Mich.1960).

260, 268].

Even so, there would seem to be little if any prejudice to be cured, according to plaintiff. As noted earlier, and as plaintiff, itself, submits [Dkt. #243, at 1-2], the 14 Declarations matter only with respect to the question of individualized consent in the predominance analysis. The defendants mention them on a single page of their twenty-seven-page response to the plaintiff's motion for class certification. [Dkt. #215, at 20; #227-1, at 20].[12] According to the plaintiff's reply in support of its motion for class certification, the Declarations are "of no evidentiary value whatsoever" because, while the Declarants claim they gave permission for faxes, they cannot even remember receiving any or when they gave permission [Dkt. #238, at 18] – (there will be a bit more discussion on that point later). Moreover, in the motion for class certification, plaintiff argues that individualized issues of prior express permission or established business relationship are not even applicable because they are trumped by the opt-out notice requirement. [Dkt. #204-1, at 18-20]. As such, unless plaintiff is advancing meritless (or merely theoretical) arguments, there can be no prejudice to plaintiff.

And, at the risk of being repetitious, it is curious that plaintiff took over a month and a half to file a motion to strike the Declarations if they were so prejudicial. That could have been filed within a matter of days or a week or two, and perhaps taken care of before briefing on the huge motions were completed. In this context, and given the arguments plaintiff has advanced in the briefing on the motion for class certification and for summary judgment, it simply does not appear to have been very important – or prejudicial – at all to plaintiff. *Compare In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646, 651 (N.D.Ill. 2006)(claim of prejudice as result of belated

---

[12] The plaintiff addresses its motion to strike to an earlier version of the defendants' response motion which has since been superseded as defendants had to file a corrected version. But the reference to the Declarations is the same in defendants' amended version.

disclosure of expert report belied by party's decision to proceed with expert's deposition instead of filing a motion to bar).

Finally, there appears to be no likelihood of disruption to trial or, more accurately, the briefing and resolutions of the two dispositive motions. As already noted, the plaintiff handled these Declarations from both an evidentiary and legal standpoint, and did so rather dismissively. That may well be all the Declarations merit. The court has not completely reviewed the thousands of pages of exhibits the parties have filed along with the two motions – combined, they comprise over 3000 pages – but a brief review of the Declarations shows that they are essentially identical, pre-prepared, form documents. In identical language, each one states that the Declarant "do[es] not specifically remember receiving any particular faxes from [defendants] . . . promoting its . . . products or services, but in general [the Declarant] consented to receiving such communications from [defendants] and others, in the past and currently as well. . . . It is beneficial for [the Declarants] to receive information concerning [defendants'] products or services, including new or different products or services than I currently use from divisions other than those from which I have purchased. They help me manage my [practice] and assist me in providing excellent patient care, so I appreciate getting these faxes and emails." [Dkt. #215-29].

The five Declarations that were also submitted in the case before Judge Gottschall may be slightly more concrete, but the details are obviously geared toward issues in the other case, such as consent to faxes carrying over when one business purchased another. [Dkt. #215-30]. Again, I have not considered all the evidence presented in context, but these are the kind of rote, conclusory, and vague affidavits that are too common in litigation and are often found to be of little value, *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003); *Basith v. Cook Cty.*, 241 F.3d 919,

928 (7th Cir. 2001), as the plaintiff suggests. As such – and, again, reserving a final assessment of the evidence for a later date – the parties' nearly 500-page battle over this evidence in this case may well be along the lines of a tempest in a teapot.

As for bad faith, there is little or no evidence of that. With regard to the fourteen Declarations, the plaintiff contends that bad faith is demonstrated by the defendants violating the protective order in this case, which, provides that "Confidential Information may be disclosed only to the named plaintiff(s) and not to any other member of the putative class unless and until a class including the putative member has been certified." [Dkt. # 70, ¶5A]. But confidentiality agreements, like all agreements, must be read with some degree of common sense. *See India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 658 (7th Cir. 2010)("Common sense is as much a part of contract interpretation as is the dictionary or arsenal of cannons."); *Temme v. Bemis Co.*, 622 F.3d 730, 736 (7th Cir. 2010); *McElroy v. B.F. Goodrich Co.,* 73 F.3d 722, 726–27 (7th Cir.1996)("There is no novelty in interpreting contractual language in light of common sense.").

