**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHYSICIANS HEALTHSOURCE, INC.,** | ) | |
| **an Ohio corporation, individually and as** | ) | |
| **the representative of a class of** | ) | |
| **similarly-situated persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 12 C 3233** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **ALLSCRIPTS HEALTH SOLUTIONS,** | ) | |
| **INC. and ALLSCRIPTS HEALTHCARE** | ) | |
| **LLC,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' request for sanctions. The request was filed on June 29,

2015, tacked onto the end of a motion to compel. The initial request, although nearly 200 pages in

length between the brief and the exhibits, was nevertheless unsupported by any citations to pertinent

authority and didn't even indicate what sanctions were being sought. Thus, under Seventh Circuit

precedent, it should have been denied. *See, e.g., United States v. Parkhurst*, 865 F.3d 509 (7th Cir.

2017); *United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014); *United States v. Berkowitz*,

927 F.2d 1376, 1384 (7th Cir. 1991). But, instead, the defendants were allowed to file an

appropriately supported supplement, which they did on July 10, 2015. Unfortunately, as it was filed

as a supplement and not a motion, the document was not logged into the system as a pending motion

and fell between the cracks of this case. Although the plaintiff's case involves perhaps three dozen

faxes, the parties have now amassed nearly 8,000 pages of docketing, nearly 7,000 of those coming

since the motion was filed. Still, the ultimate responsibility for any delay in deciding the present

motion is ultimately mine. After review of the filing and the plaintiff's response, it must be said that an award of sanctions is inappropriate.

**First Set of Interrogatories, No. 17:**

This interrogatory asked for "all television, radio and printed publications and any internet sites or worldwide web pages . . . in which or on which your telephone number or numbers used by you for the receipt of facsimile transmissions have been disclosed, published or otherwise made available, including, but not limited to, directories and advertisements." [Dkt. # 142, at 3]. Plaintiff made a few, often used, conclusory objections, and ultimately answered, "none." [Dkt. # 164, at 15]. Defendants claim this answer was inaccurate based on classified ads from December 26, 2014; and internet ads from January and May of 2015. [Dkt. #142, at 3; #142-6, 7, 8].

Notably, when quoting the interrogatory in their motion to compel and for sanctions, defendants omit the important qualifier, "during the Time Period." [Dkt. #142-5]. Moreover, whether in their original motion or in the supplement they were allowed to file, defendants never indicated or cited to a copy of their interrogatories that defined "the Time Period." But selective quotations from the record are impermissible, *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 322 (1985); *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1192, 1197 (1ˢᵗ Cir. 1995), and judges are not required to "play archaeologist with the record." *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999). They "'are not like pigs, hunting for truffles buried in [the record],'" *Gross v. Town of* Cicero, Ill., 619 F.3d 697, 702–03 (7th Cir.2010), and they are not required to scour a record to ascertain where or whether there are portions supporting a party's ultimate conclusion. *See, e.g., State Contracting & Engineering Corp. v. Condotte America, Inc.,* 197 Fed.Appx. 915, 919 (Fed.Cir.2006). That is an advocate's job, and if a judge is forced to undertake that role, the adversary

system is adversely affected. *See Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir.1992); *Alioto v. Town Of Lisbon,* 651 F.3d 715, 721 (7th Cir.2011).

That we were forced to find what the defined "Time Period" was does not change this basic principle. Consequently, it cannot be determined *based on defendants' motion, supplement, and accompanying exhibits*, whether the plaintiff's response was inaccurate. The defendants certainly did not fulfill the obligation articulated in *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it *easy* for the court to rule in his client's favor . . . ."). In any event, the defined "Time Period" had closed three years prior to the ads; but that was only learned as a result of plaintiff's submissions in response to the defendants' motion and supplement. [Dkt. #164-12, ¶5].

**First Set of Interrogatories, No. 22:**

Next, defendants complain that plaintiff failed to respond accurately to their request for "any other person, business, corporation, company or unincorporated business entity that you know also used the number (513) 922-2009 to send or receive facsimile transmissions during the Time Period." [Dkt. 142, at 4]. The plaintiffs objected and, again, answered, "none." [Dkt. #142, at 4]. Defendants submit that, according to web ads printed in January 2015 and a form from September 2012, a Dr. Martinez was allowed to use the fax number. [Dkt. # 142, at 4; #142-10, 11]. Again, the defendants do not share with the court what the "Time Period" was and, as such, their motion cannot be granted based on their submissions. As we know from the plaintiff, however, the Time Period was April 27, 2008 to May 1, 2012 [Dkt. #164-12, ¶5], so the ad and form are from outside the Time Period. Moreover, plaintiffs amended their response to reflect that other individuals used the number over a month before defendants filed their motion to compel. Thus, although plaintiff's attention to

discovery was sloppy, Rule 37's sanctions provision does not apply. *See* Fed. R. Civ.P. 37(a)(5).

