**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PHYSICIANS HEALTHSOURCE, INC.,** | ) | |
| **an Ohio corporation, individually and as** | ) | |
| **the representative of a class of** | ) | |
| **similarly-situated persons,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 12 C 3233** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **ALLSCRIPTS HEALTH SOLUTIONS,** | ) | |
| **INC. and ALLSCRIPTS HEALTHCARE** | ) | |
| **LLC,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

More than two months after the Opinion denying class certification was issued in *Physicians Healthsource v. Allscripts*, _F.3d_, 2017 WL 2406173 (N.D.Ill. 2017)[Dkt. #303], the law firm of Bock, Hatch, Lewis & Oppenheim ("BHLO" or "the Firm") filed on its own behalf what it has captioned a "Motion to Clarify or Modify Order Denying Motion for Class Certification." [Dkt. #307]. Titles, of course, are not controlling; substance is. *Healthcare Industry Liability Insurance Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689 (7th Cir. 2009); *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008). In effect, BHLO's Motion is a motion to reconsider, which are generally not favored and are judged under restrictive criteria. *Caissa Nationale de Credit Agricole v. CBI Indus., Ins.,* 90 F.3d 1264, 1270 (7th Cir.1996); *New York v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010). Even a *party* "may not seek a do-over by raising it for the first time on

reconsideration." *Perfect 10, Inc. v. Giganews, Inc.* 2015 WL 1746406, at *9 (C.D. Cal. 2015).[1] Since the motion is brought not by a party, but by its former lawyers, the prohibition applies with perhaps even greater force than in the usual case. It certainly does not apply with less. In any event, there is a good deal of merit to the Defendants' argument that "[a]t bottom, what BHLO is actually asking this Court to do is reconsider its inadequacy finding as to BHLO – in other words, BHLO seeks reversal of this Court's decision denying class certification as to itself." [Dkt. #324 at 11].

## A.

Regardless of the technical name ascribed to BHLO's Motion, BHLO contends that certain aspects of the Opinion regarding the Firm were mistaken and should be corrected to preserve the Firm's reputation. It is claimed that BHLO did not participate in the discovery misconduct discussed in the Defendants' earlier class action brief [*see* Dkt. #324 at 11; #215 at 10-11, 16] and in the Opinion, and that its conduct in prior cases has not been criticized by the Seventh Circuit, contrary to what was stated in footnote 18 of the Opinion. However, no reason is advanced why the Firm waited so long after the Opinion – to say nothing of the much earlier criticisms leveled against the Firm by the Defendants [*see* Dkt. #324, ¶¶10-11] – to bring its now claimed non-involvement to the court's or the Defendants' attention. Phrased differently, no reason is given by BHLO why it should be relieved of the consequences that it was responsible for creating and allowing to exist for so long.

The Defendants moved to strike BHLO's motion. [Dkt. #317]. I denied that motion on the ground that motions to strike are generally (although not always) disfavored. [Dkt. #319]. However, I held that the relief sought by the Defendants in their motion might nonetheless be available should

---

[1] Among other things, a party cannot raise arguments it ought to, and could have, raised earlier. *Solis v. Current Development Corp.*, 557 F.3d 772, 780 (7th Cir.2009); *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir.2004); *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir.2000).

it be otherwise proper. [Dkt. #319]. The Defendants were given leave to file a substantive brief in opposition to BHLO's Motion, and BHLO was ordered to file a Declaration in support of the Motion's factually unsupported assertion that the Firm had no involvement in the discovery matters in this case. [Dkt. #319, 320 ¶9].

The Defendants filed their Opposition to BHLO's Motion on August 30, 2017. [Dkt. #324]. It is, to say the least, quite vigorous and denunciatory. [Dkt. #324]. It takes the most serious issue with the sudden and previously unadvanced claim of non-involvement by BHLO and has characterized BHLO's "argument [a]s the very epitome of gamesmanship" – a "cynical attempt to undo this Court's class certification ruling under the guise of seeking correction of 'mistakes' in the [Opinion]...." [Dkt. #324 at 1-2]. Indeed, the Defendants insist that "BHLO seeks reversal of this court's decision denying class certification as to itself" and that the "true goal" behind the Motion is for this court to find BHLO adequate class counsel (Dkt. #324 at 11 ).

**B.**

First things first. BHLO'S Motion violates Local Rule 5.6:

> No pleading, *motion* [except for a motion to intervene], *or other document* shall be filed in any case *by any person who is not a party thereto*, unless approved by the court. Absent such an order, the clerk shall not accept any document tendered by a person who is not a party. Should any such document be accepted inadvertently or by mistake in the absence of such an order, it may be stricken by the court on its own motion and without notice.