It would seem that all that was disclosed to the Declarants was the fact that they were defendants' customers and had been receiving faxes from defendants. But, they already knew that, just like they already knew their own fax numbers, which is what the BFX Reports were made up of. And, contrary to plaintiff's reading [Dkt. #243, at 6], there is nothing in a confidentiality agreement, and certainly nothing in the passage the plaintiff cites, that prohibits all communications with putative class members. *Cf. E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.,* 102 F.3d 869, 870 (7th Cir. 1996)(parties have a right to communicate with class members).

As for barring the defendants from further communication with class members, the plaintiff provides no support for its veiled accusation that the defendants have been coercive or abusive.

14

Because "[n]othing is simpler than to make an unsubstantiated allegation," *Parko v. Shell Oil,* 739 F.3d 1083, 1086 (7th Cir. 2014), the law demands proof, not simply charges of wrongdoing, *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990), as the case cited by the plaintiff demonstrates. *See Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013).

### Ms. Desorcie

The second undisclosed yet allegedly revealed witness is Ms. Desorcie. Her Declaration is a bit more complicated. She is neither a customer of defendants, nor a fax recipient. She is one of defendants' employees. According to the defendants, the plaintiff learned of Ms. Desorcie at the deposition of Yaniv Schiff in another case pending before Judge Gottschall some years earlier. Based on the defendants' response to the plaintiff's second motion to strike, one would be unable to learn who Mr. Schiff is; defendant fails to identify him beyond his name and the fact that he was an "A-S witness" – whatever that means. [Dkt. #266, at 4, 5]. Nor is he more than vaguely identified in the excerpts from his deposition where, at one point, his "consultancy with Allscripts" is mentioned. [Dkt. #266-8, Schiff Dep., at 32]. We do know from the deposition transcript that Mr. Schiff was not a deponent in *this* case, but rather in the case pending before Judge Gottschall. [Dkt. #266-8, Schiff Dep., at 1]. So, to clarify, the defendants are asking the court to find that Ms. Desorcie was "otherwise made known" as a witness *in this case* through the cryptic deposition testimony and comments of *another witness* and in a *different* case before Judge Gottschall.[13]

The main job of an advocate, the Seventh Circuit has said, "is to make it easy for the court to rule in [their] client's favor." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006).

---

[13] It is not until they file their sur-reply brief that defendants informed me that, in the case pending before Judge Gottschall, Mr. Schiff was an undisclosed, non-testifying expert; a computer forensics expert defendants hired for the purposes of that litigation. [Dkt. #275-1, at 4].

Yet, the defendants' presentation makes this phase of analysis more difficult than perhaps it should otherwise be.[14] And the testimony from Mr. Schiff's *earlier* deposition in the case *before Judge Gottschall* that the defendants argue tipped off (or should have tipped off) the plaintiff here to Ms. Desorcie being a witness in *this* case, does not clarify things. Here is what occurred:

> Mr. Good [plaintiff's counsel at the deposition]: Can you please turn to the ninth page of Deposition Exhibit 5?
>
> A. [Mr. Schiff, the deponent]: Can you identify the —
>
> Mr. Good: It's the page they forgot to redact. Do you [Ms. Kiser, one of the defense counsel] want to clarify your objection.
>
> Ms. Kiser: It [sic] is an undisclosed consultant.[[15]]
>
> Mr. Good: Who works for Allscripts?
>
> Ms. Kiser: Yeah, and that's appropriate.
>
> Mr. Good: Okay.
>
> Mr. Good: Do you [Mr. Schiff] recall ever speaking to Judi Desorcie of Allscripts?
>
> Ms. Kiser: I'm going to instruct you [Mr. Schiff] not to answer to the extent you are speaking in a capacity as a disclosed fact witness *and not an undisclosed expert in any other matter that you may be working on.*

[Dkt. #266-8, Schiff Dep., at 28-29(Emphasis supplied)].