**First Set of Interrogatories, No. 27:**

Defendants asked plaintiff to "[i]dentify any efforts you made to unsubscribe to any facsimiles received during the last five years." [Dkt. # 142, at 4]. Plaintiff's response was: "see list of TCPA cases filed by Plaintiff." [Dkt. #164-13, ¶27]. While the first two points of the defendants' motion for sanctions are inadequately developed, this response, it must be said, is accurate. As plaintiff said in its response to the motion to compel, "the filing of lawsuits is the method by which Plaintiff sought to unsubscribe, *i.e.,* stop fax advertising." [Dkt. #164, at 19]. The defendants were absolutely under no misapprehension in light of the deposition testimony at which the deponent said that the way in which faxes like those involved in the present case were dealt with is by a lawsuit. For the defendants to suggest that they were under some misapprehension regarding the meaning of the response to their interrogatory, is, to say the very least, unconvincing.

As long ago as 1985, it was estimated that each hour a court spent on a case cost the taxpayers $600. *See* Levin and Colliers, *Containing the Cost of Litigation,* 37 Rutgers L.Rev. 219, 226–27 (1985) (each hour spent on case by federal judge costs government $600). Of course, the formula for determining costs to the court varies. But a cost there certainly is. Not only to the court but to the public, which has a vital interest in all litigation. That the plaintiff's and counsel's chosen response to an unwanted fax was to sue rather than attempt to nip the faxes in the bud by utilizing an opt out provision – assuming that a valid one existed – seems questionable when one considers the value of litigation to the recipient of the fax and the cost incurred by the public. But the statute is what it is. *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011)(Posner, J.). Be that as it may, the plaintiff's answer to the interrogatory, did not cause the

defendants harm.[1]

**Fax Logs:**

Finally, the defendants requested that plaintiff produce "all fax logs . . . including but not limited to fax logs for the numbers (513) 922-2009 and/or (513) 347-2735." [Dkt. #142, at 4 -5]. Plaintiff's response was that it had "been unable to locate any responsive documents." Defendants argue that this response was knowingly false, because plaintiff had already produced fax logs in *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, Case No. 1:12-cv-04978 (N.D. Ill.) (Kocoras, J.). Plaintiff offers a convoluted explanation for its response, along the lines of defendants' contention being "premised on a misunderstanding faxing" [sic] and a confusion between fax logs and fax journals and that expert testimony will make this clear. [Dkt. #164, at 19-20].

That may or may not be the case, but a mini-trial with what would surely be competing experts from both sides, *see Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 382 (7th Cir.1986), need not and will not be conducted on the present discovery squabble. And it ought not be. Given the resources the parties have already used and made use of in this matter, delving further into this squabble as it is presently pitched would not be productive. The suspicion is, however, that if plaintiff has produced the fax logs in another case, this may be another example of the disturbing approach to discovery, a problem that has been addressed at length in the ruling on the plaintiff's motion for class certification. *Physicians Healthsource, inc. v. Allscripts*

---

[1] A more straight-forward answer would have been for the plaintiff to have said that it took no steps to unsubscribe to any facsimiles received over the last five years and, instead, sued the senders. But, as we have seen, that was not the way in which the plaintiff routinely dealt with discovery in this case. And, unfortunately, it is too often not the way modern discovery is dealt with. We "'must be mindful of the realities of modern litigation. Pre-trial discovery under modern federal practice has become a monster on the loose .... Pre-trial proceedings have become more costly and important than trials themselves.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).

*Health Solutions, Inc.*, _F.supp.3d_, 2017 WL 2406143 (N.D.Ill. 2017).

## CONCLUSION

The upshot is that defendants have raised two valid concerns and failed to support their contentions as to two others. As such, given the context of this case, not to mention the resources that would be required to parse the appropriate amount of fees from the defendants' request for nearly $125,000, the request for sanctions is inappropriate. The defendants' supplemented motion for sanctions [Dkt. # 142, #150] is denied. The parties are reminded of their duty of supplementation under Fed.R.Civ.P. 26(e).

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/30/17