N.D.Ill. Local Rule 5.6. (Emphasis supplied).[2]

---

[2] This was the relief sought in the Defendants' Motion to Strike, which I held would be available if otherwise appropriate. [Dkt. #319]. *Cf. Shakman v. City of Chicago*, 2009 WL 2848863, *1 (N.D.Ill. 2009) ("Movants' failure to comply with this Rule alone warrants denying the Motion."); *Rubin v. Islamic Republic of Iran*, 2008 WL 2531197, *1 (N.D.Ill. 2008) ("Under Local Rule 5.6, the only document a nonparty may file without prior approval is a motion to intervene under Federal Rule of Civil Procedure 24.").

BHLO and its lawyers are not parties in this case. In fact, BHLO has been terminated as counsel for the plaintiff over the filing of its Motion To Clarify Or Modify. [Dkt. #307, at 2; Dkt. #317, at 1-2; Dkt. #320]. Nonetheless, BHLO has not withdrawn and has not sought judicial approval to allow the filing of the Motion. Nor has it sought leave to intervene as a non-party under Fed.R.Civ.P. 24. Usually, it is the *client* who complains of his *lawyer's* error and seeks often (without success) to avoid having the consequences of that error being visited upon him. Here, it is the *lawyers* who seek to avoid the consequences of their own behavior and to capitalize on that avoidance for their own highly personal benefit. What a strange and curious and unacceptable inversion. In another context, the Seventh Circuit has held that a lawyer's attempt to vindicate his injured feelings and claimed reputation does not accord standing to proceed as BHLO has attempted to do here. *Seymour v. Hug*, 45 F.2d 926, 929 (7th Cir. 2007).[3] *Compare Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 669 (7th Cir. 2015)(political figure's assertion, without more, that the receipt of a benefit will hurt his or her reputation or electoral prospects is insufficient to establish standing).

BHLO characterizes its former client's demand that it withdraw from the case – (which is still pending) – as an attempt to interfere with the court's jurisdiction and with the court's Order that

---

[3] In *Hug*, the court said:

"The 'general rule [is] that a nonparty cannot challenge on appeal the rulings of a district court.' We have recognized that an attorney can bring an appeal on her own behalf when challenging a district court decision imposing monetary sanctions on the attorney, but this rule does not allow an appeal of otherwise critical comments by the district court when no monetary sanctions have been imposed. Judge Cole has not imposed a monetary sanction on Ms. Matlaw in this case and therefore she cannot base her appeal on the alleged damage to her professional reputation regardless of how harmful Judge Cole's comments might have been. 485 F.3d at 929 (citations omitted).

BHLO supplement its Motion with some evidence. [Dkt. #320, at ¶ 4]. This position is unpersuasive.[4]

## C.

BHLO finds fault with the Opinion's "generic references" to the plaintiff's' lawyers and law firms, especially given that the Defendants charged and the Opinion held there was some discovery misconduct on the plaintiff's side in this case – misconduct with which BHLO now quite belatedly insists it had nothing to do. Indeed, the Firm, now for the first time, claims that no one from BHLO was involved in any discovery responses, and no one from the Firm ever even communicated with the plaintiff or its principals, Drs. Ruch and Elwert. [Dkt. #307, at 3]. (We put aside the question of

---

[4] The Defendants' Response asserts that:

At bottom...BHLO seeks reversal of this Court's decision denying class certification as to itself. BHLO frankly admitted this during the August 16, 2017 Motion hearing when] counsel for BHLO conceded that if the Court granted the relief it requests, it intends to remain in the case so that it can try to find new class representative(s) from Allscripts' confidential customer information. See Ex. G at 9:7-8 ("[I]t's our position that if – we could come back with another plaintiff."); 20:13-15. BHLO even went as far as asking this Court to de-designate confidential documents produced by Allscripts for the express purpose of contacting Allscripts' customers in order to identify a new class representative. Id. at 26:24-27-8

***

BHLO reconfirmed these intentions in correspondence to Allscripts after the hearing. [when] Allscripts sent a letter to BHLO requesting that it return or destroy the confidential documents of Allscripts in its possession pursuant to the stipulated protective order given it no longer represents Plaintiff and is now therefore a stranger to the case. See Aug. 17, 2017 Ltr. from L. Kiser (Ex. H). In its response, BHLO refused to return Allscripts' confidential information, confirmed it is in possession of these documents and intends to retain them for the purpose of identifying a new class representative. *See* Ex. E at 3. Thus, although the Court stated at the presentment hearing the question of BHLO's adequacy as class counsel is not a question presently before the Court, *see* Ex. G at 8:16-9:2, BHLO obviously believes it is, and by its Motion is asking the Court to find BHLO adequate so that it can seek leave to find a new plaintiff and start this case all over again. BHLO's Motion should be denied.