The attorneys then quarreled over who could object to testimony from whom. In the end, Ms. Kiser said:

> Ms. Kiser:  Okay. So this is Liv Kiser, counsel for Allscripts, and I am on the record

---

[14] If there weren't further briefing, their position would have been a very easy one to summarily dismiss.

[15] It is impossible from this exchange to know whether the "undisclosed consultant" she is referring to is Mr. Schiff or Ms. Desorcie, or someone else.

to state that Mr. Schiff is *and others* are undisclosed experts of Allscripts. We have consulted with Mr. Schiff separate and apart from A-S, so to the extent that Mr. Good is asking Mr. Schiff questions that implicates *his* consultancy with Allscripts as an undisclosed expert, I will instruct him not to answer to protect the interests of my client, Allscripts; and further to this, Allscripts expert disclosures are not yet due in Allscripts' matter and, therefore, it is proper for me to instruct the witness in this fashion.

[Dkt. #266-8, Schiff Dep., at 30-31 (emphasis supplied)].

In the defendants' view, the fact that Mr. Good, plaintiff's counsel at the deposition in the case before Judge Gottschall, asked Mr. Schiff if he recalled speaking to Ms. Desorcie is all that is necessary for the defendants to have "otherwise make known" through discovery that Ms. Desorcie would not only be a witness in this case, but a witness testifying about an analysis she performed on the present defendants' databases. With all deference, the defendants' position is untenable, and "untenable results are to be avoided." *United States v. Wilson*, 503 U.S. 329, 334 (1992)(statutory construction); *Beanstalk Group. Inc. v. AM General Corn.*, 283 F.3d 856 (7th Cir. 2002)(Posner, J.)(contractual interpretation).[16]

_____

[16] In their sur-reply brief, the defendants submit that Ms. Desorcie was "otherwise made known" to the plaintiff through four other depositions. [Dkt. #275-1, at 3]. But, in their response to plaintiff's motion to strike, the defendants stood their ground solely on Mr. Schiff's deposition. [Dkt. #266, at 4-5]. The defendants were granted leave to file a sur-reply for the limited purpose of addressing the issue of whether Ms. Desorcie was an undisclosed expert in the case before Judge Gottschall and some attendant concerns – that's how the defendants pitched it in their motion for leave to file the sur-reply [Dkt. #275, at 2], not for the purpose of rehashing the overriding "otherwise made known" issue, which plaintiff raised and developed in its opening brief and which defendants had ample opportunity to address in their response.

These additional depositions ought to have been raised in defendants' response brief and will not be considered now; nor will defendants' arguments based on them. Like reply briefs, sur-reply briefs are for replying, not for submitting new materials that ought to and could have been submitted in a response brief. *See e.g., United States v. Boyle,* 484 F.3d 943, 946 (7th Cir. 2007)(arguments are forfeited); *United States v. Alhalabi,* 443 F.3d 605, 611 (7th Cir. 2006); *Carter v. Tennant Co.,* 383 F.3d 673, 679 (7th Cir. 2004); *Hussein v. Oshkosh Motor Truck Company,* 816 F.2d 348, 360 (7th Cir.1987)(Posner, J., concurring).