[Dkt. #324 at 11-12].

what role then BHLO played in the case, given the obvious importance of discussions with the client

and knowledge of the client's business – to say nothing of the critical role discovery plays not only

in modern litigation, but especially in cases like this. Indeed, pre-trial proceedings have become more

costly and important than trials themselves. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th

Cir. 1986); *Bankdirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 2017 WL 4005918, at *1

(N.D. Ill. 2017).[5]

Documents the Plaintiff filed in this case repeatedly lumped together BHLO and the Wanca

firm, and thus any "lump[ing] ...together" of the law firms, [Dkt. # 307, at 2-3], was the result of

the acts or omissions of BHLO, itself – the very point I made to BHLO on September 5, 2017.[6] For

example, the Complaint bears Mr. Wanca's electronic signature and his Firm's name and phone

---

[5] The purpose of discovery is the abolition of what Wigmore called trial by ambush and with it the substantially enhanced ability to ascertain the truth, which is the "essential goal of every fact finding process...." *U. S. ex rel. Robson v. Oliver,* 470 F.2d 10, 13 (7th Cir. 1972). *See, Taylor v. Illinois*, 484 U.S. 400, 430 (1988); *U. S. v. Procter & Gamble Co.* 356 U.S. 677, 682-683 (1958); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 2017 WL 2406143, at *12 (N.D. 2017)(and cases cited). The law has come to realize that truth is better served by straightforward procedures than by deception and attempted surprise. *Trans-Cold Exp., Inc. v. Arrow Motor Transit, Inc*., 440 F.2d 1216, 1220 (7th Cir. 1971).

[6] At a recent hearing I told the parties:

And as I said to you, I thought that it was -- especially after reading your brief, that it was singularly derelict of the plaintiff's lawyers to lump all the lawyers together, allow the case to proceed, briefs [to be] filed, even then nothing was done and now you want me to change what I wrote and I think all that factors into it.

So it isn't just the question did I get it right -- I think that's incredible -- but how much of whatever error there was was caused by you guys.

* * *

And I only will say to you again, you really ought to give greater thought to the way you all write briefs and allowing people or parties to be subsumed under a single heading as though they were one unit is your fault –

[Dkt. #325 at 26-27].

number and address under that. Immediately below was the name of Phillip Bock and his Firm, Bock & Hatch LLC, and its address and phone number. [Dkt. #324 at 11]. Mr. Wanca's signature appears on the last page of the discovery responses cited in the Opinion. [Dkt. #214-7 at 6-7; Dkt. #214-8 at 9; Dkt. #324 at 11]. That Mr. Bock's signature did not also appear is not unusual; nor is its absence even discussed by the Motion or Mr. Bock's Declaration. Since Rule 11 only requires one signature on a document, the absence of Mr. Bock's signature would have signaled nothing to an informed reader. In any event, below Mr. Wanca's signature and to the left appears Mr. Wanca's typed name and that of his firm and its address and phone number. To the right of that is Mr. Bock's name and that of his firm and its address and phone number. No other lawyer for the Plaintiff is shown on the Responses.

Finally, the Defendants assert, without any denial from Mr. Bock or anyone at his Firm, that they produced to BHLO written discovery and documents containing confidential information that BHLO now wishes to exploit. [Dkt. #324 at 4-5, 11].

At no time did the Plaintiff, Mr. Wanca, or BHLO attempt to differentiate among the firms on the Complaint or on the discovery responses as to which was responsible for or participated in a given filing. And no one from the Firm instructed Mr. Wanca not to use the BHLO name or that of Mr. Bock on filings and responses and requests that Mr. Bock now asserts the Firm had no involvement in or knowledge of. Thus, BHLO continued throughout this litigation to allow the lumping together of its name with that of the Wanca Firm, thus, in essence, claiming responsibility for each of the filings. Indeed, in the Plaintiff's 30-page motion to certify a class, a scant five sentences were dedicated to adequacy of counsel, and, significantly, no distinction was made between BHLO and Mr. Wanca and his colleagues. [Dkt. #204-1]. In light of what occurred and Mr.

Bock's admission that BHLO had an invovlement in the review of the class action certification and summary judgment briefing on behalf of the Plaintiff, [Dkt. #324 at 11], BHLO cannot realistically contend that it did not know or think its name would not be on discovery requests and responses and that the recipients – and the court (if there were a problem) – would not reasonably conclude that they were the work products of the lawyers whose names appeared or that they were not participants in what was actively going on.[7]

Certainly BHLO could not reasonably conclude that its opponents would not think that it was not actively in the case as Mr. Bock now tersely claims in his abbreviated Declaration. If BHLO was as removed from the case as they now claim, they should not (and would not) have allowed the Firm's name to be linked with that of the Wanca Firm and to appear with regularity on discovery and other materials. At a minimum, if the Firm did not want to be associated with those requests, it should and would have taken effective steps to ensure that it was not. It didn't.