The fact that Mr. Schiff, in his (described) capacity as an undisclosed expert for Allscripts, may (or may not) have spoken to Ms. Desorcie does not support the conclusion that discovery (in the Gottschall case) revealed that Ms. Desorcie – who clearly was described as an "undisclosed consultant" in the case before Judge Gottschall – might have information relevant and potentially admissible in the instant case as to who had allegedly given permission to send faxes to the plaintiff. In the quoted portion of Mr. Schiff's testimony, Mr. Good refers Mr. Schiff to page nine of Deposition Exhibit 5. Defendants' counsel stopped the questioning, protesting about Mr. Schiff being "an undisclosed expert in any other matter that you may be working on." The only names on that exhibit are Ms. Desorcie's and Mr. Hoover, an attorney for A-S Medications, the defendant in the case before Judge Gottschall. [Dkt. #266-8, at 25]. Under Rule 26(b)(4)(D), which covers experts employed only for trial preparation, plaintiff was *foreclosed* from "discover[ing] facts known or opinions held" by such a person. That, at least, was obviously defendants' counsel's thinking when she scotched further questions pertaining to Ms. Desorcie, who was not even mentioned by name in the quoted portions of the deposition. Indeed, elsewhere in the deposition exhibits, Ms. Desorcie's name was *redacted*. [Dkt. #266-8, at 18]. To say now that Ms. Desorcie, who may have spoken about some undisclosed subject with Mr. Schiff, an undisclosed expert in the case before Judge Gottschall, falls in the otherwise made known through the discovery process provision of the Federal Rules of Civil Procedure is singularly unpersuasive.

In their sur-reply, defendants contend that "it is clear that" defense counsel, Ms. Kiser, was referring to Mr. Schiff, the deponent, when she said "[i]t [sic] is an undisclosed consultant." [Dkt. #275-1, at 4]. The use of the pronoun "it" instead of "he" is certainly not grammatical. And, indeed, after some back and forth between the lawyers, Ms. Kiser said explicitly that Mr. Schiff and

unidentified others were undisclosed experts of Allscripts. Mr. Schiff was then instructed not to answer to the extent the questions implicated his consultancy with Allscripts "as an undisclosed expert." Counsel was clearly referring to the name – the redacted name, specifically Ms. Desorcie's name – in the exhibit plaintiff's attorney was asking about. Ms. Desorcie is, in fact, an Allscripts employee; Mr. Schiff, the deponent, is not. He was specially retained from a firm called Forensicon. [Dkt. #275-1, at 4; 266-8, at 26; 272-1, at 77 *et seq.*].

Defendants' attorney also asserted at the Schiff deposition, when challenged on the point by plaintiff's counsel, that it was "appropriate" that an undisclosed expert could work for Allscripts. [Dkt. #266-8, at 28-29]. Whether a regular employee like Ms. Desorcie can qualify as "specially employed" under Rule 26(b)(4)(D) is often an issue. *See the extensive discussion in Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 383-387 (N.D. Ill. 2012). Hence, the attorneys' exchange on that point. And, another of defendants' attorneys explained, just before the exchange, that defendants redacted material pertained to undisclosed expert witnesses. [Dkt. #268-8, Schiff Dep., at 28]. Again, that redaction was Ms. Desorcie's name.

Given all the evidence weighing heavily against them, defendants' contention that Ms. Desorcie's role as a witness *in this case* was made known through the discovery process in an earlier case before a different judge and in the context of the deposition on which the defendants rely, makes a mockery out of Federal Rules of Civil Procedure 26(e)(1)(A) and the full disclosure of information that the Rules seek to achieve. It most surely is hostile to Rule 1's command that the Federal Rules of Civil Procedure should be construed, administered and employed by the court *and the parties* to secure the just determination of every proceeding.

Defendants' contention that plaintiff suffered no prejudice is also unconvincing. It's one thing to say that a plaintiff who chooses to pursue a massive class action junk fax case ought to follow up on the ubiquitous issue of whether the recipients consented based on fax numbers that plaintiff asked for. But it's quite another to expect a plaintiff to follow up on a witness who the defendants maintained was an undisclosed expert (or, according to Ms. Kiser, an undisclosed consultant who works for Allscripts) in a different case who the defendants have not demonstrated was otherwise made known in the discovery process to that plaintiff. Moreover, the defendants' attorney blocked any further inquiry into Ms. Desorcie at Mr. Schiff's deposition and characterized her as beyond discovery – an inapt designation for a witness who would be testifying. And so, in this instance, it doesn't matter that plaintiff "said not a peep" about Ms. Desorcie.