When the record is considered in its entirety, the sudden claim that BHLO had no knowledge of or involvement in either the discovery in this case or knowledge of the plaintiff's business is implausible, and implausibility is a factor to be considered in making credibility determinations. *See, Tijani v. Holder,* 628 F.3d 1071, 1089 (9th Cir.2010); *Capo v. Ashcroft,* 119 Fed.Appx. 823, 826 (7th Cir.2005); *Day v. Ravellette*, 10 Fed.Appx.374, 377 (7thCir.2001); *Emerson v. Colvin,* 2014 WL 4960779, 10 (E.D.Cal.2014); *Pinpoint, Inc. v. Amazon.Com, Inc.,* 347 F.Supp.2d 579, 583 (N.D.Ill.2004)(Posner, J.)(sitting by designation); *Tellabs Operations, Inc. v. Fujitsu Ltd.,* 882

---

[7] The Defendants contend that BHLO must have been involved in the review of the class certification and summary judgment briefing for how else could the Firm have "quickly... realized the firm had been omitted from [the Plaintiff's] original request to appoint class counsel...." [Dkt. #324 at 11]. The Defendants also point out that BHLO "actively participated in the parties' mediation." *Id.*

F.Supp.2d 1053, 1062 n. 12 (N.D.Ill.2012). So is prolonged silence. *Cf. United States v. Curescu,* 674 F.3d 735, 740 (7th Cir. 2012)("Silence like obliquity can be eloquent"); *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008)("[I]f there is an executed standstill agreement, one would expect an allegation to that effect. There is none. The complaint's silence is deafening.")*.*

When evaluating whether the failure to make a statement (of some sort) may be probative of a material fact, the underlying test is: would it have been natural for the person to make the assertion in question? *Jenkins v. Anderson,* 447 U.S. 231, 248-249 (1980); *United States v. Hale,* 422 U.S. 171, 176 (1975).[8] Once the Defendants had accused BHLO of participation in wrongdoing as they did, [*see* the discussion at Dkt. #324 at 11],[9] BHLO would have – or certainly should have – reacted to the accusation by at least pointing out that it had no involvement in the claimed wrongdoing. It would not have or should not have waited for the later Opinion. And certainly BHLO was not shy. But still it did nothing.

We are now told that BHLO played no "*material* role" – whatever that may mean – in the "preparation, or in the many last-minute A+W filings [whatever that may mean] criticized in the Order." [Dkt. #307 at 4-5](Emphasis supplied). And, it is conceded by BHLO that A+W shared the Plaintiff's "submissions" on "class certification and summary judgment" "with BHLO before

---

[8] *Compare United States v. Vrdolyak*, 593 F.3d 676, 691 (7th Cir. 2010)("And it is hard to believe that the government's approach to this appeal was not carefully considered in every respect. We would be justified in finding a waiver based on the government's failure to address the alternative calculation and its failure to challenge the reasonableness of the sentence").

[9] Mr. Bock admits that BHLO had involvement in the review of the class certification and summary judgment briefings on behalf of the Plaintiff. The Defendants reason that apart from this concession, Mr. Bock "must have [been aware]" "given how quickly [he] realized the [F]irm had been omitted from [the Plaintiff's] original request to appoint class counsel...." Moreover, the Firm "actively participated in the parties' mediation." [Dkt. #324 at 11].

filing...." [Dkt. #307 at 4]. Yet, BHLO was perfectly content to have the Defendants' responses filed as they were and to continue to create and allow to be created the appearances under which the court and the Defendants were operating. Even if the current insinuation of lack of involvement – or partial lavk of involvement and of knowledge is true – which is highly doubtful – it is too late to complain about the strategic decision BHLO made.

### D.

Originally, we had no "evidence" to support any of BHLO's protestations of non-participation. All we had was BHLO's insistence. But that is not evidence. *See Woolard v. Woolard*, 547 F.3d 755, 760 (7th Cir. 2008); *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007). Thus, after BHLO's motion was filed, it was given the opportunity to supplement its filing with evidence to support its sweeping claims. To that end, Phillip Bock filed a Declaration in which he says, rather conclusorily, that no one from his law firm participated in any discovery matters in this case [Dkt. #320, at ¶7], or communicated with either of the doctors, employed by the corporate plaintiff. [Dkt. #320, ¶ 8].[10]

Mr. Bock tells us that one of the lawyers at BHLO, David Oppenheim, used to work at Anderson +Wanca. Mr. Bock doesn't say when, but claims that Mr. Oppenheim told him he didn't *recall* interacting with the plaintiff in other cases. [Dkt. #320, at ¶ 8]. That's odd, as Mr. Oppenheim – who was with Anderson + Wanca for most of this case, until April of 2016 – was listed as *lead*

---

[10] Mr. Bock's current version of events would seem to be inconsistent with the way in which the Firm holds itself out to the public. BHLO's website states that they "are advisors who provide [their] clients with an informed understanding of the client's legal rights and obligations and explain their practical implications." http://bockhatchllc.com/. How that could be done without some discussion with the Plaintiff seems difficult.