Precluding further inquiry about Ms. Desorcie was, whether in keeping with the rules of discovery or not – and I need not decide for the purposes of this motion – a very deliberate step. It may not have been taken in bad faith, but to come back later on and offer Ms. Desorcie as a witness in a different case and blame the plaintiff for not having followed up on her cannot be said to betoken good faith. Consequently, it would be inappropriate to reopen discovery on even a limited basis, which is what defendants suggest as a remedy for their actions. Plaintiff's conduct has already been adverted to, and the defendants have exhibited their own difficulties with deadlines and schedules, not to mention a bit of a cavalier attitude toward filing documents that are properly supported and finalized, despite having been given overly generous amounts of time in which to do so. [*See* Dkt. ##182, at 5-6, 205, 207, 208, 210, 211, 219, 219, 224, 227].

While one may not have much concern for plaintiff's situation *vis-a-vis* the fourteen Declarations, what the defendants have done with regard to Ms. Desorcie and her analysis of the

defendants' computer database should not be countenanced. What Judge Easterbrook said in another context applies equally to the meaning to be accorded to Rule 26(e)(1)(A): "The use by judges of the form of words that Congress has employed to deal with the problem that was before it... is a formula for the perversion of legislative purpose. We play 'Gotcha!' with Congress. We make traps of its words." *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1126 (7th Cir. 1994). This we cannot do.

Ms. Desorcie's Declaration must be stricken and will not be considered in the resolution of the pending dispositive motions and, should this matter go to trial, she will not be allowed to testify. Both the text and purpose of the Federal Rules of Civil Procedure prohibit conduct which is too clever by half and is ultimately little better than an open evasion. The fact that no trial date has been set does not inexorably mean that additional discovery must be granted or discovery reopened. *Fouchia v. Carlota Copper Co.*, 2012 WL 2072673, at *5 (D. Ariz. June 8, 2012). Were that the case, judges would essentially have no control over discovery schedules and lawyers would largely control the pace of cases. The law has set its face against that notion.

## CONCLUSION

Judge Weber's lament in *Morris v. City of Pittsburgh*, 445 F.Supp. 981, 982-83 (W.D. Pa.1978) bears repeating. What occurred there, he said, "did not advance the development of the law but it did produce a wonderful efflorescence of [words and recriminations]. Lacking the gift of prophecy [Judge Weber could not] imagine what collateral benefit will ensue from the present proliferation of paper." *Id.* So, too, here. Perhaps in the future, lawyers for both plaintiffs and defendants will take greater care that the manner in which discovery is handled is more precise. That would lead to a greater savings of time, to more efficiency and less gamesmanship than often occurs.

*See United States v. Paglia*, 190 F.2d 445, 448 (2nd Cir. 1951)(L. Hand, J.). And if that were not

enough, perhaps we would fare better in the public eye than many think we have for a long time. *See*

Stuart M. Speiser, *Sarbanes-Oxley and the Myth of the Lawyer Statesman,* 32 LITIGATION 5 (Fall

2005).

For the foregoing reasons the plaintiff's first motion to strike [Dkt. #241] is denied, and its

second motion to strike [Dkt. #250] is granted. Nothing in this Opinion should be read to suggest

the outcome of the ruling on the plaintiff's motion for class certification or the defendants' motion

for summary judgment –those two motions combine for over 3000 pages – or in any way to cast

aspersions on counsel.

Nonetheless, the parties are encouraged in the next 30 days to discuss resolution of this case,

mindful, of course, that parties cannot be forced to settle a case. *Goss Graphics Sys., Inc. v. Dev*

*Indus., Inc.,* 267 F.3d 624, 627 (7th Cir. 2001).

There shall be a status in courtroom 1003 on 1/5/16 at 9:15 a.m. to report on where the

parties stand.

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 12/2/16

22