*counsel* for the plaintiff in one of their other junk fax cases for *two years*. [Dkt. #324, at Page ID 7874].[11] When this fact is combined with Mr. Bock's admission that BHLO represented the plaintiff in another case in the Southern District of Florida, actively participating for about two years. [Dkt. #320, ¶ 6], Mr. Bock's sudden protestations that his Firm knows nothing about Plaintiff's business relationships and did not participate in the relevant discovery ring hollow.

That the claims were made in a Declaration is the beginning not the end of the inquiry. The oath does not ensure accuracy; even Declarations of lawyers have turned out to be inaccurate. *See, e.g., Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 379 (N.D.Ill. 2012)("As it turned out, much of what Ms. Wright said in her affidavit was not [as her deposition conclusively showed] based on personal knowledge, and a good deal of what she said in the affidavit was open to serious question, to say the very least."). And lawyers have a duty not to mislead the judge or their opponents. *In re Tower Park Properties, LLC,* 2013 WL 12148276, at *3 (C.D. Cal. 2013). That duty, of course, extends to not allowing their co-counsel to engage in misleading conduct. No one looking at what occurred throughout this case would conclude that BHLO played the non-role that Mr. Bock's Declaration now ascribes to it or that the claimed inaction provides a permissible refuge to the Firm.

Finally, Mr. Bock also states that BHLO has not filed any cases with Anderson Wanca, other than refiling cases with new named plaintiffs, since 2013. [Dkt. #320, ¶ 18]. He doesn't say why, but the impression he apparently hopes to invoke might be that BHLO is disassociating itself with whatever reputation Anderson + Wanca may have gained in the wake of the Abraham saga. He

---

[11] Mr. Oppenheim unsuccessfully sought leave to appear *pro hac vice* in that case. [Dkt. #324, Page ID 7887].

doesn't say that BHLO has *withdrawn* from any of those cases. Or that despite the criticism leveled against the Wanca firm he took steps to insure that it would not appear that it was operating hand in glove with the firm in this case. *Cf.*, *Stallings v. Woods*, 2006 WL 842380, at *16 (E.D.N.Y. 2006)(the failure to speak up may be analogized to a 'prior inconsistent statement' by the witness.").

**E.**

When we compare BHLO's prior, extended, purposeful silence with its current claims of non-involvement, we are compelled on this record to conclude that BHLO was "'play[ing] heads I win tails you lose' by manipulating the litigation machinery." *In re Cox Enterprises, Inc., Set-top Cable Television Box Antitrust Litigation*, 790 F.3d 112, 117 (10th Cir. 2015). If the Defendants' objection in their class action brief were rejected, BHLO would win and need not make the argument that it is presently advancing. If, however, the Defendants were successful, then BHLO could advance the argument that is presently being made. Heads I win, tails you lose. *Cf., Lite On It Corp v. Toshiba Corp.*, 2009 WL 10673953, at *3–4 (C.D. Cal. 2009)("Such a failure to speak up raises the troubling specter that plaintiff [said]…nothing in hopes that it might take advantage of the two chances at getting the result it sought. Plaintiff sat on its rights, hoping to win in one of the forums. Having lost on that gambit, only then did it complain."). Not only is that tactic inappropriate in all contexts, *see eg. Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 318 (1985); *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64 (1967), BHLO is bound by its tactical decision to say nothing about his its now claimed non-involvement. It "must bear the consequences of its choice." *Conway Family Tr. by Conway v. Commodity Futures Trading Comm'n*, 858 F.3d 463, 464 (7th Cir. 2017). *See also Advanced Ground Systems Engineering, Inc. v. RTW Industries, Inc.*, 388 F.3d 1036, 1043 (7th Cir. 2004); *Traylor v. Husqvarna Motor*, 988 F.2d

729, 732 (7th Cir. 1993); *Silc v. Crossetti,* 2013 WL 3872196, 3 (N.D.Ill. 2013)(and cases cited).[12] This is not to say that its present claim of non-involvement is accepted. For the reasons discussed in this Opinion, it is not.

Of course, mistakes are inherent in the human condition. All judges make them. *Fujisawa Pharmaceutical Co. ., Ltd. v. Kapoor,* 115 F.3d 1332 (1997); *Rodriguez v. Chandler*, 492 F.3d 863 (7th Cir.2007). So do lawyers. *Fagocki v. Algonquin/Lake-In-The-Hills Fire Prot. Dist.*, 496 F.3d 623, 627 (7th Cir. 2007). But the law frowns on playing "gotcha" and relying on a claimed error – especially one that was easily avoidable – to gain an opportunistic advantage. *Cf. Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.,* 58 F.3d 1227, 1231 (7th Cir.1995); *Market Street Associates; Packer Trading Co. v. CFTC,* 972 F.2d 144, 150 (7th Cir .1992); *Centex Construction v. James,* 374 F.2d 921, 923 (8th Cir.1967). Our adversary system rests on the unshakable foundation that truth is the object of the system's process. "Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993).

BHLO, as an apparent excuse for its behavior, seems to suggest that things can become unwieldy or compartmentalized when several firms – here, four appeared on the Complaint, although only the Wanca and Bock Firms were active – and multiple attorneys – currently, a dozen are named

---

[12] The underlying principle was recognized long ago by Justice Cardozo: "'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified...." Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.'" *R.H. Stearns Co. v. United States*, 291 U.S. 54, 61–62 (1934). *See also Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000); *United States v. Goodwin*, 449 F.3d 766, 772 (7th Cir. 2006).

– are tag-teaming a case. [Dkt. #307, at 5). Apart from the fact that "general propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting), the decision not to tell anyone of its now claimed exceedingly limited role in the case is one that BHLO consciously made. Despite having seen the class action and summary judgment briefs, (Dkt. #307 at 4-5; *supra* at 9], – BHLO did nothing to separate itself from the Wanca firm – to say nothing of waiting more than two months to speak up after the Opinion to which BHLO takes umbrage. Thus, even if its current, belated claim were true – which we do not accept – BHLO has to live with the consequences of its decision to do and say nothing. *See e.g., Conway Family Tr. by Conway v. Commodity Futures Trading Comm'n*, 858 F.3d 463, 464 (7th Cir. 2017)( *"*The Trust did not do so and must bear the consequences of its choice."); *United States v. Mabie*, 862 F.3d 624, 635 (7th Cir. 2017)("Put aside the fact that any prejudice Mabie suffered was his own doing...."); *Advanced Ground Systems Engineering, Inc.,* 388 F.3d at 1043.

### F.

BHLO is insistent that its conduct was never singled out and thus the Opinion is mistaken. The answer is simple: it was. Here is what the Seventh Circuit had to say about BHLO – not Andersen and Wanca – in *Creative Montessori Learning Centers v. Ashford Gear LLC,* 662 F.3d 913 (7th Cir. 2011)(cited by the Opinion in this case):

> Class counsel, *mainly lawyers from the law firm of Bock & Hatch*, the class counsel in the CE Design case (a Telephone Consumer Protection Act case in which we ordered the class decertified), specialize in bringing class action suits under the Act. The class certified in this case consists of 14,574 persons, who are alleged to have received a total of 22,222 unsolicited faxed advertisements from the defendant.

> The *lawyers* learned about these faxes not from a recipient, but from a fax broadcaster (Caroline Abraham, who conducts her business under the name B2B)—a

14

company that faxes advertisements as an agent of the advertiser. *The lawyers* asked her for transmission reports of faxes that she had sent and information on how to communicate with the intended recipients, but promised not to disclose any of this material to a third party. On the basis of this assurance of confidentiality she turned over material that evidenced (or so it is alleged) faxes of advertisements that Ashford Gear had sent to the 14,574 persons constituting the class. One of the recipients was the Creative Montessori Learning Center, a private school, www.creativemontessori.com/about_ us.html (visited Nov. 17, 2011).

*The lawyers* notified Creative Montessori that "during our investigation, we have determined that you are likely to be a member of the class. You might not remember receiving the junk faxes, but if the lawsuit is successful, you would receive compensation (up to $1,500) for each junk fax sent. We would like to discuss this issue with you. Please call me [telephone number]." Which it seems Creative Montessori did—though actually it seems that the junk faxes supposedly sent to Creative Montessori were images from Abraham's computer of advertisements that never had been sent. Nevertheless Creative Montessori became the named plaintiff and (therefore) class representative.

This class action suit is *one of more than 50 similar class action suits based on information from Abraham's records* concerning firms that used her faxing services and the recipients of the faxes. The defendant urged the district court to deny class certification, arguing that class counsel's misconduct showed that counsel would not adequately represent the class. The district judge found that there had indeed been *misconduct by the lawyers*. The misconduct had taken two forms: obtaining material from Abraham's files on the basis of a promise of confidentiality that concealed the purpose of obtaining the material, a purpose inconsistent with maintaining confidentiality and likely to destroy Abraham's business; *and implying in the letter to Creative Montessori that there already was a certified class to which the school belonged*. (This second allegation would constitute misconduct not because the lawyers communicated with a potential class action plaintiff personally, but because the communication was misleading.) But the judge ruled that the proper sanction for these wrongful acts was discipline by the bar authorities, and that the acts cast no shadow on the adequacy of class counsel to represent the class.

But *class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class*. Fed.R.Civ.P. 23(a)(4), (g). There is no basis for confidence that they would prosecute the case in the interest of the class, of which they are the fiduciaries, *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir.2002); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 588 F.3d 24, 36 n. 12 (1st Cir.2009); *Rodriguez v. West Publishing Corp.*,

563 F.3d 948, 968 (9th Cir.2009); *Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 938 (8th Cir.1995), rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts.

662 F.3d at 916-17 (emphasis added)(parentheses in original) [*see* Dkt. #303 at 35, n.18].

Even if the Seventh Circuit was wrong in singling out lawyers "mainly from the law firm of Bock and Hatch"– and BHLO does not say it was – BHLO never brought the now claimed error to the Seventh Circuit's attention or to us at the time of the Opinion. It is inaccurate to assert that "it was solely and exclusively the conduct of A+W attorneys Brian Wanca and Ryan Kelly that was questioned and criticized in those cases" [Dkt. #307, at 5]  and "that BHLO's conduct was not questioned in the prior case law." Attributing conduct to "mainly lawyers from the law firm of [BHLO]" certainly qualifies as singling out.  It's not as though this court misread the Opinion or offered an isolated interpretation of ambiguous language. *See, e.g., A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc*., 2017 WL 2619144, at *2 (N.D. Ill. 2017)(". . . the Seventh Circuit noted that the law firm of Bock and Hatch engaged in two forms of misconduct . . . ."); *Jackson's Five Star Catering, Inc. v. Beason*, 2012 WL 3205526, at *1 (E.D. Mich. 2012)(" In *Creative Montessori,* the Seventh Circuit found that allegations of attorney misconduct had called into question the adequacy of the class counsel to fairly and loyally represent the interests of the class.");http://blogs.reuters.com/alison-frankel/2014/01/17/class-action-firm-maligned-by-7th-circuit-wants-its-reputation-back/(". . . the Chicago class action firm of Bock & Hatch, which was the subject of a brutal 2011 opinion from the 7th Circuit Court of Appeals, . . . .);http://www.abajournal.com/news/article/  7th_Circuit  _Nixes_Class_Action _Over_Junk_Faxes_Criticizes_How_Plaintiffs.

If the Seventh Circuit was wrong, that's another matter. But, the Seventh Circuit did not think that it erred or that its published Opinion should not be relied on. And so, the statement in the Opinion that BHLO was criticized by the Seventh Circuit was not a "mistake."[13]

BHLO directs us to the Opinion on remand from the Seventh Circuit in the *Creative Montessori* case. It informs us that the district court, some 10 months after the case was remanded by the Seventh Circuit, found that the facts the Seventh Circuit set forth in its Opinion required revision. [Dkt. #307, at 7].[14] After taking additional evidentiary submissions, the district court determined that Ms. Abraham's records were not produced pursuant to a promise of confidentiality – although one was made by a member of Anderson + Wanca – but pursuant to subpoena. *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, 2012 WL 3961307, at *2 (N.D. Ill. 2012). The district court continued to find the solicitation letter was misleading and that it "probably violated" the Model Rules of Professional Conduct, but that it was "not so significant as to case serious doubt on counsels' ability to represent the class loyally." *Id.*, at *3. Nothing in this court's Opinion differentiated between conduct by Anderson + Wanca and BHLO; the firms are referred to collectively as class counsel throughout the Opinion. And that designation, as we have said, was fostered by BHLO, itself.

---

[13] The objection to the court's claimed inaccuracy should have been made to the Seventh Circuit by BHLO either at the time or after it could be realistically claimed that an error had been made. It was not. And yet, it is now contended that a district court years later should have on its own unearthed the supposed error based upon subsequently occurring events in another court. That's simply not a realistic or persuasive argument to make. Judges are not required to play archaeologists with the record. *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999).

[14] As shown by the lengthy passage cited earlier, the Seventh Circuit expressed no doubt as to those facts in its Opinion.

Parenthetically, it may be noted that the implications in BHLO's claim that it has purposely not been co-counsel with Anderson + Wanca since 2013 should have led BHLO to have taken steps to assure that the Defendants and this court were made aware of its now claimed limited participation in the case. Of course, it did not. Either BHLO was overly trusting – which seems rather doubtful especially when one considers that the tale of the Abraham saga came to light no later than June 2010, *CE Design Ltd.*, 2010 WL 2365162 at *4, and the Seventh Circuit's Opinion in *Creative Montessori* was issued on November 22, 2011, and the discovery in the instant case was the object of criticism by the Defendants in early June 2016, [Dkt. #227-1] – or its present claim seems doubtful at best.[15]

In any event, Anderson + Wanca gained access to not only a list of potential class members in *Creative Montessori*, but a treasure trove of potential target Defendants for, as the June 2 Order indicated, over 100 other junk fax cases. [Dkt. # 303, n.18, *citing Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 493 (7th Cir. 2013)]. As not even BHLO tries to dispute, BHLO and Anderson + Wanca are co-counsel and, as we have said, that is the way they presented themselves to the world. A cursory search on Westlaw reveals that the two firms are co-counsel in scores of cases linked to Abraham's records, with *Machesney v. LarBev of Howell, Inc.*, 2017 WL 2437207 (E.D. Mich. June 6, 2017) being the most recent reported decision from this roster and *CE Design Ltd.*, 259 F.R.D. 135 (N.D. Ill. 2009) being the earliest. Mr. Bock tells us in his Declaration that BHLO has not teamed up on any new cases with Anderson + Wanca since 2012. He doesn't say

_____

[15] The Plaintiff's Reply Memorandum in Support of Motion for Class Certification noted that the Defendants had argued that "dozens" of its discovery responses were "false" and that Plaintiff purportedly admitted it was never presented with the Defendants' Rule 68 offer. [Dkt. #238 at 6]. Below the names, Brian Wanca and Ryan Kelly, the Memorandum bore the name of Philip Bock of Bock & Hatch, LLC with its address and phone number. [Dkt. #238 at 25].

why, but the impression he hopes to invoke might be that BHLO is disassociating itself with Anderson + Wanca in the wake of the Abraham saga. Since the tale came to light no later than June 2010, *CE Design Ltd*, 2010 WL 2365162, at *4, BHLO apparently had no problem associating itself with the Anderson + Wanca firm for two years.

BHLO argues that in several cases, courts did not assess the conduct of BHLO, and looked solely at the conduct of Anderson + Wanca. And, since BHLO was on hand it was appointed class counsel. [*See* Dkt. # 307, at 5-7]. These cases are indeed significant. Apart from the fact that being named class counsel in one case does not ensure appointment as class counsel in subsequent cases, the cited cases reveal a pattern: Curiously, in light of the various criticisms of Anderson + Wanca, BHLO continued to be associated in cases with that firm and thus to be available if and when Anderson + Wanca's behavior was called into question. Indeed, this seems to be a recurrent pattern, as the very cases BHLO cites show. Some courts have found the conduct of Anderson + Wanca unethical. Others have found it at least unseemly; but these courts have brushed the misconduct aside, because the co-counsel for the Plaintiff was BHLO, which was standing in the wings, unsullied by its co-counsel's misconduct. [*See* Dkt. #307 at 6].

While the conduct of Anderson + Wanca has been described in a variety of unflattering ways, *Palm Beach Golf Ctr Boca, Inc. v. Sarris*, 311 F.R.D. 688, 698 (S.D. Fla. 2015)(collecting cases), and despite its awareness of the less than flattering judicial assessment of the Wanca firm's conduct, and the present Defendants' criticisms in their class action briefing, of the way in which discovery was conducted in this case, BHLO did not in any manner inform this court or the Defendants that it was effectively not participating in critical aspects of the case. Nor did BHLO take any action to inform its co-counsel that they could or should not routinely show BHLO's name on filings and

discovery requests and responses. That silence and inaction is inconsistent with its current claims of non-involvement.

BHLO's current argument in this case given the record evidence is implausible, and implausibility is a basis for rejection of testimony and evidentiary theories. *See, e.g., Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575 (1985); *Wainwright v. Sykes,* 433 U.S. 72 (1977); *Pinpoint,* 347 F.Supp.2d at 583. Of course, the Plaintiff's Memorandum did not have to admit the claimed wrongdoing. After all, in our adversary system, lawyers properly play a partisan role. *Smith v. Robbins,* 528 U.S. 259, 293 (2000) (Souter, J., dissenting); *Philips Medical Systems Intern. B.V. v. Bruetman,* 8 F.3d 600, 606 (7th Cir.1993). Thus, with perfect consistency, the Plaintiff's brief could have denied the defendants' claims of wrongdoing and still noted BHLO's now claimed non-involvement. BHLO chose not to do that, but chose instead the tactical course it did. Two conclusions follow, neither helpful to BHLO: either the present claim is less than accurate or BHLO made a tactical error. If the former, BHLO's motion should be denied; if the latter BHLO made a tactical choice by which it is bound.

In the end, the Abraham saga didn't play a role in the decision rendered on June 2; it was mentioned briefly by way of background and addressed only in a footnote. But it does provide context for what occurred in this case, and the similarity is clear, thanks to BHLO's belated "Motion to Clarify or Modify Order Denying Motion for Class Certification." BHLO once again has waited patiently in the wings, and when misconduct is found, BHLO claims not to have been involved in it, or even to have knowledge of it. And then, it insists it should be class counsel. But the *deus ex machina* of now claimed non-involvement by Mr. Bock and his Firm cannot, under the facts of this case, insulate and rescue BHLO.

**CONCLUSION**

Whatever may be the "true goal" behind BHLO's application to this court, the Motion is denied. Except in rare circumstances, not present here, even a party – and, it bears repeating, BHLO is not a party – is only "entitled to" "one set of briefs...." *Matter of Husain*, 866 F.3d 832, 835 (7th Cir. 2017). The making of "a tactical error does not justify a do-over." *Id.* Nor does a change in theory.

ENTERED: _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 10/18/17